UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

        *Plaintiffs*,

v.

U.S. DEPARTMENT OF THE
TREASURY, *et al.*,

        *Defendants*.

Case No. 25 Civ. 01144 (JAV)

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO DISSOLVE, CLARIFY, OR MODIFY *EX PARTE* TEMPORARY RESTRAINING ORDER**

At approximately 1:00 a.m. on Saturday, February 8, 2025, this Court issued an *ex parte* Temporary Restraining Order that purported to limit access to a vast swath of Treasury systems to only "civil servants," while prohibiting "all political appointees" from doing the same. On its face, the Order could be read to cover all political leadership within Treasury—including even Secretary Bessent. This is a remarkable intrusion on the Executive Branch that is in direct conflict with Article II of the Constitution, and the unitary structure it provides. There is not and cannot be a basis for distinguishing between "civil servants" and "political appointees." Basic democratic accountability requires that every executive agency's work be supervised by politically accountable leadership, who ultimately answer to the President. A federal court, consistent with the separation of powers, cannot insulate any portion of that work from the specter of political accountability. No court can issue an injunction that directly severs the clear line of supervision Article II requires. Because the Order on its face draws an impermissible and anti-constitutional distinction, it should be dissolved immediately.

At minimum, the Court should either clarify or modify its Order, so as to avoid its most direct constitutional and practical hazards. As written, the injunction is markedly overbroad. There is no sound reason that it should extend to Treasury's leadership, who are charged with overseeing and administering the Department without interruption. To the extent the Order applies to senior political appointees at Treasury, it is an extraordinary and unprecedented judicial interference with a Cabinet Secretary's ability to oversee the Department he was constitutionally appointed to lead. Interfering with those basic functions, even for a day, will cause irreparable harm to the government. By contrast, Plaintiffs have not even attempted to show how they would suffer any irreparable harm as a result of Treasury's political leadership being excluded from the temporary injunction.

If the Court is unwilling to grant relief from its Order, the United States respectfully requests that the Order be stayed pending the disposition of any appeal that is authorized, or at a minimum that such relief be administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals.

To be clear, notwithstanding the Order's defects, Defendants are in compliance with it. As described below, Defendants have taken what they believe to be all necessary steps to comply with the Court's Order. But this is not a durable status quo. To remedy the serious problems beget by the Order's breadth, the Court should immediately dissolve, clarify, or modify the Order while this matter is being briefed, argued, and decided on the merits.[1]

---

[1] Defendants' counsel reached out to counsel for plaintiffs today (February 9) to discuss the bases for this motion and whether plaintiffs would consent to the relief being requested. The parties are in negotiation and hope to at least narrow the issues before the Court in the very near future.

2

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on February 7, 2025, alleging a variety of claims under the Administrative Procedure Act and the Constitution. All claims are based on ill-informed allegations regarding expansion of access to data systems within the Bureau of the Fiscal Service ("BFS"). At 9:30 P.M. on Friday evening, February 7, counsel for Plaintiffs sent an email to the Part I Judge, copying a Deputy Civil Chief in the United States Attorney's Office for the Southern District of New York and a Senior Trial Counsel in the Federal Programs Branch, Civil Division, U.S. Department of Justice. The email attached copies of an Application for a Temporary Restraining Order, supporting Declaration, and a proposed order. Given the late hour, there was no meaningful opportunity to review and respond to the application that night. At approximately 1:00 am on Saturday, February 8, without hearing from Defendants, the Part I Judge entered a Temporary Restraining Order that largely adopted the proposed order offered by Plaintiffs.

In relevant part, the Court's broad, *ex parte* Order provides that Defendants are:

> (i) restrained from granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees, other than to civil servants with a need for access to perform their job duties within the Bureau of Fiscal Services who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations; (ii) restrained from granting access to all political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department, to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees; and (iii) ordered to direct any person prohibited above from having access to such information, records and systems but who has had access to such information, records, and systems since January 20, 2025, to immediately destroy any and all copies of material downloaded from the Treasury Department's records and systems, if any.

ECF No. 6.

