UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>        Defendants. | C.A. No. 1:25-cv-1144 (JAV) |

**PLAINTIFF STATES' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION**

Defendants have filed an emergency motion to dissolve, modify, or clarify the Court's February 8, 2025 Order (ECF No. 6) ("TRO"), or to stay the TRO pending an emergency appeal to the Second Circuit if their requested relief is denied (ECF No. 11). Rather than support their requested relief, their emergency motion only serves to highlight the urgent need to maintain the temporary injunction barring the expanded access Treasury's new policy allows to sensitive and critical records and systems of the Bureau of the Fiscal Service ("BFS") by political appointees and special government employees ("SGEs") until the Court has an opportunity to resolve the pending motion for a preliminary injunction.

Defendants' submission confirms that between the inauguration and the date the TRO was issued, the duties of the Fiscal Assistant Secretary, the person at Treasury who oversees the functioning of the BFS payment systems and its critical role in disbursing from the nation's bank account billions of dollars in federal funds, have been delegated to Thomas Krause, Jr., an

uncompensated SGE hired as a "consultant" and who simultaneously serves as the Chief Executive Officer of Cloud Software Group, Inc., a privately held company comprising "several enterprise software businesses." Krause Affidavit, sworn to on February 9, 2025, at ¶ 1 (ECF. No. 13) ("Krause Aff."). While Mr. Krause's role as a consultant has purportedly been approved by the Treasury ethics office, the delegation to him of the duties of the Fiscal Assistant Secretary have not been. *Id.* Until the TRO was issued, Mr. Krause had access to "view BFS payment data, payment systems, and copied source code." *Id.* at ¶ 9. And prior to the issuance of the TRO, another SGE, Marko Elez, "had access to BFS payment systems and payment data and systems," *id.* at ¶ 11, and access to a copy of certain BFS payment systems' source code in a 'sandbox' environment," Defendants' Memorandum of Law (ECF No. 12) ("Defs. MOL") at 6 n.2.[1]

It is imperative that the TRO remain in place to maintain the status quo that existed under the prior access policy in place prior to January 20, 2025. Defendants' concern about the ability of the Federal Reserve Bank of Kansas City or other outside contractors who perform routine and emergency system maintenance to have access to the BFS systems can be addressed with a minor modification that preserves any access that such entities had prior to January 20, 2025. However, this Court should not modify the TRO to permit political appointees to have direct access to the BFS systems. Defendants have failed to explain why their concerns are insufficiently addressed by permitting political appointees to be briefed on the operations of the BFS systems by the small group of staff who have historically had direct access to those systems, which contain personal

---

[1] A "sandbox" is a "testing environment that isolates untested code changes and outright experimentation from the production environment . . . in the context of software development . . . ." *See* Sandbox (software development) - Wikipedia.

identifying information ("PII") and confidential bank account information. There is no reason a political appointee would need direct access to the systems to perform their supervisory functions, and certainly no need for such access between now and Friday's preliminary injunction ("PI") hearing.

**ARGUMENT**

**I.   THE TRO DOES NOT RESTRAIN SENIOR TREASURY OFFICIALS FROM PERFORMING THEIR SUPERVISORY DUTIES**

Defendants maintain that the TRO restrains Treasury's senior leadership ("Appointees") "from gathering information within the Department in order to carry out [their] advisory duties," which they claim violates the Separation of Powers doctrine. Defs. MOL at 5. This conclusion is unsupported by the TRO. While the TRO precludes the Appointees from directly accessing "any Treasury Department payment record, payment systems, or any other data systems maintained" by Treasury containing "personal identifying information and/or confidential financial information of payees," it does not prevent the Appointees from receiving briefings about the BFS payment records or systems by the career civil servants who have historically been the ones to access those records and systems, even if those briefings contain information about the systems gleaned from such access. TRO at 3.

