UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
            :
STATE OF NEW YORK, et al.,          :
           :
           Plaintiffs,    :    25-CV-01144 (JAV)
           :
         -v-         :    MEMORANDUM OPINION
           :         AND ORDER
DONALD J. TRUMP, *in his official capacity as*    :
*President of the United States*, et al.,    :
           :
           Defendants.    :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Defendants in this action have filed an Emergency Motion to Dissolve, Clarify, or Modify the *Ex Parte* Temporary Restraining Order, ECF No. 11 ("Emergency Motion" or "Emergency Mot."), that was entered by United States District Judge Paul A. Engelmayer, sitting in Part I, on February 8, 2025, ECF No. 6 ("February 8 TRO"). For the reasons stated herein, the Court DENIES the motion to dissolve the February 8 TRO but GRANTS IN PART AND DENIES IN PART the motion to clarify or modify its terms.

**A. Procedural History**

At approximately 9:30 p.m. on February 7, 2025, nineteen states (collectively, the "States"), represented by their respective Attorney Generals, filed a Complaint, ECF No. 1 ("Compl."), and a Request for Emergency Temporary Restraining Order Under Federal Rule of Civil Procedure 65(B), ECF No. 3. The Complaint alleged that the United States Department of the Treasury, at the direction of the President and the Secretary of the Treasury, had adopted a new policy (the "Agency Action") that expands access to the payment systems of the Bureau of Fiscal Services ("BFS") to "political appointees" and "special government employees." Compl., ¶ 5. The States contend that this policy, *inter alia*, violates the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 551 et seq.; exceeds the statutory authority of the Department of the Treasury; violates the separation of powers doctrine; and violates the Take Care Clause of the United States Constitution. The States sought an *ex parte* Temporary Restraining Order to restore the status quo prior to the Agency Action. ECF No. 4 at 28 ("[T]he States respectfully request that a TRO be entered to maintain the status quo pending adjudication of a preliminary injunction motion.").

On February 8, 2025, Judge Engelmayer, in his capacity as Part I Judge, granted the emergency request for an *ex parte* Temporary Restraining Order. ECF No. 6. Based upon his review of Plaintiffs' submissions, Judge Engelmayer determined that the States had adequately shown that they faced "irreparable harm in the absence of injunctive relief," specifically "because of the risk that the new policy presents of the disclosure of sensitive and confidential information and the heightened risk that the systems in question will be more vulnerable than before to hacking." *Id.* at 2. Judge Engelmayer further found that the States "have shown a likelihood of success on the merits of their claims, with the States' statutory claims presenting as particularly strong." *Id.*

The February 8 TRO restricted Defendants from

> granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees, other than to civil servants with a need for access to perform their job duties within the Bureau of Fiscal Services who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations [and] from granting access to all political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department, to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable

2

information and/or confidential financial information of payees.

*Id.* at 3.  The TRO scheduled a show cause hearing on Plaintiff's motion for a preliminary injunction before the undersigned at 2 p.m. on February 14, 2025.  *Id.* at 2.

On the evening of February 9, 2025, Defendants filed the Emergency Motion.  ECF No. 11.  In their motion papers, Defendants argue that the TRO contravenes Article II of the Constitution to the extent it applies to political appointees, in particular the Secretary of Treasury and other senior Treasury leadership.  ECF No. 12 ("Defs. Mem.") at 5-6.  Defendants also contend that the TRO unnecessarily restricts Federal Reserve employees and outside contractors from accessing the BFS payment systems to perform necessary routine processes and maintenance and provide operational support.  Defs. Mem. at 8-9.

That same evening, the Court ordered the parties to meet and confer regarding the Emergency Motion and see if they could reach a resolution via stipulation.  ECF No. 14.  If no agreement was made, the States were to respond to the Emergency Motion by 5 p.m. on February 10, 2025, and Defendants were to file their reply by 11 p.m. on the same day.  *Id.*

The parties reached an agreement on proposed language modifying the February 8 TRO as it regards the issue of access by Federal Reserve employees and outside contractors.  ECF No. 25 at 3.  Plaintiffs opposed any modification to the prohibition on political appointee access, however, countering that the February 8 TRO does not restrict the Treasury Department's senior political appointees from fulfilling their oversight responsibilities as their duties do not require them to have direct access to the BFS payment systems.  ECF No. 20 ("Pl. Opp.") at 3-5.

B. Discussion

"The standard[s] for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical."  *Spencer Trask Software &*

*Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002). Plaintiffs seeking a TRO must show that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020). If the federal government is the opposing party, then the latter factors merge. *Id.* at 294 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "A showing of irreparable harm is the single most important prerequisite" to the grant of injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks omitted).

Under Rule 65(b)(4) of the Federal Rules of Civil Procedure, an adverse party to a TRO issued without notice may "appear and move to dissolve or modify the order." Fed. R. Civ. P. 65(b)(4). "The court must then hear and decide the motion as promptly as justice requires." *Id.* "On a motion to dissolve a temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief." *Lapa v. JP Morgan Chase Bank, N.A.,* No. 21-CV-04737 (NSR), 2022 WL 3290677, at *2 (S.D.N.Y. Aug. 11, 2022) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 443 (1974)); *accord Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 684 F. Supp. 3d 51, 63 (E.D.N.Y. 2023). "A district court need not find proof of changed circumstances in modifying a temporary restraining order . . . but rather applies its discretion in exercising the trial court's inherent power to modify its orders." *KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, No. 20-CV-3274 (VM), 2020 WL 2554382, at *5 (S.D.N.Y. May 20, 2020).

