IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| State of New York, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>Donald J. Trump in his official capacity as President of the United States, *et al.*,<br><br>   Defendants. | Civil Action No. 25-cv-01144 (JAV) |

### AMERICAN CENTER FOR LAW AND JUSTICE'S PROPOSED AMICUS BRIEF IN SUPPORT OF THE DEFENDANTS

Alexander Lonstein
LAW OFFICES OF ALEXANDER LONSTEIN
190 South Main Street
Ellenville, NY 12428
Phone: (845) 905-2216
Email: alex@alexlonsteinlaw.com

Jordan Sekulow*
Donn Parsons*
Stuart J. Roth*
Andrew J. Ekonomou*
Benjamin P. Sisney*
Nathan J. Moelker*
Liam R. Harrell*
AMERICAN CENTER FOR
   LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 641-9163
Fax: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Amicus Curiae*
*Not admitted in this jurisdiction.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ iii

INTEREST OF AMICUS .................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

    I.      Preventing the Executive Branch From Accessing Its Own Data Would Violate the Separation of Powers ............................................................................ 1

CONCLUSION ................................................................................................................................. 7

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bd. of Airport Comm'rs v. Jews for Jesus*,
   482 U.S. 569 (1987) ............................................................................................................. 1

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ................................................................................................................. 2

*Bush v. Gore*,
   531 U.S. 98 (2000) ............................................................................................................... 1

*Clinton* v. *Jones*,
   520 U.S. 681 (1997) ............................................................................................................. 4

*Colorado Republican State Central Committee v. Anderson*,
   U.S. No. 23-696 (2023) ........................................................................................................ 1

*Fischer v. United States*,
   144 S. Ct. 2176 (2024) ......................................................................................................... 1

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................................. 3, 4, 5, 6

*Marbury v. Madison*,
   5 U.S. 137 (1803) ................................................................................................................. 2

*McConnell v. FEC*,
   540 U.S. 93 (2003) ............................................................................................................... 1

*McDonnell v. United States*,
   579 U.S. 550 (2016) ............................................................................................................. 1

*Morrison v. Olson*,
   487 U.S. 654 (1988) ............................................................................................................. 5

*Myers v. United States*,
   272 U.S. 52 (1926) ............................................................................................................... 4

*Nixon v. Adm'r of Gen. Servs.*,
   433 U.S. 425 (1977) ............................................................................................................. 6

*Trump v. Mazars USA, LLP*,
  591 U. S. 848 (2020) .......................................................................................................... 1, 5

*Trump v. United States*,
  603 U.S. 593 (2024) ........................................................................................................... 1, 2

*Trump* v. *Vance*,
  591 U. S. 786 (2020) .......................................................................................................... 1, 2

*United States v. Chemical Foundation, Inc.*,
  272 U.S. 1 (1926) .................................................................................................................. 6

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ........................................................................................................... 2, 4

**Constitutional Provisions**

U.S. Const. Art. II §1, cl. 1 ..................................................................................................... 2

U.S. Const. Art. II, § 2, cl. 2 ................................................................................................... 6

**Statutes**

5 U.S.C. § 552a ....................................................................................................................... 5

**Other Authorities**

1 Annals of Cong. (J. Madison) ............................................................................................. 3

The Federalist No. 70 (Alexander Hamilton) ....................................................................... 2

The Federalist No. 72 (Alexander Hamilton) .................................................................... 3, 6

## INTEREST OF AMICUS[1]

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties and principles secured by law, including separation of powers. ACLJ attorneys have appeared often before the Supreme Court as counsel for parties, *e.g.*, *Colorado Republican State Central Committee v. Anderson*, U.S. No. 23-696 (2023); *Trump v. Vance*, 591 U.S. 786 (2020); *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020); *McConnell v. FEC*, 540 U.S. 93 (2003); or as amici, *e.g.*, *Trump v. United States*, 603 U.S. 593 (2024); *Fischer v. United States*, 144 S. Ct. 2176 (2024); *McDonnell v. United States*, 579 U.S. 550 (2016); and *Bush v. Gore*, 531 U.S. 98 (2000). The ACLJ has a fundamental interest in maintaining the integrity of the founders' constitutional design, and here, supporting the separation of powers and the authority of the President to administer the executive branch and execute the laws of the United States.

