# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF NEW MEXICO**, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>**ELON MUSK**, *et al.*<br><br>Defendants. | Civil Action No. 25-cv-429 (TSC) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, fourteen states represented by their Attorneys General, have filed an Emergency Motion for a Temporary Restraining Order ("TRO") against Elon Musk, the U.S. Department of Government Efficiency ("DOGE") Service, U.S. DOGE Service Temporary Organization, and President Trump. Emergency Mot. for TRO, ECF No. 6 ("Mot."). Based on the parties' briefing, oral argument, and the current record, the court finds that Plaintiffs have not carried their burden of showing that they will suffer imminent, irreparable harm absent a temporary restraining order, and therefore Plaintiffs' motion is DENIED.

### I. BACKGROUND

On January 20, 2025, President Trump established the "Department of Government Efficiency" and a subsidiary organization, U.S. DOGE Service Temporary Organization (collectively, "DOGE"), by Executive Order. Compl. ¶¶ 52–56, ECF No. 2; Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025). Elon Musk directs the work of DOGE personnel but is formally classified as a "special government employee." Compl. ¶¶ 59–63; *see also* Decl. of Joshua Fisher ¶¶ 3–6, ECF No. 24-1 (classifying Musk as a "non-career Special Government Employee" and "Senior Advisor to the President").

Plaintiffs brought this action for declaratory and injunctive relief, alleging that Musk's actions violate the Appointments Clause of the U.S. Constitution because he has not been nominated by the President and confirmed by the Senate as an "Officer[] of the United States," U.S. Const., Art. II, § 2, cl. 2; Compl. ¶¶ 253–60, and that Musk and DOGE lack statutory authority for their actions, Compl. ¶¶ 261–72. Plaintiffs allege that Musk "exercises virtually unchecked power across the Executive Branch, making decisions about expenditures, contracts, government property, regulations, and the very existence of federal agencies." *Id.* ¶ 67. They claim that in the last few weeks, Musk and DOGE Defendants have gained access to "sensitive data, information, systems, and technological and financial infrastructure across the federal government." *Id.* ¶ 68. Defendants have allegedly used this unfettered access and authority to terminate personnel, ¶¶ 112, 178, 196; place entire agencies on temporary leave, *id.* ¶¶ 102–04; transfer data to outside servers, *id.* ¶¶ 111–114; take over physical office spaces, *id.* ¶¶ 165–66; and terminate contracts valued in the hundreds of millions of dollars, *id.* ¶ 170. Defendants concede that there is no apparent "source of legal authority granting" Musk or DOGE "the power to order personnel actions" at federal agencies but do not deny that Defendants are taking such actions. Defs.' Notice at 1–2, ECF No. 24.[1]

---

[1] Defendants filed a Notice and Declaration by Joshua Fisher, Director of the Office of Administration, responding to the court's questions during the February 17, 2025 hearing. Defendants state: "Neither of the President's Executive Orders regarding 'DOGE' contemplate— much less furnish—[] authority" to "order personnel actions at any of the agencies" specified. Defs.' Notice at 2. Based on the Executive Orders' plain text, "new career appointment hiring decisions" at each federal agency "shall be made in consultation with the agency's DOGE Team Lead" and agencies "shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025). At a minimum, this language "contemplates" DOGE's authority over personnel actions. Defense counsel is reminded of their duty to make truthful representations to the court. Fed. R. Civ. P. 11(b).

