# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

    *Plaintiffs*,

v.

PRESIDENT DONALD J. TRUMP, *et al.*,

    *Defendants.*

No. 25-cv-1144 (JAV)

**BRIEF OF THE STATE OF IOWA AND 19 OTHER STATES AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO <u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................................ii

INTEREST OF *AMICI CURIAE* ...................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.      Article II Grants the President Authority to Control the Operations of Executive Branch Agencies, Including Access to the Payment Systems of the Bureau of Fiscal Services ................................................................2

    II.     The Preliminary Injunction Sought by Plaintiffs Would Servely Harm the Public Interest ......................................................................................4

CONCLUSION................................................................................................................................6

# **TABLE OF AUTHORITIES**

Cases

*Bowsher v. Synar*,
  478 U.S. 714 (1986) ......................................................................................................... 4
*Clinton v. City of New York*,
  524 U.S. 417 (1998) ......................................................................................................... 4
*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ..................................................................................................... 2, 3
*In re Aiken Cnty.*,
  645 F.3d 428 (D.C. Cir. 2011) ...................................................................................... 3, 4
*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ......................................................................................................... 2
*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ......................................................................................................... 2
*Springer v. Gov't of Philippine Islands*,
  277 U.S. 189 (1928) ......................................................................................................... 3
*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*,
  120 F.4th 59 (2d Cir. 2024) ............................................................................................. 5
*Texas v. EPA*,
  91 F.4th 280 (5th Cir. 2024) ............................................................................................ 5
*Trump v. United States*,
  603 U.S. 593 (2024) ......................................................................................................... 3
*United States v. Lopez*,
  514 U.S. 549 (1995) ......................................................................................................... 1

Statutes

U.S. Const. Art. II ............................................................................................................. 1, 2

**INTEREST OF AMICI CURIAE**

The Supreme Court has recognized that the States have a unique role in preserving the vitality of the Constitution's structural guarantees of liberty. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 575–77 (1995) (Kennedy, J., concurring). As described below, this case involves an unprecedented assault on the separation of powers and the President's authority under Article II of the Constitution. The States have a strong interest in preservation of norms and our Constitutional order. *Amici curiae* are the States of Iowa, Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, and Utah.

Ultimately, Plaintiffs here are upset because one set of bureaucrats in the Executive Branch have access to data that they believe only other bureaucrats in the Executive Branch should have access to. This type of fiddling around with the President's prerogatives asks this Court to insert itself into core Executive decision-making regarding policy and personnel. The President is working to combat what former President Biden's administration identified, at minimum, as hundreds of billions of dollars in fraud. *See* U.S. Government Accountability Office, *2018-2022 Data Show Federal Government Loses an Estimated $233 Billion to $521 Billion Annually to Fraud, Based on Various Risk Environments*, GAO-24-105833 (Apr. 16, 2024), *available at* https://perma.cc/8UZ6-BEYV. This action thus urgently raises the liberty interests of the citizens of the *Amici* States. Accordingly, the *Amici* States have a direct and substantial interest in the resolution of this case.

**ARGUMENT**

This lawsuit presents an unprecedented attempt by openly partisan plaintiffs to usurp the President's constitutional authority to manage the Executive Branch. The injunctive relief sought

1

by Plaintiffs, if granted, will directly violate Article II of the Constitution. And, if granted, it will severely undermine the public interest by preventing the President from fulfilling the promises that induced the American voters to return President Trump to office. The Court should deny Plaintiffs' request for a preliminary injunction.

> I. **Article II Grants the President Authority to Control the Operations of Executive Branch Agencies, Including Access to the Payment Systems of the Bureau of Fiscal Services.**

At its core, this case involves an attempt by the President's political opponents to dictate which employees of the Executive Branch can access computer systems belonging to an Executive Branch agency. The Court should deny that relief, which would involve an unprecedented breach of the separation of powers. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. Art. II, § 1 cl. 1, § 3). "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)). "Article II confers on the President the general administrative control of those executing the laws." *Id.* (quotation omitted). That grant establishes that "the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity," including the "management of the Executive Branch." *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982).

There can be no serious doubt that the President's broad authority to oversee and control Executive Branch employees includes the power to authorize particular Executive Branch employees to access the computer systems of an Executive agency. *See Free Enterprise Fund*, 561 U.S. at 492. Were it otherwise, the President could not ensure that the laws are faithfully executed. "The President has been given the power to oversee executive officers." *Id.* at 501. As a

2

constitutional matter, the President is "not limited, as in Harry Truman's lament, to persuading his unelected subordinates to do what they ought to do without persuasion." *Id.* at 501–02 (cleaned up). Rather, "[t]he Framers sought to encourage energetic, vigorous, decisive, and speedy execution of the laws by placing in the hands of a single, constitutionally indispensable, individual the ultimate authority that, in respect to the other branches, the Constitution divides among many." *Trump v. United States*, 603 U.S. 593, 610 (2024).

If certain government employees provide information that the President deems unreliable, he must have the authority to authorize other government employees to check the accuracy of that information. And if certain government employees fail—either willfully or through lack of capacity—to carry out the President's lawful policy choices, he must have the authority to task other government employees with carrying out those lawful choices in their stead. Under Article II, the President—and the President alone—exercises ultimate authority over such issues. *See, e.g.*, *Free Enterprise Fund*, 561 U.S. at 492–98. The Court has no authority to substitute its own views for the oversight that the Constitution vests exclusively in the President. *See Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 202 (1928) ("[T]he judiciary cannot exercise either executive or legislative power.").

