# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

State of New York, *et al.*

         *Plaintiffs*,

           *v.*

U.S. Department of the Treasury, *et. al.*

         *Defendants*.

Case No. 1:25-cv-1144-JAV

I, Kari Mencl, declare under penalty of perjury:

1.  I currently serve as the Chief of Personnel Security in the Office of Security Programs (OSP) in the Office of Intelligence and Analysis (OIA) for the U.S. Department of the Treasury (Treasury), and have been employed in this role since November 2020.  I report to the Executive Director for OSP.  I am a career civil servant.  Prior to my current role, I served as a Special Security Officer with OSP.  I have been employed at Treasury since September 2019.

2.  In my current role, I oversee, among other things, Treasury's background vetting programs as they relate to potential new employees and contractors.  I manage OSP's Personnel Security Program, which includes vetting for security clearances and vetting to determine the suitability and fitness of applicants seeking to become a Treasury employee or a Treasury contractor.

3.  I have extensive knowledge of Treasury's vetting processes, including granting security clearances. I have been involved in ensuring the proper vetting of individuals of the Treasury Department's Government Efficiency Team (Treasury DOGE Team) by ensuring DOGE

Team members undergo appropriate background investigations and that the results of those background investigations are adjudicated in accordance with the national adjudicative guidelines.

**Vetting: Background Investigations and Adjudications**

4. To ensure that OIA manages its personnel consistent with national-security and public-trust interests, all employees and non-employees conducting work for or on behalf of Treasury undergo some degree of vetting.  Vetting includes a background investigation to gather facts about the individual being vetted and an adjudication of those facts using Executive branch-wide standards.  For political employees assigned to Treasury or any of its bureaus, if the individual's background investigation is favorably adjudicated, OSP notifies Treasury's Office of Human Resources (OHR) to process the individual for authorization to begin employment and/or work. For career employees with BFS, if a background investigation is favorably adjudicated, then OSP notifies the BFS Administrative Resource Center to process the individual for authorization to begin employment and/or work.

5. Vetting is the process of gathering facts about people seeking to work for the government in various capacities and determining whether they can be trusted to protect the United States government personnel, property, information (including information about others collected by the government), and missions.  Vetting typically begins with a background investigation. The scope of the background investigation depends on the duties and responsibilities of the position.

6. Background investigations obtain information about an individual's personal, criminal, and employment history to gauge their judgment, reliability, and integrity. Background investigations vary in scope depending on the position, but they often obtain information

about an individual's past employment, illegal drug use, and criminal record. Background investigators collect information from the individual in question, and from other sources like current or former employers, coworkers, friends, and neighbors. Background investigations to determine if one can serve in a sensitive national security position with access to classified information have the broadest scope.

**Vetting: Reciprocity**

7.  Generally, if an applicant has already undergone a background investigation that has been favorably adjudicated by a federal government agency and it is in-scope per the federal investigative standards, and if there are no facts indicating that the individual does not continue to meet eligibility standards, then the individual does not need to undergo additional vetting. In these instances, OSP revalidates the prior background investigation, confirms that it meets the scope required for the new position at Treasury and that it was favorably adjudicated, and reciprocally accepts the other federal agency's determination.

**Vetting: "Interim" Eligibility**

8.  Under certain circumstances, agencies may permit an individual to begin work, and temporarily obtain access to classified information at the Secret level if they have a need-to-know in performance of their job duties, before his or her background investigation is completed.[1] Generally, this interim eligibility may be granted if the individual's U.S. citizenship is confirmed, a review of the security questionnaire completed by the individual reveals no issues (or issues that have been mitigated), and an FBI check of the individual's fingerprints does not disclose a criminal record.

---

[1] The Department of Defense, not OSP, conducts a background investigation.

9. In exceptional circumstances pursuant to a written justification and the completion of criminal checks (in addition to the checks that are required for interim Secret eligibility detailed in the previous paragraph), an agency may grant access to classified information at the Top-Secret level if they have a need-to-know in the performance of their duties, before his or her background investigation is completed.

**Vetting:  Overall Process**

10. At Treasury, all career federal employees and political appointees, regardless of the level of the position (*e.g.*, public trust, national security sensitive, secret/top secret clearance), undergo the same overall vetting process, which includes a background investigation and an adjudication in accordance with national standards and guidelines.  The steps are as follows:

   a. Step 1: A new hire package, signed by the applicant, is sent to OSP's Personnel Security Branch (PSB).  This new hire package contains a Position Description (OF-8), Declaration for Federal Employment (OF 306), applicant's resume, and other miscellaneous documents.

   b. Step 2: PSB checks the Office of Personnel Management (OPM), Department of Defense (DOD), and Intelligence Community databases (collectively, National Vetting Databases) for the applicant's current investigation/clearance/access investigation information.  Based on a review of these documents and in accordance with Security Executive Agent Directive 7, *Reciprocity of Background Investigations and National Security Adjudications* (November 9, 2018), PSB determines whether a background check is required.[2]

---

[2] If a background investigation is not required, then Steps 3-6 are omitted.

c. Step 3: If a background investigation is required, PSB sends an e-Application[3] (e-App) to the applicant. If the applicant is a political appointee and there are timing constraints, fingerprints and a picture for the Personal Identity Verification (PIV) card may be completed at the same time the e-App is sent to the applicant. If the applicant is a career employee, then fingerprints are completed prior to issuing the e-App.

