UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>  Defendants. | C.A. No. 1:25-cv-1144 (JAV) |

**PLAINTIFF STATES' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION OF
THE COURT'S ZONE-OF-INTERESTS RULING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

   I.    THE ZONE-OF-INTERESTS TEST PROVIDES A LENIENT APPROACH TO PRESERVE THE FLEXIBILITY OF THE APA'S JUDICIAL REVIEW PROVISION .... 2

   II.   THE COURT OVERLOOKED RELEVANT STATUTORY LANGUAGE AND LEGISLATIVE HISTORY WHEN CONSTRUING CONGRESS' INTENT ..................... 2

        A.    The Privacy Act of 1974 ................................................................................. 4

        B.    E-Government Act of 2002 ............................................................................. 6

   III.  BASED ON CONGRESS' BROAD INTENT TO PROMOTE THE STATES' INTERESTS UNDER THE PRIVACY ACT AND E-GOVERNMENT ACT, THE STATES SATISFY THE ZONE-OF-INTERESTS TEST ................................................... 8

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bennett v. Spear*,
   520 U.S. 154 (1997)......................................................................................................3

*Clarke v. Securities Industry Assn.*,
   479 U.S. 388 (1987)........................................................................................... 1-3, 8, 10

*Doe v. United States Immigration and Customs Enforcement*,
   490 F. Supp. 3d 672 (S.D.N.Y. 2020)...........................................................................8

*Federal Defenders of New Yew, Inc. v. Federal Bureau of Prisons*,
   954 F.3d 118 (2d Cir. 2020)........................................................................................10

*Gonzalez v. Village of West Milwaukee*,
   671 F.3d 649 (7th Cir. 2012) .......................................................................................4

*Immigrant Def. Project v. United States Immigration and Customs Enforcement*,
   No. 14-cv-6117, 2017 WL 2126839 (S.D.N.Y. May 16, 2017) ..................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)......................................................................................................3

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012).........................................................................................2-3, 9-10

*Moya v. United States Dep't of Homeland Sec.*,
   975 F.3d 120 (2d Cir. 2020)........................................................................................10

*Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*,
   522 U.S. 479 (1998)....................................................................................................10

*Schwier v. Cox*,
   340 F.3d 1284 (11th Cir. 2003) ...................................................................................4

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)...........................................................................................2

*United States v. Welden*,
   377 U.S. 95 (1964).......................................................................................................4

**Federal Statutes**

5 U.S.C.
    § 552a ............................................................................................................. 1, 3-5, 7

42 U.S.C.
    § 608 ....................................................................................................................... 4

44 U.S.C.
    § 3501 ..................................................................................................................... 7
    § 3601 ..................................................................................................................... 7
    § 3602 ..................................................................................................................... 7

E-Government Act of 2002, Pub. L. 101-347, 116 Stat. 2899 (Dec. 17, 2002) .................... *passim*

Privacy Act of 1974, Pub. L. 93-579, 88 Stat. 1896 (Dec. 31, 1974) ......................................... 4-5

**State Statutes**

Ariz. Rev. Stat.
    § 46-407(A) ............................................................................................................ 4

**Federal Regulations**

45 C.F.R.
    § 303.21 .................................................................................................................. 4
    § 303.72 .................................................................................................................. 4

**Miscellaneous Authorities**

Bureau of the Fiscal Service, *How the Treasury Offset Program (TOP) Collects Money for State Agencies* (last accessed March 7, 2025),
    https://www.fiscal.treasury.gov/top/state-programs.html ........................................... 4

The Report of the Privacy Protection Study Commission (July 12, 1977) ..................................... 6

S. Rep. No. 93-1183 (1974) ............................................................................................................ 5

S. Rep. No. 107-174 (2002) ........................................................................................................... 7

**INTRODUCTION**

The Court applied the zone-of-interests test in its February 21, 2025, Opinion and Order (ECF No. 76) ("Opinion" or "Op."). In so doing, the Court compared the States' interests in protecting their financial information—the basis for the States' Article III standing—with the interests Congress intended to protect under the Privacy Act of 1974 and E-Government Act of 2002, which the Court narrowly construed as protecting only personal identifying information ("PII") of *individuals*. Based on that reading, the Court held the States' interests do not fall within the zone of interests protected by the statutes. However, statutory language and legislative history demonstrate that Congress intended in both statutes to promote not only individuals' interests in protecting their PII, but also the interests of States in protecting the security and integrity of records *containing* PII ("Federal Records")—including those that they collect and share with the U.S. government in order to administer cooperative federalism programs such as Medicaid and the Treasury Offset Program. Plaintiffs move for reconsideration to bring this relevant statutory language and legislative history to the Court's attention.

