**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

---

STATE OF NEW YORK, *et al.*,

          *Plaintiffs*,

      v.

U.S. DEPARTMENT OF THE
TREASURY, *et al.*,

          *Defendants*.

Case No. 25 Civ. 01144 (JAV)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
PARTIALLY DISSOLVE THE PRELIMINARY INJUNCTION**

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
    – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................1

LEGAL STANDARD..................................................................................................6

DISCUSSION...........................................................................................................7

      The Court Should Dissolve the Preliminary Injunction as to Ryan Wunderly..............7

CONCLUSION........................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Helmer v. Briody*,
   721 F. Supp. 498 (S.D.N.Y. 1989) ........................................................................ 6

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*,
   427 F. Supp. 2d 491 (S.D.N.Y. 2006) ................................................................... 6

*JLM Couture, Inc. v. Gutman,*
   No. 20 Civ. 10575 (LTS), 2021 WL 2227205  (S.D.N.Y. June 2, 2021) ................ 6

*Lawsky v. Condor Capital Corp.*,
   No. 14 Civ. 2863 (CM), 2014 WL 3858496 (S.D.N.Y. Aug. 1, 2014) ................ 6, 7

*Railway Labor Executives' Ass'n v. Metro-North Commuter R. Co.*,
   759 F. Supp. 1019 (S.D.N.Y. 1990) ..................................................................... 6

*Sierra Club v. United States Army Corps of Eng'rs*,
   732 F.2d 253 (2d Cir. 1984) ................................................................................ 6

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir.2005) ................................................................................. 7

**Regulations**

5 C.F.R. § 213.3302 ................................................................................................. 12

**Rules**

Federal Rule of Civil Procedure 65 .......................................................................... 2

## PRELIMINARY STATEMENT

Defendants Donald J. Trump, the United States Department of the Treasury, and Scott Bessent, in his official capacity as Secretary of the Treasury, by their attorney, Matthew Podolsky, Acting United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to partially dissolve the preliminary injunction in effect in this case as to Treasury employee Ryan Wunderly.  Defendants have provided the information called for by the Court's February 21, 2025 Opinion and Order with respect to Mr. Wunderly, and documented that they have addressed the Court's concerns regarding the processes governing Mr. Wunderly's hiring, reporting chains, training, vetting and security clearance, and anticipated access to Treasury systems.  Based on this new evidence, the Court should dissolve the preliminary injunction as to Mr. Wunderly so that he can begin his crucial work modernizing and strengthening the Treasury Department's information technology systems.

## BACKGROUND

Plaintiffs filed this action on February 7, 2025, alleging a variety of claims under the Administrative Procedure Act  and the Constitution.  ECF No. 1.  In the early morning on Saturday, February 8, without hearing from Defendants, the Part I Judge entered a Temporary Restraining Order ("TRO") broadly restricting Defendants from, among other things, "granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential information of payees, other than to civil servants with a need for access to perform their job duties with the [Treasury] Bureau of Fiscal Services who have passed all background checks and security clearances and taken all information security training called for in federal

statutes and Treasury Department regulations."  ECF No. 6.  The TRO also restricted "all political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department" from accessing the same records and systems.  *Id.*

On February 11, 2025, after Defendants filed an Emergency Motion to Dissolve, Clarify, or Modify the TRO, the Court modified the TRO to lift its prohibition with respect to "any Officer of the United States Department of the Treasury nominated by the President and confirmed by the United States Senate, in accordance with the Appointments Clause of Article II of the Constitution (including the Secretary of the Treasury and the Deputy Secretary of the Treasury)."  ECF No. 28 at 7.  The Court's modification also made clear that the TRO did not apply to routine access to Bureau of the Fiscal Service ("BFS") systems by contractors on Treasury's approved outside contractor list, and the Federal Reserve Bank of Kansas City, on terms consistent with those that pre-existed January 20, 2025.  *Id.*

The Court held oral argument on Plaintiffs' motion for a preliminary injunction on February 14, 2025.  On February 21, 2025, the Court issued an Opinion and Order regarding Plaintiffs' motion and entered a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, restraining the Treasury Department and the Secretary of the Treasury "from granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees to any employee, officer, or contractor employed or affiliated with the United States [Department of Government Efficiency ("DOGE")] Service, DOGE, or the DOGE Team established at the Treasury Department."  ECF No. 76 ("PI Order") at 63.  The Court's entry of the PI rested on its determination that Plaintiffs had met the requirements for preliminary relief as to their "arbitrary and capricious" claim under the

Administrative Procedure Act ("APA"), which was the only claim as to which the Court concluded Plaintiffs had a likelihood of success on the merits. *Id.* at 50.