Despite its overbreadth, Defendants have substantially complied with the Order. Specifically, Defendants are not granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees, other than to career employees (which is what Defendants believe the Court meant by "civil servants") with a need for access to perform their job duties within BFS who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations. Declaration of Thomas H. Krause, Jr. ¶ 5 ("Krause Decl."). In addition, Defendants are not granting access to political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees. *Id.* Finally, Defendants are complying with the Court's order to direct any person prohibited above from having access to such information, records and systems but who has had access to such information, records, and systems since January 20, 2025, to immediately destroy any and all copies of material downloaded from the Treasury Department's records and systems, if any. *See generally id.*

## LEGAL STANDARD

When a temporary restraining order is issued *ex parte*, without an opportunity for the party opposing the order to present argument, that party may move to dissolve or modify the injunction on two days' notice to the party who obtained the order. Upon such a motion, "[t]he court must then hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4). Because the injunction entered was preliminary rather than final, the district court is "charged with the

exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. U.S. Army Corp. of Engineers*, 732 F.2d 253, 256 (2d. Cir. 1984); *see also Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-CV-2753 (MKV), 2023 WL 6037949, at *3 (S.D.N.Y. Sept. 15, 2023).

## DISCUSSION

### 1. The Order Draws an Impermissible Distinction Between "Civil Servants" and "Political Appointees."

As noted, the Order purports to limit access to a vast swath of Treasury systems to only "civil servants"—a term that is undefined—and prohibit "all political appointees" from access to such systems. This distinction is fundamentally incompatible with the constitutional structure that Article II compels, where the federal bureaucracy is—and must be—supervised and directed by political leadership that is ultimately accountable to the President. *Cf. Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 223–24 (2020). Consistent with the Constitution's design, this Court cannot order that certain operations of an executive agency be performed wholly by civil servants, outside the ambit of accountability.

Moreover, along with directing the work of Treasury, its senior leadership—including the Secretary, his Chief of Staff, the Deputy Secretary, and the Department's three Undersecretaries—may be called upon the President on the operations of the Department  To restrain the Secretary, and his Chief of Staff and immediate inferior officers, from gathering information within the Department in order to carry out these advisory duties would be an extraordinary interference with the President's ultimate constitutional obligation to oversee the Executive Branch. *See* U.S. Const., Art. II. *See United States v. Nixon*, 418 U.S. 683 (1974) ("The President's need for complete candor and objectivity from advisors calls for great deference from the courts."); *cf. Public Citizen*

*v. U.S. Dep't of Justice*, 491 U.S. 440 (1989) (interpreting the Federal Advisory Committee Act to avoid separation of powers concerns).

As written, the Order violates the Constitution and should be completely dissolved.

### 2. Modification of the Order Is Necessary If the Order Is Not Dissolved.

At a minimum, Court should either clarify or modify its Order to make clear that it does not actually cover Treasury's senior leadership.

Limiting access by Treasury's senior leadership, as just described, is overbroad and unnecessary to maintain the status quo. As described in the accompanying declaration of Thomas H. Krause, Jr., as of the date of the Order, no political appointees, special government employees, or government employees detailed from an agency outside the Treasury Department had any level of access to any applicable payment or data systems, other than Mr. Krause himself. Krause Decl. ¶ 9. And no such employees currently have that access. *Id.*[2] Nonetheless, it is important that high-level political appointees, such as the Secretary, his Chief of Staff, the Deputy Secretary, and the Undersecretaries, can receive data from such systems to the extent necessary for the performance of their job duties. *Id.* ¶ 10. Although these high-level officials do not ordinarily need to access or receive data from such systems, it is the responsibility of these officials—the appointees of a duly elected President—to receive information they require to carry out their mandate to govern the agency in accordance with the President's priorities. Career officials, for example, may need to include data from those systems in significant briefings, memoranda, or demonstrations, and to present those matters to the political leadership of the department. *Id.*

---

[2] Since January 20, 2025, one other Treasury employee—Marco Elez—had "read only" access to or copies of certain data in BFS payment systems, subject to restrictions, and access to a copy of certain BFS payments systems' source code in a "sandbox" environment. Krause Decl. ¶ 11. Mr. Elez resigned on February 6, 2025 and returned all Treasury and BFS equipment and credentials the same day. *Id.*