They also contend it is "important" that the Appointees be able to "receive data from [the BFS payment] systems to the extent necessary for the performance of their job duties," but readily concede the Appointees "do not ordinarily need to access or receive data from such systems," or explain why it would ever be necessary for them to need to do so. *Id*. at 6. The sole support for their contention is affidavit testimony from Mr. Krause, the uncompensated SGE appointed as a "Consultant for Treasury" less than three weeks ago. Krause Aff. ¶ 1, 10. He has no firsthand

3

knowledge of whether and to what extent the Appointees ever need to access the BFS payment systems to perform their supervisory duties. Noticeably absent is any sworn testimony from any Appointee stating that it is "important" for him or her to have access to the BFS payment systems, *much less to have such access before Friday*. Indeed, the Defendants' submission does not identify a single instance in which such access had or would be necessary.

Moreover, as five former Treasury secretaries have confirmed in an editorial published in the New York Times today, "[t]he nation's payment system has historically been operated by a very small group of nonpartisan career civil servants," including the Fiscal Assistant Secretary, whose duties have now been delegated to Mr. Krause (*see* Krause Aff. ¶ 1) but "for the prior eight decades had been reserved exclusively for civil servants to ensure impartiality and public confidence in the handling and payment of federal funds." Rubin, *et al.*, *Five Former Treasury Secretaries: Our Democracy Is Under Siege*, New York Times (Feb. 10, 2025),[2] available at https://www.nytimes.com/2025/02/10/opinion/treasure-secretaries-doge-musk.html. The former Treasury Secretaries explain with compelling force why political appointees would have no need to access the BFS records or systems:

> [P]olitical actors have not been subject to the same rigorous ethics rules as civil servants . . . . They lack training and experience to handle private, personal data – like Social Security numbers and bank account information. Their power subjects America's payments system and the highly sensitive data within it to the risk of exposure, potentially to our adversaries. And our critical infrastructure is at risk of failure if the code that underwrites it is not handled with due care.

*Id*.

---

[2] The authors of article are Robert Rubin, Lawrence Summers, Timothy Geithner, Jacob Lew, and Janet Yellin, all former Treasury Secretaries.

The language of the TRO restricting Appointees from directly accessing BFS records and systems containing PII and confidential financial information, while placing no restrictions on their ability to receive briefings from the limited number of career staff members who access such records and systems as part of their regular job duties with BFS, and "who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations," TRO at 3, requires no modification as to Appointees.

## II. UPLOADING PAYMENT INSTRUCTIONS IS NOT "GRANTING ACCESS" TO BFS SYSTEMS

Defendants note that external users upload payment instructions to the BFS payment systems to "prompt the disbursement of funds by Treasury." Defs. MOL at 9. No reasonable interpretation brings this conduct within the scope of the TRO. It is unclear why Defendants even raise this point as they appear to agree the TRO does not bar agencies and other external users from uploading payment instructions. No modification of the TRO is required to address uploading payment instructions.

## III. A MINOR MODIFICATION WILL ADEQUATELY ADDRESS THE NEED FOR ACCESS BY FEDERAL RESERVE BANK AND SYSTEM MAINTENANCE CONTRACTORS

Defendants note that the TRO will interfere with the ability of the Federal Reserve Bank of Kansas City ("Federal Reserve") to host and maintain several of the BFS payment systems that it historically has operated pursuant to a letter of designation between Federal Reserve and Treasury. Defendants raise a similar concern about the TRO restricting access by outside contractors who need to provide routine and emergency maintenance on the BFS payment systems.

These are easy to address with a minor modification. For example, the Court could simply

5

add a provision at the end of the TRO stating that, notwithstanding the above, the Federal Reserve and outside contractors are permitted to continue the same access to BFS payment systems they had prior to January 20, 2025, under the Federal Reserve's letter of designation and in accordance with the approved outside contractor list maintained by Treasury's Chief Information Officer prior to January 20, 2025.[3]

## IV.  THE TRO IS NOT APPEALABLE AND SHOULD NOT BE STAYED PENDING THE PI HEARING

Defendants' emergency motion seeks relief from the TRO just between now and the PI hearing scheduled four days from now, at which time they will have a full opportunity to be heard on whether they should be preliminarily enjoined pending the resolution of the action. To the extent they are denied any of the relief they seek on their emergency motion, they ask that the Court stay the TRO pending the disposition of "any appeal that is authorized." *See* Defs. MOL at 2, 9. Their request for a stay should be denied for two reasons.