In entering the TRO, it was Judge Engelmayer's clear intention, as had been requested, to maintain the status quo that existed prior to the adoption of the Agency Action described in the

4

Complaint until such time as a hearing could be held on the preliminary injunction motion. *See, e.g.*, *Granny Goose Foods*, 415 U.S. at 439 ("*Ex parte* temporary restraining orders . . . should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."). *Cf.* Pl. Opp. at 2 ("It is imperative that the TRO remain in place to maintain the status quo that existed under the prior access policy in place prior to January 20, 2025."). To the extent that the language of the TRO can be read to inadvertently preclude routine operations or maintenance of the BFS system as they existed prior to the challenged Agency Action, modification of the TRO is appropriate.

      There is nothing in the record to indicate that, prior to January 20, 2025, any statute, regulation, or agency policy prohibited the Secretary of Treasury or any other Senate-confirmed officer within the Treasury Department's senior leadership from accessing any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees. The parties both point to language in the Krause Affidavit, which states that the Secretary of the Treasury does "not ordinarily need to receive access to or review data from such systems." ECF No. 13, ¶ 10. Whether the Secretary and other senior officials routinely accessed or received data from these systems is a different question than whether they were previously prohibited from access, however.

      More fundamentally, there are no allegations in the Complaint suggesting that access to Treasury payment systems by such senior Treasury officials poses a threat of disclosure of

5

sensitive and confidential information, or that their access would result in systems that would be more vulnerable to hacking, the harms that animated the grant of the February 8 TRO. *See L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) ("Any injunctive relief should be narrowly tailored to fit specific legal violations." (cleaned up)). To the extent the language of the February 8 TRO could be read to place such senior officials within the intended scope of the Order, the Court grants the motion to modify the February 8 TRO to clarify that the Secretary of the Treasury and other Senate-confirmed senior Treasury Officers are not prohibited from accessing Treasury's payment systems.[1]

However, to the extent that Defendants seek to eliminate the TRO's restriction on access by "political appointees" more broadly, Defs. Mem. at 5-6, the Court denies the motion. There was a sound factual basis for this central dimension of the TRO. The Complaint alleges that the challenged Agency Action includes granting "expanded access to BFS payment systems to political appointees and 'special government employees'" affiliated with the Department of Government Efficiency. Compl., ¶ 5; *see also id.* ¶¶ 134, 135, 157, 158, 166, 174. And the harms alleged in the Complaint that Judge Engelmayer determined were sufficient to warrant the grant of the *ex parte* TRO are plainly linked to the alleged grant of access to the BFS payment systems to such political appointees and special government employees.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART the motion to modify the TRO to clarify its reach. Specifically, the second decretal paragraph of the TRO is

---

[1] Defendants contend that the February 8 TRO raised Constitutional concerns to the extent it prohibited the Secretary and other senior officers from exercising their oversight responsibilities over Treasury Department operations, or from receiving information necessary to advise the President. Defs. Mem. at 5-6. It is far from clear that the February 8 TRO prevented the Secretary from "gathering information within the Department" or receiving information in the form of briefings from career employees. *Id.* Even so, in light of the modifications the Court has made to clarify the scope of the February 8 TRO, the Court need not reach the Constitutional questions presented in the motion.

modified as followed:

> ORDERED that, sufficient reason having been shown therefor, pending the hearing of the States' application for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the defendants are (i) restrained from granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees, other than to career employees with a need for access to perform their job duties within the Bureau of Fiscal Services who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations; (ii) restrained from granting access to all political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department, to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees, EXCEPT THAT this Order shall not apply to any Officer of the United States Department of the Treasury nominated by the President and confirmed by the United States Senate, in accordance with the Appointments Clause of Article II of the Constitution (including the Secretary of the Treasury and the Deputy Secretary of the Treasury); and (iii) ordered to direct any person prohibited above from having access to such information, records and systems but who has had access to such information, records, and systems since January 20, 2025, to immediately destroy any and all copies of material downloaded from the Treasury Department's records and systems, if any. Notwithstanding the above, nothing in this Order prevents (i) contractors on the approved outside contractor list maintained by the Department of Treasury's Chief Information Officer who were engaged prior to January 20, 2025, to perform routine or emergency maintenance on BFS systems from accessing such systems to perform routine or emergency maintenance, or (ii) the Federal Reserve Bank of Kansas City from continuing to access BFS payment systems as it did prior to January 20, 2025, pursuant to the letter of designation with the Treasury in effect prior to January 20, 2025.

The Clerk of Court is directed to terminate ECF No. 11.

SO ORDERED.

Dated: February 11, 2025  
New York, New York

_____  
JEANNETTE A. VARGAS  
United States District Judge