## ARGUMENT

**I. Preventing the Executive Branch From Accessing Its Own Data Would Violate the Separation of Powers.**

Plaintiffs seek the shockingly extraordinary relief of prohibiting the executive branch of the federal government from reviewing its own information in order to carry out its own constitutionally assigned duties and responsibilities. They seek to blind the government to the data within its custody and management. Such unprecedented relief would be an unjustified and unsupported infringement on the separation of powers. It is certainly not required by the law, which instead extends deference to the executive branch's own authority to carry out its duties.

---

[1] No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

1

> Energy in the Executive is a leading character in the definition of good government. It is essential to the protection of the community against foreign attacks; it is not less essential to the steady administration of the laws; to the protection of property against those irregular and high-handed combinations which sometimes interrupt the ordinary course of justice; to the security of liberty against the enterprises and assaults of ambition, of faction, and of anarchy.

The Federalist No. 70 (Alexander Hamilton).

Article II of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. Art. II §1, cl. 1. "The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787." *Buckley v. Valeo*, 424 U.S. 1, 124 (1976). And the President's duties are of "unrivaled gravity and breadth." *Trump v. Vance*, 591 U.S. 786, 800 (2020). As the Supreme Court has recently highlighted, "he bears responsibility for the actions of the many departments and agencies within the Executive Branch." *Trump v. United States*, 603 U.S. 593, 607 (2024). In fact, "courts have 'no power to control [the President's] discretion' when he acts pursuant to the powers invested exclusively in him by the Constitution." *Id.* (quoting *Marbury v. Madison*, 5 U.S. 137, 166 (1803)).

Nor is this new or novel. The President's plenary control over the Treasury Department has gone on essentially unquestioned since the founding of the Republic. When courts face "a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned," that has been "engaged in by Presidents who have also sworn to uphold the Constitution, making as it were such exercise of power part of the structure of our government," they recognize it "may be treated as a gloss on 'executive Power' vested in the President by § 1 of Art. II." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-11 (1952) (Frankfurter, J., concurring). Since the First Congress's creation of the Treasury Department in 1789, the executive

2

branch has maintained direct control over financial administration. This unbroken practice of presidential oversight over Treasury operations, including access to and control of financial data, has persisted without serious challenge for over two centuries. Labelling plaintiff's requested relief as "unprecedented" is an understatement that fails to capture how revolutionary it is.

When our Constitution was drafted, the founders were very careful to "ensure that 'those who are employed in the execution of the law will be in their proper situation, and the chain of dependence be preserved; the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010) (quoting 1 Annals of Cong., at 499 (J. Madison)). This principle has many applications, but it includes the administration of the Treasury Department; all federal employees depend on the President as the source of their power.

In fact, in the Federalist Papers, Alexander Hamilton particularly highlighted the executive's role in administrating the nation's finances. He emphasized that "the preparatory plans of finance," and "the application and disbursement of the public moneys in conformity to the general appropriations of the legislature," are executive tasks that "constitute what seems to be most properly understood by the administration of government. The persons, therefore, to whose immediate management these different matters are committed, ought to be considered as the assistants or deputies of the chief magistrate[.]" The Federalist No. 72 (Alexander Hamilton).

The President, as the chief of the executive branch, is given the authority and responsibility to administer public funds, to oversee their disbursement, and to ensure that funds are distributed in accordance with law. Those who manage federal funds "ought to be considered as the assistants or deputies of the chief magistrate, and on this account, they ought to derive their offices from his appointment, at least from his nomination, and ought to be subject to his

superintendence." *Id.* In other words, each employee in the Treasury Department, at every level, derives authority from the President, and is functioning as his subordinate and pursuant to his authorization. "[T]he President 'cannot delegate ultimate responsibility or the active obligation to supervise that goes with it,' because Article II 'makes a single President responsible for the actions of the Executive Branch.'" *Free Enter. Fund*, 561 U.S. at 496-497 (quoting *Clinton* v. *Jones*, 520 U.S. 681, 712-713 (1997) (Breyer, J., concurring in judgment)).