On February 14, 2025, Plaintiffs moved for a TRO to enjoin eleven categories of conduct by Musk and DOGE. Pls.' Proposed TRO, ECF No. 6-13.[2] That day, the court held a hearing during which Plaintiffs significantly narrowed the scope of their requested relief. At the court's request, Plaintiffs filed a revised proposed TRO, which asks the court to enjoin Musk and DOGE Defendants from: (1) accessing, copying, or transferring any data systems in the Office of Personnel Management, and the Departments of Education, Labor, Health and Human Services, Energy, Transportation, and Commerce; and (2) terminating or otherwise placing on leave any

---

[2] Plaintiffs asked the court to enter the following order:

> Mr. Musk, U.S. DOGE Service; U.S. DOGE Service Temporary Organization, along with personnel associated with these entities, are [ordered to identify] all ways in which any data obtained through unlawful agency access was used, including whether it was used to train any algorithmic models or create/obtain derivative data, and destroy any copies or any derivative data in Defendants' possession, custody, or control, and that they are temporarily enjoined from:
>
> (a) ordering any change in the disbursement of public funds by agencies;
> (b) extending offers on behalf of the United States that would bind the government to an appropriation that has not been authorized by law;
> (c) cancelling government contracts;
> (d) disposing of government property;
> (e) ordering the rescission or amendment of regulations;
> (f) making personnel decisions for agency employees;
> (g) taking steps to dismantle agencies created by law or otherwise asserting control over such agencies, including, e.g., placing employees on administrative leave;
> (h) accessing sensitive and confidential agency data, using agency data for other than its authorized purpose;
> (i) altering agency data systems without authorization by law and without taking all appropriate protections against cybersecurity risks; or
> (j) engaging in any other conduct that violates the Appointments Clause or exceeds statutory authority.

Pls.' Proposed TRO at 1–2, ECF No. 6-13.

officers or employees within those same agencies. Pls.' Proposed TRO at 1–2, ECF No. 19-1.[3] In light of the narrowed scope and the parties' briefing, the court heard further argument on February 17, 2025.

## II.   LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 99 (D.D.C. 2021) (quoting *Postal Police Off. Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020)). As with a preliminary injunction, a party seeking a TRO must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038

---

[3] Plaintiffs submitted the following proposed revised order:

> Defendants Elon Musk, U.S. DOGE Service, U.S. DOGE Service Temporary Organization, and their agents, officers, and employees, or anyone acting in active concert with them, are temporarily restrained from:
>
> (a) Accessing or continuing to access any data systems and the information and code contained within those systems, including but not limited to systems containing sensitive or confidential agency and personnel data, at the Office of Personnel Management, the Department of Education, the Department of Labor, the Department of Health and Human Services, the Department of Energy, the Department of Transportation, and the Department of Commerce, or any components of any of those agencies, or copying, transferring, or in any way disseminating any data from any of the agencies identified in this paragraph; and
>
> (b) Terminating, furloughing, or otherwise placing on involuntary leave—whether paid or unpaid—any officers or employees of the federal government working within any of the Departments and agencies identified in paragraph (a), other than officers or employees of the Defendant entities, or directing any federal department or agency, not including the Defendant entities, to take the prohibited actions described in this paragraph.

Pls.' Proposed Order at 1–2, ECF No. 19-1 (footnotes omitted).

(D.C. Cir. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). A court also considers the "underlying purpose" of a TRO—"preserving the status quo and preventing irreparable harm" until it has an opportunity to rule on the merits. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 202 (D.D.C. 2011) ("The court may issue a temporary restraining order ('TRO') when a movant is faced with the possibility that irreparable injury will occur even before the hearing for a preliminary injunction required by Federal Rule of Civil Procedure 65(a) can be held."); *Elec. Data Sys. Fed. Corp. v. Gen. Servs. Admin.*, 629 F. Supp. 350, 352 (D.D.C. 1986) ("In the context of the limited purpose of a temporary restraining order, the Court's analysis of these factors seeks principally to ensure preservation of the status quo.").

### III.   ANALYSIS

The court's analysis here begins and ends with irreparable harm, "a threshold requirement in granting temporary injunctive relief." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009) (citing *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). To show irreparable harm, the "injury alleged must be 'both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief.'" *Church v. Biden*, 573 F. Supp. 3d 118, 138 (D.D.C. 2021) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)). The "'possibility of irreparable harm' is not enough." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A plaintiff must demonstrate "a clear and present need for extraordinary equitable relief to prevent harm." *Id.* (citation omitted). "If a party fails to make a sufficient showing of irreparable injury, a court may deny a motion for injunctive relief." *Beattie*, 663 F. Supp. 2d at 8; *Hulli*, 549 F. Supp.