These separation-of-powers considerations do not exist for the President's benefit. Instead, they are critical to the core constitutional values of liberty and democratic accountability. "The Framers were particularly cognizant . . . of the link between accountability of officials in the Legislative and Executive Branches and individual liberty." *In re Aiken Cnty.*, 645 F.3d 428, 440 (D.C. Cir. 2011) (Kavanaugh, J., concurring). And that makes sense. Our Founding Fathers "designed our constitutional structure with the idea that unaccountable power is inconsistent with individual liberty." *Id.* That is partly because the "President is dependent on the people for election

3

and re-election, but the officers of agencies in the Executive Branch are not." *Id.* "Presidential control of those agencies thus helps maintain democratic accountability and thereby ensure the people's liberty." *Id.* For that reason, any encroachment on the separation of powers necessarily implicates a threat to individual liberty. "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers." *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring); *see also Bowsher v. Synar*, 478 U.S. 714, 730 (1986) ("The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty.").

Indeed, this is not the first challenge to President Trump's authority—nor the first that a district court has rejected. *See American Federation of Government Employees, AFL-CIO v. Ezell*, 1:25-cv-10276-GAO, Dkt. 66, at *2–3 (D. Mass. Feb. 12, 2025). There, the plaintiffs challenged the President's authority to offer job buyouts to federal employees. *Id.* at *1. But the plaintiffs were "not directly impacted by the directive." *Id.* at *3. The Court also found that there was no subject matter jurisdiction because directly affected potential plaintiffs had alternative means of seeking relief through the administrative process. *Id.* at *4–5. Plaintiffs here are similarly situated.

For those reasons, the Constitution provides no basis for Plaintiffs—or the Court—to usurp the President's exclusive authority to manage and control the Executive Branch. Especially when it comes to core Executive roles like overseeing the Executive's employment actions. Plaintiffs' requested injunction not only deprives the President of his constitutionally allocated authority—it poses a direct threat to the liberty of the American people. The Court should deny Plaintiffs' request for a preliminary injunction.

## II. The Preliminary Injunction Sought by Plaintiffs Would Severely Harm the Public Interest.

A party seeking a preliminary injunction "must show . . . that a preliminary injunction is in the public interest." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 79 (2d Cir. 2024). This requirement addresses "the public consequences in employing the extraordinary remedy of injunction." *Id.* at 85 (quotation omitted). Here, the public interest strongly counsels against granting the injunction sought by Plaintiffs.

In the 2024 Presidential Election, the American electorate voted decisively to re-elect President Trump. A core component of President Trump's campaign platform was to disrupt the status quo of the federal bureaucracy, to ensure that federal bureaucrats are accountable to democratically elected officials, and to eliminate wasteful government spending that has resulted from a longstanding lack of transparency and accountability. Since the first day of his term, President Trump has acted with resolve to fulfill this campaign promise.

The conduct at issue here directly relates to President Trump's fulfillment of his campaign promises. The President has tasked certain Executive Branch employees—in particular, employees from within the Executive Office of the President and the U.S. Digital Service, since renamed— to examine the Executive Branch agency's operations to identify instances of fraud, waste, abuse, and misconduct. That is precisely what the voters sought when they elected President Trump to office. To stifle this presidentially directed oversight would deprive the voters of a key benefit they hoped to obtain. "[Q]uadrennial elections have consequences." *Texas v. EPA*, 91 F.4th 280, 285 (5th Cir. 2024). Here, the consequences of the 2024 Election include transparency, democratic accountability, and the elimination of fraud and waste.

Depriving the voters of those unalloyed goods promised during a campaign and voted on by a popular-vote winning percentage of the population is bad enough. Doing so at the behest of

5

plaintiffs acting from partisan motives is even worse. Here, the elected officials pursuing this case have made clear that they intend to do whatever they can to stymie President Trump's policy agenda. Public reporting indicates that, just days after the 2024 Election, Democrat Attorneys General (many of whom are Plaintiffs here) had already entered into a confidential agreement to challenge anticipated actions of the forthcoming Trump Administration. *See* Seamus Othot, *Oversight Project Releases Secret Pact—Which Maine AG Frey Signed—on Resisting Trump Hatched Just Days After the November Election*, MAINE WIRE (Feb. 11, 2025), *available at* https://perma.cc/FG8D-J3D5. This secret agreement tracks the public messaging of these Democrat officials, who have made attacks on President Trump the heart of their agendas. For example, the lead plaintiff in this case—New York Attorney General Letitia James—has made attacking President Trump her calling card throughout her career. When she first ran for her office in 2018, she stated that "what is fueling this campaign, what is fueling my soul right now, is Trump." Emma Colton, *'Playing with the courts': Trump admin hit with dozens of suits after years of president condemning lawfare*, FOX NEWS (Feb. 11, 2025), *available at* https://perma.cc/9PXU-LUF3. Here, General James and her colleagues seek to weaponize the federal judiciary to nullify the will of the American voters. The Constitution does not permit this result. The Court should deny Plaintiffs' request for a preliminary injunction.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' request for a preliminary injunction.

Dated: February 13, 2025

BRENNA BIRD
Attorney General of Iowa

ERIC H. WESSAN*
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Admitted *pro hac vice*

Respectfully submitted,

*/s/ David H. Thompson*
David H. Thompson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9659
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Admitted *pro hac vice*

## ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Tim Griffin
Attorney General of Arkansas

John Guard
Acting Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Todd Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Andrew T. Bailey
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North Dakota

Dave Yost
Attorney General of Ohio

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of South Carolina

Marty Jackley
Attorney General of South Dakota

Ken Paxton
Attorney General of Texas

Derek E. Brown
Attorney General of Utah

7

## CERTIFICATE OF SERVICE

I certify that on February 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants. Any other counsel of record will receive the foregoing via email in PDF format.

*/s/ David H. Thompson*
David H. Thompson

*Counsel for Amici Curiae*