d. Step 4: PSB reviews the completed e-App and fingerprint results from the Federal Bureau of Investigations for any issues or concerns outlined in 5 C.F.R. § 731 (for suitability and fitness) and Security Executive Agent Directive 4, *National Security Adjudicative Guidelines* (June 8, 2017) (for security clearances).

e. Step 5: If there are any issues or concerns, PSB adjudicates and/or resolves known issues prior to submitting the application to OPM. If the issues can be mitigated, then for individuals whose positions require either a Secret or Top-Secret clearance, PBS will grant an interim Secret-level clearance, as described further above, while the background investigation is completed.

f. Step 6: PSB releases the completed e-App into the Defense Counterintelligence Security Agency (DCSA) system to initiate a background investigation.

g. Step 7: PSB notifies OHR and the applicant's hiring manager that the applicant is approved to enter on duty.

h. Step 8: Once the background investigation is completed and returned by DCSA, PSB adjudicates the background investigation.

i. Step 9: PSB grants clearance and records the adjudicative determination in the Defense Information System for Security (DISS), a national vetting database.

---

[3] An e-Application is an application for applicants to enter information required to initiate personnel background investigations.

j. Step 10: If access to Sensitive Compartment Information (SCI) is required, the Chief of Personnel Security or a designee in OSP with SCI adjudication authority reviews every personnel security case requiring SCI prior to approval being given for access.

**Vetting of the Treasury DOGE Team:**

11. OSP conducted the national security clearance vetting process for Tom Krause (Krause), Ryan Wunderly (Wunderly), Marko Elez (Elez), Gavin Kliger (Kliger), Samuel Corcos (Corcos), and Linda Whitridge (Whitridge), members of the DOGE Team, in the same manner used for career employees seeking access to classified Treasury information.

12. OSP conducted the national security clearance vetting process for Krause as a Treasury political appointee. On January 17, 2025, OSP received Krause's new hire package. On January 21, 2025, the National Vetting Database checks of Krause were completed. It was determined that no background investigation was required because a qualifying background check had already been completed. On January 22, 2025, BFS contacted OSP to verify Krause's level of security clearance, which is Top-Secret with SCI access. On February 24, 2025, Krause was cleared for onboarding. On January 22, 2025, PBS entered Krause's adjudicative determination into DISS.

13. OSP conducted the security vetting process for Wunderly as a political appointee. On February 8, 2025, OSP received Wunderly's new hire package. On February 10, 2025, the National Vetting Database checks were completed. It was determined that no background investigation was required because a qualifying background check had already been completed. On February 12, 2025, Wunderly was cleared for onboarding. On February 19, 2025, BFS contacted OSP to verify Wunderly's level of security clearance. On February 28,

2025, PSB granted Wunderly a Top-Secret clearance with SCI access after completion of his

security briefings and his signing of the non-disclosure agreements.

14. OSP conducted the security vetting process for Elez as a Treasury political appointee. On

January 17, 2025, OSP received Elez's new hire package. Steps 2 through 7 detailed above

were completed on January 19, 2025. In order to expedite the security clearance process due

to timing constraints, Elez's fingerprints and picture for the PIV card were completed at the

same time as the e-App. Based on a review of Elez's fingerprints and Standard Form 86

(used to grant national security clearance), there were no indications of non-suitability, such

as criminal conduct, misconduct, or failure to maintain financial responsibilities, and he was

granted an interim secret security clearance on January 22, 2025. Elez resigned from

Treasury on February 6, 2025.

15. OSP conducted the security vetting process for Corcos as a Treasury political appointee. On

February 20, 2025, OSP received Corcos' new hire package. Steps 2 through 7 detailed

above were completed on February 25, 2025. To expedite the security clearance process due

to timing constraints, Corcos' fingerprints and picture for the PIV card were completed at the

same time as the e-App. Based on a review of Corcos' fingerprints and Standard Form 86,

there were no indications of non-suitability, and he has not yet completed his security

briefing and/or non-disclosure agreement to be granted interim secret access.

16. OSP conducted the security vetting process for Whitridge as a Treasury political appointee.

On February 21, 2025, OSP received Whitridge's new hire package. Steps 2 through 7

detailed above were completed on February 24, 2025. In order to expedite the security

clearance process due to timing constraints, Whitridge's fingerprints and picture for the PIV

card were completed at the same time as the e-App. Based on a review of Whitridge's

fingerprints and Standard Form 86, there were no indications of non-suitability, such as criminal conduct, misconduct, or failure to maintain financial responsibilities, and she was granted an interim secret security clearance on January 28, 2025.

17. OSP conducted the national security clearance vetting process for Kliger as a Treasury detailee.  On February 28, 2025, OSP received Kliger's detailee package.  On February 28, 2025, the National Vetting Database checks of Kliger were completed.  It was determined that no background investigation was required because, on February 18, 2025, OPM granted Kliger an interim Top-Secret clearance. On February 28, 2025, Kliger was cleared for onboarding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  March 5, 2025                    Signed: _____

                                               Kari Mencl
                                               Chief of Personnel Security
                                               Office of Security Programs
                                               United States Department of the Treasury