On reconsideration, the Court should (i) accord appropriate weight to the statutory language and legislative history because they demonstrate that Congress intended to promote the States' interests in Federal Records protecting their residents' PII, and (ii) accordingly, compare under the zone-of-interests test the States' interests in protecting its own financial information with the States' interest in protecting Federal Records containing the PII of their residents collected under cooperative federalism programs. Based on this comparison, the Court should hold that the States have prudential standing to challenge the Engagement Plan as violating the Privacy Act and E-Government Act under the "generous review provisions" of the APA. *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 400, n. 16, (1987) (citation omitted).

# ARGUMENT

## I. THE ZONE-OF-INTERESTS TEST PROVIDES A LENIENT APPROACH TO PRESERVE THE FLEXIBILITY OF THE APA'S JUDICIAL REVIEW PROVISION

The zone-of-interests test in the context of an APA challenge "'is not meant to be especially demanding.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399 (1987)). "The interest [the plaintiff] asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that [the plaintiff] says was violated." *Patchak*, 567 U.S. at 224 (citation omitted). Courts should "apply the test in keeping with Congress's 'evident intent' when enacting the APA 'to make agency action presumptively reviewable.'" *Id.* at 225 (quoting *Clarke*, 479 U.S. at 399). The test does not require showing any "indication of congressional purpose to benefit the would-be plaintiff." *Clarke*, 479 U.S. at 399-400. Moreover, the Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff. The test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Patchak*, 567 U.S. at 225 (quoting *Clarke,* 479 U.S. at 399). This "lenient approach is an appropriate means of preserving the flexibility of the APA's omnibus judicial-review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014).

## II. THE COURT OVERLOOKED RELEVANT STATUTORY LANGUAGE AND LEGISLATIVE HISTORY WHEN CONSTRUING CONGRESS' INTENT

The zone-of-interests test requires comparing the interests Congress intended to protect when enacting the Privacy Act and the E-Government Act with the interests the States seek to protect in this litigation—preventing the unauthorized disclosure of financial information that they

2

provide to Treasury. Op. at 34-35. In considering Congress's intent under the Privacy Act, the Court focused solely on § 3 of the statute, codified at 5 U.S.C. § 552a, and held that Congress intended to protect only an individual's PII. Op. at 36. In construing Congress's intent under the E-Government Act, the Court focused solely on § 208 of the statute in similarly concluding that Congress intended to protect only an individual's PII. Op. at 41.

By focusing on just these two statutory provisions to discern congressional intent, without considering other statutory language and legislative history, the Court did "not adequately place" these provisions "in the overall context of the" statutes." *Clarke*, 479 U.S. at 400-01. But Courts are to "consider any provision that helps [the Court] to understand Congress' overall purposes" in enacting the Privacy Act and E-Government Act, because "all indicators helpful in discerning [congressional] intent must be weighed." *Id.*; *see also Bennett v. Spear*, 520 U.S. 154, 173 (1997) (noting the cardinal principle of statutory construction is to give effect, if possible, to every clause and word of a statute).

The statutory language and legislative history manifests Congress' intent in the Privacy Act and E-Government Act to promote the interests of the States in the integrity of Federal Records, as states rely on these federal privacy protections to participate in federal funding programs such as Medicaid or the Treasury Offset Program.[1]

---

[1] The Treasury Offset Program's Child-Support Service program, in which all Plaintiff States are participants, allows States to recover money on behalf of parents owed child support. Bureau of the Fiscal Service, *How the Treasury Offset Program (TOP) Collects Money for State Agencies* (last accessed March 7, 2025), https://www.fiscal.treasury.gov/top/state-programs.html. States recover money when the custodial parents participate in TANF in exchange for assigning their child support funds to the State. *See* 42 U.S.C. § 608(a)(3); *also, e.g.*, Ariz. Rev. Stat. § 46-407(A). To participate in this program, States must provide PII of the parent who owes funds to

### A. The Privacy Act of 1974

The Court may have overlooked the legislative history, including §§ 5 and 7 of the Privacy Act, Pub. L. 93-579, 88 Stat. 1896 (Dec. 31, 1974), perhaps owing to "the unusual way in which the Privacy Act is codified in the U.S. Code." *Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 660 (7th Cir. 2012). As explained by the Seventh Circuit in *Gonzalez*:

> When Congress passed the Privacy Act … *only §3 was codified in the main text of the Code, at 5 U.S.C. §552a*, pursuant to the directives of §4. … [S]o the revisor of the Code placed [the remaining sections] in the "Historical and Statutory Notes" accompanying 5 U.S.C. §552a, instead of as a separate section in the main text.