More particularly, the Court held that for purposes of its APA analysis, the relevant agency action was "the decision by the Treasury Department to constitute a DOGE Team with individuals from outside the agency, who were employed pursuant to temporary hiring authorities, and provide those individuals with unprecedented access to the BFS payments systems pursuant to a four-to-six week Engagement Plan." *Id.* at 44. While rejecting Plaintiffs' statutory APA claims, *id.* at 33-42[1], the Court found that "Plaintiffs will more likely than not succeed in establishing that the agency's *processes* for permitting the Treasury DOGE Team access to critical BFS payment systems, with full knowledge of the serious risks that entailed, w[ere] arbitrary and capricious." *Id.* at 50 (emphasis added).[2] Notably, the PI Order nowhere suggests that the *substance* of the underlying agency action is itself impermissible (indeed, the PI Order held that Plaintiffs were not likely to succeed on the merits of any of their APA or constitutional claims challenging the substance of the Engagement Plan and the granting of access to Treasury systems that the Plan contemplates). Instead, the Court held that "[w]hile it appears that the career staff at BFS did their best to develop what mitigation strategies they could, the inexplicable urgency and time constraints under which they operated all but ensured that the launch of the Treasury DOGE Team was chaotic and haphazard." *Id.*

The Court found the implementation of the Engagement Plan to be "rushed" and "hurried," and noted the lack of information in the record as to what "vetting or security

---

[1] The PI Order also held that Plaintiffs did not have a likelihood of success on the merits of their constitutional or "ultra vires" claims. PI Order at 53-58.

[2] Defendants maintain their disagreements with the Court's holdings in the PI Order with respect to final agency action and Plaintiffs' likelihood of success on their "arbitrary and capricious" claim under the APA.

clearance process" had been applied to the two then-members of the Treasury DOGE Team, Thomas Krause and Marko Elez. *Id.* at 50-51. The Court also questioned the hiring authorities that underlay the appointments of the Treasury DOGE Team members, as well as the Team's "reporting lines." *Id.* at 50-52. Ultimately, the Court concluded that "[t]he process by which the Treasury DOGE Team was appointed, brought on board, and provided with access to BFS payment systems could have been implemented in a measured, reasonable, and thoughtful way." *Id.* at 52. Against this backdrop, the Court entered the PI, and in so doing noted expressly that "the issues identified by the Court largely have to do with the processes followed by the agency, and not with the substance of its decisions." *Id.* at 62.

Recognizing the ongoing nature of the process, the Court ordered the Treasury Department, by March 24, 2025, to submit a report certifying and describing certain steps and processes within Treasury that pertained to concerns identified by the Court in the PI Order and during oral argument on February 14, 2025; and averred that upon receipt of these submissions, the Court would "schedule prompt briefing to address whether the Treasury Department has adequately redressed the violations of the APA found herein, so as to justify the termination or modification of the preliminary injunction." *Id.* at 63-64. On March 5, 2025, Defendants filed a Report in support of an anticipated motion to partially dissolve the PI as to Treasury employee and Treasury DOGE Team member Ryan Wunderly, who was appointed on February 19, 2025, as Special Advisor for Information Technology and Modernization, within the Treasury Office of the Chief of Staff. ECF No. 98 ("Report") at 3, 8. The Report explained that because of Mr. Wunderly's expertise and anticipated work to modernize and strengthen Treasury's information technology systems, it is critical that he begin his work expeditiously, consistent with all

4

applicable legal and regulatory requirements, including the requirements of the PI. *Id.* at 3-4.[3]

The Report, along with four supporting agency declarations, provided all of the categories of

information detailed in the PI Order as to Mr. Wunderly (and, with regard to some of the

categories, as to all the members of the Treasury DOGE Team). *Id.* at 4-10. Specifically, the

Report: (1) certified that Mr. Wunderly has been provided with all training that is typically

required of individuals granted logical access[4] to BFS payment systems; made clear that if in the

future, he requests access that would require specific payment system trainings, he will be

required to complete those trainings; and certified that all current and future Treasury DOGE