Prohibiting political appointees from staying informed of significant issues within their jurisdiction as managers of the agency—even including the aforementioned senior Treasury officials—would significantly interfere with these officials' ability to conduct their duties as they pertain to emergent issues related to Treasury's payment systems. *Id.*

Moreover, Plaintiffs nowhere suggest in their Complaint that these high-level officials improperly accessed the Treasury Department's payment systems. *See generally* Compl., ECF No. 7. Accordingly, Plaintiffs suffer no irreparable harm from permitting senior leadership to do their job. And in this Circuit, a "showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citations omitted). On the other side of the balance, a constitutional violation of the President's Article II authority constitutes irreparable harm, even for a single day. *See, e.g.*, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("It is well-settled that an alleged constitutional violation constitutes irreparable harm").

For these reasons, including Treasury's political leadership within the scope of the Order is not just unconstitutional, it makes the injunction impermissibly overbroad even on its own terms. *See Milliken v. Bradley*, 433 U.S. 267, 282 (1977) ("[F]ederal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation . . . ."); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144–45 (2d Cir. 2011) (injunctive relief should not be "broader than necessary to cure the effects of the harm caused by the violation" and should be "narrowly tailored to fit specific legal violations").

Accordingly, if the Order is not dissolved, given the *ex parte* nature of the Order, and the absence of any reasoned basis to enjoin the Treasury Department's senior political leadership from accessing the Department's own information, this Court should at minimum clarify, or as necessary modify, the scope of the Order to make plain that it excludes the Department's senior leadership, including the Secretary, Chief of Staff, the Deputy Secretary, and Undersecretaries.[3] *See* Fed. R. Civ. P. 65(b)(4).

### 3. The Order Requires Additional Clarification or Modification.

Additionally, there are three other issues that require clarification or modification, so that Treasury can operate without interruption while this matter continues to be litigated.

*First*, as part of the regular maintenance of the Treasury Department's payment records, payment systems, and other data systems, the Treasury Department and its fiscal and financial agents often employ contractors to perform routine and emergency maintenance and provide operational support for these payment and data systems and records. Krause Decl. ¶ 6. These services, which are provided under contracts entered into prior to January 20, 2025, are essential to the proper functioning of the Treasury Department's payment records, payment systems, and other data systems. *Id.* In addition, BFS relies on employees of the Federal Reserve Bank who are responsible for hosting and maintaining several of the BFS payment systems on Federal Reserve servers. *Id.* ¶ 7. Although the work on BFS systems conducted at the Federal Reserve is governed by a letter of designation between Treasury and the Federal Reserve, these Federal Reserve employees are not BFS employees. *Id.* Accordingly, Defendants respectfully request that

---

[3] The modest modification that Treasury requests through this emergency motion does not mean that Treasury acquiesces to the validity of the injunction with respect to its inclusion of other political appointees or Special Government Employees. Defendants will address that issue in their forthcoming opposition brief, to be filed on Tuesday, February 11.

such maintenance and operational support by contractors and Federal Reserve employees be allowed to continue.

*Second*, external users or payors have limited access to the Treasury Department's BFS payment systems as a routine function to allow them to submit coded payment instructions in the form of payment files that prompt the disbursement of funds by Treasury. *Id.* ¶ 8. Defendants do not understand the Order to extend to these external users.

**4.     The Court Should Grant a Stay Pending any Appeal of the Order.**

Finally, as noted, the United States respectfully requests a stay pending any appeal of the Order if the Court denies the relief requested in this motion.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to dissolve, clarify, or modify the *ex parte* temporary restraining order.

Dated: February 9, 2025

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

JOHN R. GRIFFITHS
Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Respectfully submitted,

DANIELLE R. SASSOON
United States Attorney

By: */s/ Jeffrey Oestericher*
JEFFREY OESTERICHER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2695/2774
Email: jeffrey.oestericher@usdoj.gov
         rebecca.tinio@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2557 words.