**First**, the TRO, which will expire by its terms in a matter of days when the Court resolves Plaintiffs' PI motion, is not an appealable order. *See Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 841–42 (2d Cir. 1962) ("Ordinarily there can be no appeal from the issuance of a temporary restraining order.") (citing *Grant v. United States*, 282 F.2d 165 (2d Cir. 1960)), *Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414 (5th Cir. 1957), *cert. denied*, 356 U.S. 968 (1958), and 7 Moore, Federal Practice P65.07 at 1649 (2d Ed.1955). Defendants have offered no explanation of how the TRO would otherwise be

---

[3] Counsel continue to confer on the language for this minor modification and will likely reach agreement, but as of the filing of this opposition have not.

appealable.

**Second**, staying the TRO would permit Defendants to resume the expanded access to BFS payment systems, records, and codes they have allowed since the inauguration until the TRO issued that has already resulted in concrete injury to the States and raises the very real risk of future harm. If the TRO is stayed, Mr. Krause can resume his "over the shoulder" access to "view BFS payment data, payment systems, and coped source code." Krause Aff. at ¶ 9. And he could choose to expand his access beyond "over the shoulder" to include "direct or personal access to BFS payment data, code, or systems." *Id*. DOGE team member Marko Elez could be rehired, or another DOGE team member could be hired as an SGE and provided access to the BFS payment systems and/or given access to "all devices and accounts used by" Mr. Elez. *Id.* at ¶ 11.

In granting the TRO on February 8, 2025, the Court determined there was a likelihood of success on the merits, with Plaintiffs' statutory claims being "particularly strong," and that in the absence of a stay Plaintiffs will suffer irreparable harm "both because of the risk that the [Treasury's] new policy presents of the disclosure of sensitive and confidential information and the heightened risk that the systems in question will be more vulnerable than before to hacking." TRO at 2. Those risks are even more apparent based on the access to the BFS payment systems that has already occurred as a result of Treasury's expanded access policy as confirmed in the sworn testimony of Mr. Krause, a person "delegated" the performance of duties of the Fiscal Assistant Secretary but not actually appointed to that role or approved for that role by Treasury's ethics office. Krause Aff. ¶¶ 1, 9, 11.

In sharp contrast to the harms that would flow from staying the TRO pending the PI hearing, Defendants have failed to demonstrate how maintaining the TRO in effect through the PI

7

hearing, as slightly modified in accordance with Point III above, would cause any hardship for Defendants.

## CONCLUSION

For the foregoing reasons, the States respectfully request that Defendants' emergency motion be denied in all respects except for the minor modification set forth in Point III above, and that their request for a stay of the TRO as modified pending any appeal be denied.

Dated: February 10, 2025
      New York, NY

                                      Respectfully submitted,

**LETITIA JAMES**
  ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal Initiatives*
Colleen K. Faherty
  *Special Trial Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
  ATTORNEY GENERAL OF CALIFORNIA

By: */s/ Michael S. Cohen*
Michael S. Cohen*
  *Deputy Attorney General*
Thomas S. Patterson*
  *Senior Assistant Attorney General*
Mark R. Beckington*
John D. Echeverria*
  *Supervising Deputy Attorneys General*
Nicholas Green*
Jay Russell*
  *Deputy Attorneys General*
California Attorney General's Office
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 210-6090
Michael.Cohen@doj.ca.gov

*Counsel for the State of California*

**KRISTEN K. MAYES**
  ATTORNEY GENERAL OF ARIZONA

By: */s Joshua D. Bendor*
Joshua D. Bendor*
Joshua A. Katz*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Joshua.Katz@azag.gov