      The constitutional structure that Article II compels is a system where all executive authority derives from the president. *Myers v. United States* reaffirmed the principle that Article II confers on the President "the general administrative control of those executing the laws." 272 U.S. 52, 164 (1926). "It is *his* responsibility to take care that the laws be faithfully executed. The buck stops with the President, in Harry Truman's famous phrase." *Free Enter. Fund*, 561 U.S. at 493. The federal bureaucracy is—and must be—supervised and directed by political leadership that is ultimately accountable to the President.

      This is especially true here, where the agency at issue is the Department of the Treasury. The Treasury's core functions of managing government finances and implementing fiscal policy are quintessentially executive in nature, making presidential oversight and control not just appropriate but constitutionally required. The Supreme Court has emphasized that "the Constitution . . . contemplates that practice will integrate the dispersed powers into a *workable* government." *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring). Presidential oversight of Treasury data is essential for core executive functions including budget development, crisis response, and economic policy coordination. Restricting executive access to Treasury data would fatally undermine the President's ability to fulfill these fundamental duties. Given the Treasury Department's critical role in economic security and foreign policy implementation, restrictions on

executive access to Treasury data would impermissibly intrude upon the President's constitutional authority as Commander in Chief.

Accordingly, consistent with the Constitution's design, this Court cannot order that certain operations of an executive agency be performed wholly by civil servants, outside the ambit of accountability and the presidential chain of command. The Constitution creates a unitary executive, the President. The President is unique, as "the only person who alone composes a branch of government," *Trump* v. *Mazars USA, LLP*, 591 U.S. 848, 868 (2020). All members of the executive branch, including civil service employees, derive authority from him and are subject to his instruction. The Supreme Court has warned against interpretations that would "impede the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). Restricting executive access to Treasury data would create precisely such impairment, fragmenting executive policymaking, hampering crisis response, and creating dangerous information silos. The Constitution requires clear lines of executive accountability, not a fractured system where critical government data is walled off from presidential oversight. *See Free Enterprise Fund*, 561 U.S. at 449.

It is this principle that should guide this Court. For example, the Privacy Act sets forth conditions for disclosure of private information and precludes an agency from inappropriate disclosures. 5 U.S.C. § 552a(b). But the Privacy Act lists exceptions: an agency may disclose the records it maintains within the agency "to those officers and employees of the agency . . . who have a need for the record in the performance of their duties." *Id.* § 552a(b)(1) (emphasis added). The government has made clear in its filings that that kind of access is precisely the kind of access that occurred here. In light of the need for the executive to perform its duties, the plaintiffs cannot defeat this determination. "The presumption of regularity supports the official acts of public

5

officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). Courts recognize the need to interpret statutes consistently with the Constitution. The government's acts here should be given appropriate deference, and selective portions of the Privacy Act not misused as a cudgel against the separation of powers.

Barring the executive branch from accessing its own information would be a remarkable intrusion in direct conflict with Article II of the Constitution and the unitary structure it provides. Basic constitutional accountability requires that every executive agency's work be supervised by politically accountable leadership, who ultimately answer to the President. "The people do not vote for the 'Officers of the United States.' Art. II, § 2, cl. 2. They instead look to the President to guide the 'assistants or deputies . . . subject to his superintendence.'" *Free Enter. Fund*, 561 U.S. at 497-498 (quoting Federalist 72 (Alexander Hamilton)). Without the ability, through his appointees, to review executive information, the President, the people's elected executive, has been denied the ability to conduct that superintendence.

## CONCLUSION

For the foregoing reasons, Amicus Curiae the American Center for Law and Justice respectfully asks this Court to deny the Plaintiffs' Motion for a Preliminary Injunction.

Respectfully Submitted,

Alexander Lonstein
LAW OFFICES OF ALEXANDER LONSTEIN
190 South Main Street
Ellenville, NY 12428
Phone: (845) 905-2216
Email: alex@alexlonsteinlaw.com

Jordan Sekulow*
Donn Parsons*
Stuart J. Roth*
Andrew J. Ekonomou*
Benjamin P. Sisney*
Nathan J. Moelker*
Liam R. Harrell*
AMERICAN CENTER FOR
  LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 641-9163
Fax: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Amicus Curiae*
*Not admitted in this jurisdiction.

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, I electronically filed a copy of the foregoing Amicus Curiae Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation.

Dated: February 12, 2025

/s/ Alexander Lonstein
Alexander Lonstein
American Center for Law & Justice
*Counsel for Amicus Curiae*