3d at 99 ("[M]ovants are barred from receiving such relief should they fail to establish irreparable injury.").

On the record before it, the court cannot conclude that Plaintiffs satisfy the "high standard for irreparable injury." *Church*, 573 F. Supp. 3d at 138 (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Plaintiffs' declarations are replete with attestations that *if* Musk and DOGE Defendants cancel, pause, or significantly reduce federal funding or eliminate federal-state contracts, Plaintiff States will suffer extreme financial and programmatic harm:

- "If the actions of [DOGE], led by Elon Musk, cancel federal-state contracts or significantly federal funding for/from partner federal agencies, it will impact Washington State's ability to adequately serve and uphold its own legal commitments to its residents." Decl. of Katherine 'K.D.' Chapman-See ¶ 5, ECF No. 6-2.

- "Upon information and belief if [the Department of Labor's] sensitive data is compromised, the State of New Mexico would be vulnerable to embezzlement, cyber theft, ransom attacks, and other financial crimes." Decl. of Sarita Nair ¶ 26, ECF No. 6-4.

- "If existing programs are canceled or federal workers administering these programs are terminated, the state of New Mexico will not be able to receive reimbursements." Decl. of Wayne Propst ¶ 15, ECF No. 6-11.

- Connecticut's Department of Social Services funding is "potentially impacted by the actions of DOGE." Decl. of Jeffrey R. Beckham ¶ 9, ECF No. 6-12.

The court is aware that DOGE's unpredictable actions have resulted in considerable uncertainty and confusion for Plaintiffs and many of their agencies and residents. *See, e.g.*, Decl. of Ben Henderson ¶ 11, ECF No. 6-7; Decl. of Kimberly Bush-Koleszar ¶¶ 4-6, ECF No. 6-9. But the "possibility" that Defendants *may* take actions that irreparably harm Plaintiffs "is not enough." *See Church*, 573 F. Supp. 3d at 138 (citation omitted); *Beattie*, 663 F. Supp. 2d at 9 ("[F]eared possibilities fall short of the imminent threat of injury required to grant a TRO."). It remains "uncertain" when and how the catalog of state programs that Plaintiffs identify will suffer. *Church*,

573 F. Supp. 3d at 141.  When litigants have identified specific individuals or programs imminently targeted by Defendants, courts have issued appropriately tailored TROs.  *See*, *e.g.*, *Drs. for Am. v. OPM*, No. 25-cv-322-JDB, 2025 WL 452707, at *8–11 (D.D.C. Feb. 11, 2025) (granting TRO prohibiting further removal or modification and compelling reinstatement of CDC, DHHS, and FDA webpages); *AIDS Vaccine Advoc. Coal. v. Dep't of State*, No. 25-cv-400-AHA, 2025 WL 485324, at *4–6 (D.D.C. Feb. 13, 2025) (granting TRO prohibiting Defendants from implementing the "blanket suspension of foreign aid funding," but refusing to enjoin specific personnel or operational decisions absent "evidence of non-compliance" with TRO).  Conversely, when litigants have failed to show imminent harm, courts in this district have refused to issue emergency TROs.  *See*, *e.g.*, Mem. Op. & Order at 11, 13, *Univ. of Cal. Student Assoc. v. Carter*, No. 25-cv-354-RDM (D.D.C. Feb. 17, 2025), ECF No. 20 (denying TRO motion because Plaintiff failed to show "mere 'access' to personal data by government employees who are not formally authorized to view it, without more, creates an irreparable injury"); *Doe v. OPM*, No. 25-cv-234-RDM, 2025 WL 513268, at *7 (D.D.C. Feb. 17, 2025) ("Plaintiffs have failed to demonstrate that there is a significant risk that their .gov email addresses will be stolen or publicly disclosed in the next 14 days.").