671 F.3d at 661 (emphasis added); *see also Schwier v. Cox*, 340 F.3d 1284, 1288 (11th Cir. 2003) (noting all sections of the Privacy Act except for §3 were placed in an "Historical and Statutory" note following the main text).[2]

The legislative history of the Privacy Act, including discussion about the purposes of the Commission it creates (see *infra*), manifest Congress' intent to promote the interests of state governments in safeguarding Federal Records. In the Senate Report on the bill that became the Privacy Act (S. 3418), the Senate Committee on Government Operations observed:

> S. 3418 is further needed to complement State and municipal laws and regulations which have been adopted to protect individual privacy and confidentiality of records…. Governors and others have expressed concern that despite all the States may do to provide guarantees, *they are not effective once the data are integrated in a Federal information system or transferred to a Federal data bank*. S. 3418 will *safeguard and supplement the efforts of State legislatures*.

---

the Department of Health and Human Services, Office of Child Support Enforcement, which then sends that information to the Bureau of Fiscal Services. *See* 45 C.F.R. § 303.72(b)(2). That information is protected by federal regulations. 45 C.F.R. § 303.21. Thus, any threat to the integrity of the associated Federal Records, in either department, may threaten States' ability to participate in this program, on which they rely.

[2] The omission of sections from the main text of the Code has no bearing on their binding legal effect. *See United States v. Welden*, 377 U.S. 95, 98 n.4 (1964).

S. Rep. No. 93-1183, at *6932 (1974) (emphasis added); *see also id*. at *6956 (noting the Commission's studies "will assist the States in their own efforts to protect personal privacy"); *id*. at *6958 (recognizing that "a Federal program may, because of its unforeseen results, be effectively *prohibiting the State from adequately promoting the privacy of its citizens, the confidentiality of data about them, or the security of its automated data systems*") (emphasis added). Indeed, the legislative history, coupled with §§ 5 and 7, *infra*, make clear the Congressional intent to promote a federal-state partnership to guarantee the protections of sensitive information.

In § 5, Congress manifested its intent to address how state governments protect all the sensitive information they possess. That section establishes a seven-member "Privacy Protection Study Commission" ("Commission") tasked with undertaking "a study of the data banks, automated data processing programs, and information systems of *governmental, regional, and private organizations* in order to determine the standards and procedures in force for the protection of personal information." *Id.* § 5(b)(1).

Congress also mandated that the Commission shall "determine to what extent governmental and private information systems affect *federal-state relations or the principle of separation of powers*," § 5(C)(3)((B) (emphasis added). Finally, Congress evinced its intent to bolster the state-federal partnerships to protect data by providing that, in conducting its study, the Commission may "request assistance of the heads of appropriate departments, agencies, and instrumentalities…of *state and local governments*," § 5(D)(1) (emphasis added), and "upon request, prepare model legislation *for use by state and local governments* in establishing procedures for handling, maintaining, and disseminating personal information at the *state and local level* and provide such technical assistance to *state and local governments* as they may require in the preparation and implementation of such legislation," § 5(D)(4) (emphasis added).

5

The Commission's Final Report, delivered to the President and Congress on July 12, 1977,[3] provides further evidence of Congress's intent to promote the ability of state governments to protect their records. The Report included an entire chapter on "The State Role in Privacy Protection," in which it noted:

> The role of state governments in protecting personal privacy is…enormously important. The records a State government keeps about the individuals under its jurisdiction are often as extensive as those kept on the same individuals by the Federal government.… [T]his chapter briefly summarizes how the Federal-State relationship enters into the Commission's recommended program for protecting personal privacy.

Report at 487-88.

The Commission's Report discussed at length the interests of state governments in protecting their records, including in the specific context of cooperative federalism programs such as Medicaid. *See, e.g.,* Report at 387 ("Through a variety of programs, particularly those involving medical services and public assistance, the Federal government makes the States its collectors and record keepers by predicating Federal funding for State programs on fulfillment of such duties."). Section 7 of the Privacy Act further evidences the shared federal-state partnership to protect sensitive data because Congress expressly addressed collection by states of their residents' PII, providing requirements concerning the collection and disclosure of social security account numbers. *See* § 7(A)(1), (B).

## B. E-Government Act of 2002

The E-Government Act was intended to modernize the Privacy Act, make the Federal Government more "transparent" and "accountable," "enhance the management and promotion of electronic government services and processes," and "improve coordination" between federal and

---

[3] The Report of the Privacy Protection Study Commission (July 12, 1977) (the "Report"), available at https://www.ojp.gov/pdffiles1/Digitization/49602NCJRS.pdf.

6

state governments. S. Rep. No. 107-174, at *1, 4, 14, 23 (2002). But in discerning congressional intent, the Court considered only § 208 of Title II of the statute, overlooking Title I, codified at 44 U.S.C. §3601 *et seq.*, which evidences Congress' intent that federal and state governments cooperate to further their shared responsibility to protect PII.[4]

Title I provides numerous components evidencing state and federal collaboration on ensuring the protection of sensitive data. For example, it establishes an Administrator in OMB tasked with encouraging ongoing collaboration and dialogue between state and federal governments on the maintenance and acquisition of sensitive data, 44 U.S.C. § 3602(f); and creates a "Chief Information Officers Council" tasked with "consult[ing] regularly with representatives of State, local, and tribal governments," *id*. §3603(e), to perform a variety of functions, including "[s]har[ing] experiences, ideas, best practices, and innovative approaches related to information resources management," *id*. §3603(f)(2). Title I also provides for the creation of an "E-Government Fund" designed to facilitate information sharing and transactions between the state and federal governments. *Id.* § 3604(a)(3)(C). Inherent in these provisions is Congress's intent that state and federal partnerships have a shared interest in protecting sensitive data systems.

***

"In considering whether a plaintiff's interests are related to or consistent with the purposes of the relevant statute, the Court is 'not limited to considering the statute under which [plaintiffs] sued, but may consider any provision that helps [it] to understand Congress' overall purposes' in the act at issue." *Doe v. United States Immigration and Customs Enforcement*, 490 F. Supp. 3d

---

[4] Like the Privacy Act, the E-Government Act was published in an unusual way, with some sections codified in the main text of the U.S. Code and other sections placed in the notes section. *Compare* E-Government Act of 2002, Pub. L. 101-347, 116 Stat. 2899 (Dec. 17, 2002) *with* 44 U.S.C. §3501 (notes).

672, 685 (S.D.N.Y. 2020) (quoting *Clarke*, 479 U.S. at 401). When "all indicators helpful in discerning [congressional] intent [are] weighed," *Clarke*, 479 U.S. at 400-01, it is clear Congress intended the Privacy Act and E-Government Act to promote not only the interests of individuals in protecting their PII, but also the shared interests of state governments in protecting records that they collect to administer cooperative federalism programs.

### III. BASED ON CONGRESS' BROAD INTENT TO PROMOTE THE STATES' INTERESTS UNDER THE PRIVACY ACT AND E-GOVERNMENT ACT, THE STATES SATISFY THE ZONE-OF-INTERESTS TEST

Considering the statutory language and legislative history discussed in Point II, the Court should compare under the zone-of-interests test the States' interests in protecting its information with Congress' broad intent to promote the States' interests in the integrity of Federal Records held by Treasury, including the broader interest in ensuring the federal-state partnership committed to the shared protections of sensitive data. This case fits comfortably within those where the Supreme Court has found prudential standing exists under the zone-of-interests test in the context of an APA challenge.

For example, in *Patchak*, a landowner challenged the decision of the Secretary of the Interior to acquire a neighboring plot of land for an Indian tribe seeking to open a casino—agency action taken under a provision of the Indian Reorganization Act ("IRA") authorizing the Secretary to acquire property "for the purpose of providing land for Indians." 567 U.S. at 211-12 (quoting 25 U.S.C. §465). The landowner alleged he would suffer economic, environmental, and aesthetic harm from the land's "*use*" as a casino. *Id*. at 224-25. The government contended the landowner lacked prudential standing because the IRA "focuses on land *acquisition*." *Id*. at 225 (emphasis in original). The Court rejected that argument, construing the congressional intent from the statute's "context and purpose" to have "far more to do with land use than the" government contends. *Id*. at 225-26. Finding the IRA "functions as a primary mechanism to foster Indian tribes' economic

8

development," the Court held "when the Secretary obtains land for Indians under [the IRA], she does not do so in a vacuum," but rather "takes title to properties with at least one eye directed toward how tribes will use those lands to support economic development." *Id*. at 226. The Court concluded that because the statute's "implementation encompasses" issues relating to economic development of acquired land, the interests the landowner raises "at least arguably" fall within the zone of interests protected by the statute. *Id*. at 227. Just as a neighbor's challenge to the *use* of land following its *acquisition* is within the IRA's zone of interests, the States' challenge to the unauthorized disclosure of their information to Treasury is within the zone-of-interests of the Privacy Act and E-Government Act. Indeed, the interests here are even more solidly within the statutes' zone of interests than *Patchak*, as the States rely on the integrity of the federal payment systems to participate in and administer federally-funded programs.

Indeed the States' interests in protecting this information "are closely enough and often enough entwined with considerations" of protecting the Federal Records containing PII of their residents under the statutes "to make [any] difference immaterial." *Id.* The States "are reasonable—indeed, predictable—challengers" of Treasury actions that risk unauthorized disclosure of Federal Records containing their residents' PII. *Id.* And when federal agencies seek to conform their practices of handling PII to the Privacy Act and E-Government Act, they do so "with at least one eye directed toward" protecting PII collected and submitted by state governments to create Federal Records. *Id*. at 226; *see also Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 485, 488 (1998).

This is not a case where the plaintiffs' interests are merely "an altruistic concern for somebody's else's rights," *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 132 (2d Cir. 2020), "a crucial step removed from the challenged statute," *id.* at 133, or "so marginally

9

related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit," *Clarke*, 479 U.S. at 399. To the contrary, the States' interests are closely intertwined with the interests that Congress sought to protect in the Privacy Act and E-Government Act, as explained above. *See, e.g.*, *Federal Defenders of New Yew, Inc. v. Federal Bureau of Prisons*, 954 F.3d 118, 131-32 (2d Cir. 2020).

On reconsideration, the Court should find, based on Congress' broad intent in the Privacy Act and E-Government Act to promote the interests of state governments in protecting *all* private information they maintain (including specifically the PII of their residents), that the States are entitled to obtain judicial review of the Engagement Plan under the "'generous review provisions'" of the APA. *Clarke*, 479 U.S. at 400, n. 16 (internal citation omitted).

## CONCLUSION

For the foregoing reasons, the States respectfully request that the Court grant their motion for reconsideration and: (i) hold that the States satisfy the zone-of-interests test with respect to the Privacy Act and the E-Government Act; (ii) hold that the States are likely to succeed on the merits of their APA claims that Defendants' Engagement Plan is contrary to these statutes; and (iii) amend the February 21 Opinion accordingly.


Dated: March 7, 2025
      New York, New York

                                          Respectfully submitted,

**LETITIA JAMES**
  ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal Initiatives*
Colleen K. Faherty
  *Special Trial Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
  ATTORNEY GENERAL OF CALIFORNIA

By: /s/ *Michael S. Cohen*
Michael S. Cohen
  *Deputy Attorney General*
Thomas S. Patterson
  *Senior Assistant Attorney General*
Mark R. Beckington
John D. Echeverria
  *Supervising Deputy Attorneys General*
Nicholas Green
Jay Russell
  *Deputy Attorneys General*
California Attorney General's Office
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 210-6090
Michael.Cohen@doj.ca.gov

*Counsel for the State of California*

**KRISTEN K. MAYES**
  ATTORNEY GENERAL OF ARIZONA

By: */s Joshua D. Bendor**
Joshua D. Bendor*
Joshua A. Katz*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Joshua.Katz@azag.gov

*Counsel for the State of Arizona*

**PHIL WEISER**
  ATTORNEY GENERAL OF COLORADO

By: */s Shannon Stevenson*
Shannon Stevenson
  *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

| | |
|---|---|
| **WILLIAM TONG**<br>  ATTORNEY GENERAL OF CONNECTICUT | **KATHLEEN JENNINGS**<br>  ATTORNEY GENERAL OF DELAWARE |
| By: */s Matthew Fitzsimmons*<br>Matthew Fitzsimmons<br>  *Chief Counsel*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5318<br>Matthew.fitzsimmons@ct.gov | By: /s/ *Vanessa L. Kassab*<br> Vanessa L. Kassab<br>  *Deputy Attorney General*  Delaware Department of Justice  820 N. French Street<br> Wilmington, DE 19801<br>(302) 683-8899<br> vanessa.kassab@delaware.gov |
| *Counsel for the State of Connecticut* | *Counsel for the State of Delaware* |
| **ANNE E. LOPEZ**<br>  ATTORNEY GENERAL OF HAWAIʻI | **KWAME RAOUL**<br>  ATTORNEY GENERAL OF ILLINOIS |
| By: /s *Kalikoʻonālani D. Fernandes*<br>David D. Day<br>  *Special Assistant to the Attorney General*<br>Kalikoʻonālani D. Fernandes*<br>  *Solicitor General*<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov | By: */s/ Darren Kinkead*<br>Darren Kinkead<br>  *Public Interest Counsel*<br>115 S. LaSalle St.<br>Chicago, Illinois 60603<br>(773) 590-6967<br>Darren.Kinkead@ilag.gov |
| *Counsel for the State of Hawaiʻi* | *Counsel for the State of Illinois* |
| **AARON M. FREY**<br>  ATTORNEY GENERAL OF MAINE | **ANTHONY G. BROWN**<br>  ATTORNEY GENERAL OF MARYLAND |
| By: /s/ *Jason Anton*<br>Jason Anton<br>*Assistant Attorney General*<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME  04333-0006<br>(207) 626-8800<br>jason.anton@maine.gov | By: /s *Adam D. Kirschner**<br> Adam D. Kirschner<br>  *Senior Assistant Attorney General*<br> Office of the Attorney General<br> 200 Saint Paul Place, 20th Floor<br> Baltimore, Maryland 21202<br> (410) 576-6424<br> akirschner@oag.state.md.us |
| *Counsel for the State of Maine* | *Counsel for the State of Maryland* |

**ANDREA JOY CAMPBELL**
   ATTORNEY GENERAL
   COMMONWEALTH OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz
   *State Solicitor*
One Ashburton Place
Boston, MA 02108
617-963-2427
david.kravitz@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**AARON D. FORD**
   ATTORNEY GENERAL OF NEVADA

By: /s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
   *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**KEITH ELLISON**
   ATTORNEY GENERAL OF MINNESOTA

By: /s *Liz Kramer*
Liz Kramer
   *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**MATTHEW J. PLATKIN**
   ATTORNEY GENERAL OF NEW JERSEY

By: */s David Leit*
David Leit
   *Assistant Attorney General*
(609) 414-4301
david.leit@law.njoag.gov

Kashif Chand
   *Chief, Deputy Attorney General*
(609) 696-5160
kashif.chand@law.njoag.gov

124 Halsey Street
Newark, NJ 07101

*Counsel for the State of New Jersey*

**JEFF JACKSON**
   ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
   CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel P. Mosteller
   *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

**DAN RAYFIELD**
   ATTORNEY GENERAL OF OREGON

By: */s/ Elleanor H. Chin*
Elleanor H. Chin
   *Senior Assistant Attorney General*
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

*Counsel for the State of Oregon*

**PETER F. NERONHA**
   ATTORNEY GENERAL OF RHODE ISLAND

By: /s/ Alex Carnevale
Alex Carnevale
   *Special Assistant Attorney General*
Office of the Attorney General – State of Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
   ATTORNEY GENERAL OF VERMONT

By: */s/ Jonathan Rose*
Jonathan Rose*
   *Solicitor General*
Appellate Unit
Office of the Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

**JOSH KAUL**
   ATTORNEY GENERAL OF WISCONSIN

By: */s/ Brian P. Keenan*
Brian P. Keenan
   State Bar #1056525
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
keenanbp@doj.state.wi.us

*Counsel for the State of Wisconsin*

\* - pro hac vice motion pending

**CERTIFICATION**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 3,368 words, calculated using Microsoft Word, which complies with Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.


Dated: New York, New York
      March 7, 2025

LETITIA JAMES
Attorney General of the State of New York
By: /s Colleen K. Faherty
Colleen K. Faherty
   Special Trial Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6046
Colleen.Faherty@ag.ny.gov