Team members will be required to take particular enumerated trainings, with an exception for

detailees who have already taken trainings on the same topics at their agency, *id.* at 4-5; (2)

certified that Mr. Wunderly has undergone the same type of vetting and security clearance

process applied to career employees who have previously been granted access to the BFS

payment systems that is comparable to the access contemplated on behalf of Mr. Wunderly, *id.* at

5-6; (3) described the mitigation procedures that would be implemented (in addition to "any

additional appropriate mitigation") to minimize any risk associated with Mr. Wunderly's

contemplated access to Treasury systems and data, *id.* at 6-7; (4) detailed the authorities pursuant

to which each Treasury DOGE Team member (as of March 5, 2025) is employed or detailed, *id.*

at 7-9; and (5) described the reporting chains that govern the relationship between the Treasury

DOGE Team, the United States DOGE Service, and Treasury leadership, *id.* at 9-10.

---

[3]   As the Report notes, Defendants presently intend to submit an additional report no later than
March 24, 2025, regarding any other Treasury DOGE Team member who (at the time of filing)
requires access to systems covered by the PI. *See* Report at 1 n.1.

[4]   "Logical access," as that phrase is used in the Report and its supporting declarations, is
permission given to users to access specific parts of a computer system or software. *See* Report at
4-5.

On March 7, 2025, following Defendants' request for clarification of the scope of the PI, the Court modified the PI "to exclude the [Internal Revenue Service Procurement for Public Sector] software application from the restrictions on access that were placed on employees, officers, or contractors employed or affiliated with the United States DOGE Service, DOGE, or the DOGE Team established at the Treasury Department."  ECF No. 108 at 2.  In its Order, the Court emphasized that "the remedy in this case must be narrowly tailored to redress the specific harm asserted by the Plaintiffs: the threatened disclosure of the States' sensitive bank information contained in the Treasury Department's payment systems."  *Id.*

## LEGAL STANDARD

"An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change."  *Sierra Club v. United States Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984); *see also Lawsky v. Condor Capital Corp.*, No. 14 Civ. 2863 (CM), 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014) (same).  District courts have "continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified."  *Helmer v. Briody*, 721 F. Supp. 498, 505 (S.D.N.Y. 1989); *see also JLM Couture, Inc. v. Gutman,* No. 20 Civ. 10575 (LTS), 2021 WL 2227205, at *2  (S.D.N.Y. June 2, 2021) (same); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration."); *Railway Labor Executives' Ass'n v. Metro-North Commuter R. Co.*, 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) (same).  A district court's decision whether to modify a preliminary injunction "'involves an

exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction.'" *Lawsky*, 2014 WL 3858496, at *5 (quoting *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005)).

Here, as discussed *supra,* the Court recognized that Treasury could present information regarding hiring, vetting, training, and reporting lines that would redress the APA concerns identified by the Court, PI Order at 63-64, and accordingly ordered Defendants to submit a report and briefing regarding whether the preliminary injunction should be terminated or modified, *id.*

## DISCUSSION

### The Court Should Dissolve the Preliminary Injunction as to Ryan Wunderly

The Court should dissolve the preliminary injunction as to Treasury employee and Treasury DOGE Team member Ryan Wunderly based on the new evidence provided in the Report. Defendants have provided the information called for by the PI Order as to Mr. Wunderly, and have shown that the Treasury processes governing Mr. Wunderly's hiring, reporting chains, training, vetting and security clearance, and anticipated access to Treasury systems were not arbitrary or capricious. Thus, the Court should partially dissolve the PI and lift its restrictions as to Mr. Wunderly.

The Court's initial concern with respect to process was that "[t]he record is silent as to what vetting or security clearance process [the Treasury DOGE Team members] went through prior to their appointment." PI Order at 50. The Report makes clear that Mr. Wunderly has undergone the same type of vetting and security clearance process applied to career employees who have previously been granted access to the BFS payment systems that is comparable to the access contemplated on behalf of Mr. Wunderly. Report at 5-6. These vetting and security processes for Mr. Wunderly—who has been granted Top Secret clearance with Sensitive Compartmented Information ("SCI")—are described in detail in the declaration of Kari Mencl,

7

Chief of Personnel Security in the Office of Security Programs ("OSP") in the Office of Intelligence and Analysis for the Treasury Department. *See* Declaration of Kari Mencl Dated March 5, 2025 (ECF No. 98-4) ("Mencl Decl.").

Specifically, OSP conducted the national security vetting process for all of the current and former Treasury DOGE Team members "in the same manner used for career employees seeking access to classified Treasury information." *Id.* ¶ 11. At Treasury, all career federal employees and political appointees, regardless of the level of their position, undergo the same overall vetting process, including a background investigation and an adjudication in accordance with national standards and guidelines. *Id.* ¶ 10. This OSP-coordinated process is also the same with respect to all individuals who will conduct work on BFS systems. *See* Declaration of Joseph Gioeli III Dated March 4, 2025 (ECF No. 98-2) ("Second Gioeli Decl."), ¶ 3.

With respect specifically to Mr. Wunderly, OSP conducted his security vetting process as a political appointee, including National Vetting Database checks. Mencl Decl. ¶ 13. OSP determined that because a qualifying background check had already been completed, no background investigation was required under the standards OSP generally applies to Treasury employees. *Id.*; *see also id.* ¶ 7 (regarding the process of revalidating a prior qualifying favorable background investigation). On February 28, 2025, OSP's Personnel Security Branch granted Mr. Wunderly a Top Secret clearance with SCI access after completion of his security briefings and his signing of required non-disclosure agreements. *Id.* ¶ 13. BFS obtained assurance from Main Treasury regarding Mr. Wunderly's vetting process and his level of clearance. *Id.*; *see also* Second Gioeli Decl. ¶¶ 4, 6. Accordingly, the record is clear that Defendants implemented an appropriate vetting and security clearance process with respect to Mr. Wunderly.

The Court also expressed concern about the training that the DOGE Team members received prior to being granted access to Treasury payment systems and records.  PI Order at 51 ("Within days of his appointment, and apparently after receiving minimal, if any, training regarding the handling of sensitive government information (beyond being instructed to maintain the information on his BFS laptop), Elez was given full access to system source codes.").  Again, the Report provides new evidence demonstrating that Mr. Wunderly has received appropriate training regarding the handling of sensitive government information.

Specifically, Mr. Wunderly has been provided with all training that is typically required of individuals granted logical access to Bureau of the Fiscal Service ("BFS") payment systems. *See* PI Order at 63.  In particular, on February 28, 2025, he completed the following nine trainings: Annual Privacy Awareness Training, Annual Cybersecurity Awareness Training, Sexual Harassment Prevention in the Workplace, Treasury NO FEAR Training (New Hire), New Employee Ethics Training, Fundamentals of Record Management, Treasury Insider Threat Awareness, 2025 Safeguarding Federal Tax Information, and Bureau of the Fiscal Service Rules of Behavior.  Declaration of Michael J. Wenzler Dated March 5, 2025  (ECF No. 98-3) ("Wenzler Decl."), ¶¶ 18, 22.  These include the five trainings that are required of any individual who is granted logical access to any BFS computer system.  *See* Second Gioeli Decl. ¶¶ 10-11. If, in the future, Mr. Wunderly requests access that would require specific payment system trainings, he will be required to complete those trainings.  *Id.* ¶¶ 14, 19.[5]  Accordingly, the record

---

[5] All current and future Treasury DOGE Team members, regardless of the hiring authority used to appoint them, will be required to take the nine trainings enumerated above.  *See* Wenzler Decl. ¶ 23; Declaration of Daniel Katz Dated March 4, 2025 (ECF No. 98-1) ("Katz Decl."), ¶ 8; Second Gioeli Decl. ¶ 19.  The only exception to this instruction is that, in the case of a detailee who has already taken a training on the same topic at their agency, the detailee would not be required to take a duplicative training.  *See* Wenzler Decl. ¶ 23; Katz Decl. ¶ 8.

is clear that Defendants implemented an appropriate training process with respect to Mr. Wunderly.

The Court further found that it was "unclear from this record whether the agency established clear reporting lines for the Treasury DOGE Team." PI Order at 51. Again, the Report explains in detail the reporting chains that govern the relationship between the Treasury DOGE Team, the United States DOGE Service ("USDS")/DOGE, and Treasury leadership. *See* PI Order at 64. In particular, Daniel Katz serves as the Chief of Staff of the Department of the Treasury and reports directly to the Treasury Secretary. Katz Decl. ¶ 1. Mr. Katz is the primary aide to the Secretary responsible for exercising supervision over the Deputy Chiefs of Staff, Executive Secretary, Director of Scheduling, and other officials and offices within the Office of the Chief of Staff. *Id.*

Mr. Katz is also the primary official responsible for assisting the Secretary in overseeing the work of the Treasury DOGE Team. *Id.* ¶ 3. Thomas Krause, the Treasury DOGE Team lead, reports to Mr. Katz,[6] as do all the other members of the Treasury DOGE Team who are Treasury employees, including Mr. Wunderly. *Id.* ¶¶ 3, 7. Mr. Krause and the other members of the Treasury DOGE Team collaborate closely with staff at the USDS consistent with direction from Secretary Bessent and Mr. Katz, but they do not report to anyone outside of the Treasury Department. *Id.* ¶ 3. Although the Treasury DOGE Team and others at Treasury coordinate with the White House and USDS to set high-level policy direction and priorities, only the Offices of the Treasury Secretary and Chief of Staff are responsible for overseeing the Treasury DOGE

---

[6] With respect to his duties as Fiscal Assistant Secretary, Mr. Krause reports directly to Secretary Bessent. Katz Decl. ¶ 3 n.1.

Team. *Id.* Accordingly, the record is clear that there was a considered process for onboarding Mr. Wunderly to the Treasury DOGE Team.

The Court additionally expressed concern that the urgent fashion by which Treasury DOGE Team members were onboarded "left career staff with almost no time to develop their mitigation measures." PI Order at 51. The Report explains that in order to address longstanding issues involving (1) making the Treasury Department more effective, more efficient, and more responsive through the use of cutting-edge technologies, and (2) tackling issues identified by the Government Accountability Office, including on the topic of improper and fraudulent payments, it is crucial to Secretary Bessent that the work of the Treasury DOGE Team proceeds as quickly as possible, consistent with all applicable legal and regulatory requirements, including the requirements of the PI. Report at 4; Katz Decl. ¶ 5. With regard specifically to Mr. Wunderly, the Report explains that given his expertise and anticipated work to modernize and strengthen Treasury's information technology systems, it is critical that he begin his work expeditiously. Report at 3-4.

Further, Defendants described the mitigation procedures put in place to minimize risk when former Treasury employee Marko Elez was given limited access to certain BFS systems. *See* ECF No. 34, Declaration of Joseph Gioeli III Dated February 11, 2025 ("First Gioeli Decl."), ¶¶ 11-15. Defendants also represented that if the Court dissolves the PI as to Mr. Wunderly and he subsequently gains logical access to any BFS systems, Treasury will implement the same mitigation measures, and any additional appropriate mitigation, with respect to Mr. Wunderly's access. Second Gioeli Decl. ¶ 19. Accordingly, the record is clear that Defendants will implement appropriate mitigation measures if Mr. Wunderly were to be granted access to Treasury systems.

11

Finally, the Court requested additional information regarding the legal authority pursuant to which each DOGE Team member was employed by or detailed to the Treasury Department. PI Order at 64.  The authorities pursuant to which each Treasury DOGE Team member is employed or detailed are described in the Wenzler Declaration.  *See* Wenzler Decl. ¶¶ 3-17. With respect to Mr. Wunderly, he was appointed on February 19, 2025, as Special Advisor for Information Technology and Modernization (Treasury Departmental Offices, Office of the Chief of Staff), under Treasury's authority to establish temporary transitional Schedule C positions.  *See* 5 C.F.R. § 213.3302; Wenzler Decl. ¶ 12.  Mr. Wunderly is not designated as a special government employee.  *See* Wenzler Decl. ¶ 12.

***

In short, Defendants have demonstrated that with respect to Mr. Wunderly, they have adequately redressed the APA concerns identified by the Court.  Accordingly, the preliminary injunction should be dissolved as to Mr. Wunderly.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to partially dissolve the PI, as to Treasury employee Ryan Wunderly.

Dated: March 10, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOHN R. GRIFFITHS
Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: */s/ Rebecca S. Tinio*
JEFFREY OESTERICHER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2695/2774
Email: jeffrey.oestericher@usdoj.gov
        rebecca.tinio@usdoj.gov

13

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3410 words.