*Counsel for the State of Arizona*

**PHIL WEISER**
  ATTORNEY GENERAL OF COLORADO

By: */s Shannon Stevenson*
Shannon Stevenson*
  *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

| | |
|---|---|
| **WILLIAM TONG**<br>  ATTORNEY GENERAL OF CONNECTICUT<br><br>By: */s Matthew Fitzsimmons*<br>Matthew Fitzsimmons*<br>  *Chief Counsel*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5318<br>Matthew.fitzsimmons@ct.gov<br><br>*Counsel for the State of Connecticut* | **KATHLEEN JENNINGS**<br>  ATTORNEY GENERAL OF DELAWARE<br><br>By: /s/ *Vanessa L. Kassab*<br>Ian R. Liston<br>  *Director of Impact Litigation*<br>Vanessa L. Kassab<br>  *Deputy Attorney General*<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br><br>*Counsel for the State of Delaware* |
| **ANNE E. LOPEZ**<br>  ATTORNEY GENERAL OF HAWAIʻI<br><br>By: /s *Kalikoʻonālani D. Fernandes*<br>David D. Day*<br>  *Special Assistant to the Attorney General*<br>Kalikoʻonālani D. Fernandes*<br>  *Solicitor General*<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov<br><br>*Counsel for the State of Hawaiʻi* | **KWAME RAOUL**<br>  ATTORNEY GENERAL OF ILLINOIS<br><br>By: */s/ Darren Kinkead*<br>Darren Kinkead<br>  *Public Interest Counsel*<br>115 S. LaSalle St.<br>Chicago, Illinois 60603<br>(773) 590-6967<br>Darren.Kinkead@ilag.gov<br><br>*Counsel for the State of Illinois* |
| **AARON M. FREY**<br>  ATTORNEY GENERAL OF MAINE<br><br>By: /s/ *Jason Anton*<br>Jason Anton<br>*Assistant Attorney General*<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME  04333-0006<br>(207) 626-8800<br>jason.anton@maine.gov<br><br>*Counsel for the State of Maine* | **ANTHONY G. BROWN**<br>  ATTORNEY GENERAL OF MARYLAND<br><br>By: /s *Adam D. Kirschner*<br>Adam D. Kirschner<br>  *Senior Assistant Attorney General*<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>(410) 576-6424<br>akirschner@oag.state.md.us<br><br>*Counsel for the State of Maryland* |

**ANDREA JOY CAMPBELL**
   ATTORNEY GENERAL
   COMMONWEALTH OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz
   *State Solicitor*
One Ashburton Place
Boston, MA 02108
617-963-2427
david.kravitz@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**AARON D. FORD**
   ATTORNEY GENERAL OF NEVADA

By: /s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
   *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**KEITH ELLISON**
   ATTORNEY GENERAL OF MINNESOTA

By: /s *Liz Kramer*
Liz Kramer*
   *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**MATTHEW J. PLATKIN**
   ATTORNEY GENERAL OF NEW JERSEY

By: */s David Leit*
David Leit
   *Assistant Attorney General*
(609) 414-4301
david.leit@law.njoag.gov

Kashif Chand
   *Chief, Deputy Attorney General*
(609) 696-5160
kashif.chand@law.njoag.gov

124 Halsey Street
Newark, NJ 07101


*Counsel for the State of New Jersey*

**JEFF JACKSON**
   ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
   CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel P. Mosteller
   *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

**PETER F. NERONHA**
   ATTORNEY GENERAL OF RHODE ISLAND

By: /s/ Alex Carnevale*
Alex Carnevale*
   *Special Assistant Attorney General*
Office of the Attorney General – State of Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

**JOSH KAUL**
   ATTORNEY GENERAL OF WISCONSIN

By: /s/ Brian P. Keenan
Brian P. Keenan
   State Bar #1056525
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
keenanbp@doj.state.wi.us

*Counsel for the State of Wisconsin*

**DAN RAYFIELD**
   ATTORNEY GENERAL OF OREGON

By: /s/ Elleanor H. Chin
Elleanor H. Chin
   *Senior Assistant Attorney General*
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

*Counsel for the State of Oregon*

**CHARITY R. CLARK**
   ATTORNEY GENERAL OF VERMONT

By: /s/ Jonathan Rose
Jonathan Rose*
   *Solicitor General*
Appellate Unit
Office of the Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*