Plaintiffs ask the court to take judicial notice of widespread media reports that DOGE has taken or will soon take certain actions, such as mass terminations.  But these reports cannot substitute for "specific facts in an affidavit or a verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result." Fed. R. Civ. P. 65(b)(1)(A); *see also Gomez v. Kelly*, 237 F. Supp. 3d 13, 14 (D.D.C. 2017); *cf. AIDS Vaccine Advoc. Coal.*, 2025 WL 485324, at *3–4.  The court may take judicial notice of news articles for their existence, but not for the truth of the statements asserted therein.  *See*, *e.g.*, *Hourani v. Psybersolutions*, 164 F.

Supp. 3d 128, 132 n.1 (D.D.C. 2016); *cf. Banks v. Booth*, 459 F. Supp. 3d 143, 149, 154 (D.D.C. 2020) (refusing to consider counsel's assertions during preliminary injunction oral argument absent corroborating record evidence). And even if the court could appropriately consider the news reports in conjunction with Defendants' vague representation that "a select set of agencies in fact terminated a number of employees at the end of last week," Defs.' Notice at 1, that would not cure the motion's deficiencies. Terminating thousands of federal employees may cause extreme harm to the individual employees, and potentially the institution writ large. *See, e.g.*, *Dellinger v. Bessent*, No. 25-cv-385-ABJ, 2025 WL 471022, at *10–11 (D.D.C. Feb. 12, 2025); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-cv-352-CJN, 2025 WL 435415, at *2 (D.D.C. Feb. 7, 2025). But "harm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *Church*, 573 F. Supp. 3d at 146 (citations omitted). Plaintiffs have not adequately linked Defendants' actions to imminent harm to *Plaintiff States* in particular.

That said, Plaintiffs raise a colorable Appointments Clause claim with serious implications. Musk has not been nominated by the President nor confirmed by the U.S. Senate, as constitutionally required for officers who exercise "significant authority pursuant to the laws of the United States." *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (citation omitted); Compl. ¶ 64; TRO Mot. Hr'g Tr. 29:07–22 (Feb. 17, 2025), ECF No. 27. Bypassing this "significant structural safeguard[] of the constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997), Musk has rapidly taken steps to fundamentally reshape the Executive Branch, *see* Compl. ¶¶ 66–76; Pls.' Reply at 1–3, ECF No. 21. Even Defendants concede there is no apparent "source of legal authority granting [DOGE] the power" to take some of the actions challenged here. *See*

Page **8** of **10**

Defs.' Notice at 2.  Accepting Plaintiffs' allegations as true, Defendants' actions are thus precisely the "Executive abuses" that the Appointments Clause seeks to prevent.  *Edmond*, 520 U.S. at 659.  But even a strong merits argument cannot secure a temporary restraining order at this juncture.[4]

Plaintiffs legitimately call into question what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight.  In these circumstances, it must be indisputable that this court acts within the bounds of its authority.  Accordingly, it cannot issue a TRO, especially one as wide-ranging as Plaintiffs request, without clear evidence of imminent, irreparable harm to these Plaintiffs. The current record does not meet that standard.

---

[4] In some circumstances, constitutional violations may constitute irreparable injury.  *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009).  Plaintiffs have not identified, and the court is unaware of, any case granting a TRO based on an Appointments Clause violation.  And the D.C. Circuit has recently held that at least certain Appointments Clause violations are "not, without more, an injury that necessitates preliminary injunctive relief."  *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1332–33 (D.C. Cir. 2024) (collecting cases).

## CONCLUSION

For the reasons explained, it is hereby **ORDERED** that Plaintiffs' Emergency Motion for a Temporary Restraining Order is **DENIED**. It is further **ORDERED** that the parties shall meet and confer regarding further proceedings. If Plaintiffs intend to move for a preliminary injunction, the parties shall file a proposed briefing schedule, and state their positions on consolidating the merits with the preliminary injunction briefing, by 5:00 PM on February 19, 2025.

Date: February 18, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge