UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.,*<br><br>               Plaintiffs,<br><br>  - against –<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES*, et al.,*<br><br>               Defendants. | No. 25 Civ. 1144 (JAV) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF STATES' MOTION FOR RECONSIDERATION OF
THE COURT'S ZONE-OF-INTERESTS RULING**


MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
    – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

STANDARD OF REVIEW ........................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    Plaintiffs' Motion for Reconsideration Should be Denied ..................................................... 4

        A.    Plaintiffs Do Not Meet the Standard for Reconsideration ........................... 4

        B.    Plaintiffs Do Not Challenge the Court's Central Zone of
            Interests Holding ........................................................................................... 6

        C.    Plaintiffs' New Zone of Interests Theory Is Meritless ................................ 7

CONCLUSION ............................................................................................................................ 11

**TABLE OF AUTHORITIES**

*Cases*

*Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*,
  498 U.S. 517 (1991) .................................................................................................. 9

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) ....................................................................................... 3

*Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*,
  965 F. Supp. 2d 402 (S.D.N.Y. 2013) ................................................................... 4, 5

*Chavez v. Occidental Chem. Corp.*,
  No. 17 Civ. 3459 (PAE), 2018 WL 620488 (S.D.N.Y. Jan. 29, 2018) ............... 3, 4, 5

*Ctr. for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002) ................................................................................... 10

*Ferring B.V. v. Allergan, Inc.*,
  No. 12 Civ. 2650, 2013 WL 4082930 (S.D.N.Y. Aug. 7, 2013) ................................ 3

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013) ....................................................................................... 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .................................................................................................. 8

*Match-E-B-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) .................................................................................................. 8

*Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,
  No. 17 Civ. 6424 (VSB), 2020 WL 5646107 (S.D.N.Y. Sept. 21, 2020) ................ 3, 4

*Moya v. DHS*,
  975 F.3d 120 (2d Cir. 2020) .................................................................................. 8, 9

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof. Football Ltd. P'ship*,
  409 Fed. App'x 401 (2d Cir. 2010) .......................................................................... 6

*Polsby v. St. Martin's Press, Inc.*,
  No. 97 Civ. 690 (MBM), 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ........................ 3

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ....................................................................................... 3

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012) ....................................................................... 3

*UBS AG, London Branch v. Greka Integrated, Inc.*,
  No. 21-1385-cv, 2022 WL 2297904 (2d Cir. June 27, 2022) ........................................................ 7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ................................................................................................. 3

**Statutes**

5 U.S.C. § 552a ................................................................................................................... 1

44 U.S.C. § 3501 .................................................................................................................. 1

44 U.S.C. § 3601 ............................................................................................................. 5, 10

Pub. L. No. 93-579, 88 Stat. at 1905-09 ........................................................................ 4, 7, 8, 9

**Other Sources**

Personal Privacy in an Information Society, S. Rep. No. 93-1183 (1974) .......................... 4, 5, 8, 9

**PRELIMINARY STATEMENT**

Defendants Donald J. Trump, the United States Department of the Treasury, and Scott Bessent, in his official capacity as Secretary of the Treasury, by their attorney, Matthew Podolsky, Acting United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the Plaintiff States' Motion for Reconsideration of the Court's Zone-of-Interests Ruling. The motion should be denied, because it does not meet the strict standard for reconsideration, it fails to challenge the Court's key zone of interests ruling, and Plaintiffs' arguments are meritless.

**BACKGROUND**

Plaintiffs filed this action on February 7, 2025. As relevant to the present motion, the Complaint alleges that in giving limited access to Bureau of the Fiscal Service ("BFS") payment systems to the then-members of Treasury's Department of Government Efficiency ("DOGE") Team, Defendants violated the Administrative Procedure Act ("APA") by engaging in conduct that exceeded their statutory authority and was contrary to law. ECF No. 7 ("Compl."), ¶¶ 154-70 (Counts One and Two). These claims are premised on Plaintiffs' assertion that by granting such limited access, Defendants ran afoul of, among other things, the Privacy Act of 1974, 5 U.S.C. § 552a, and the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. at 2921-22, codified at 44 U.S.C. § 3501 note ("EGA"). Compl. ¶¶ 44-57, 154-70.

After briefing and oral argument, on February 21, 2025, the Court issued an Opinion and Order issuing a preliminary injunction but rejecting Plaintiffs' APA claims premised on alleged violations of the Privacy Act and EGA. ECF No. 76 ("PI Order") at 33-38, 40-41. The Court examined whether Plaintiffs' interests fall within the "zone of interests to be protected or regulated" by the Privacy Act and the EGA. *Id.* With regard to the Privacy Act, the Court noted

that Plaintiffs relied on the fact that they are, in certain contexts, "conduits" by which the personal identifying information ("PII") and other confidential information *of their residents* is disclosed to the Treasury Department, and thus Plaintiffs "have an interest in protecting this information." *Id.* at 36. But the Court identified the "clear disjunct between the harm alleged by the Plaintiffs" to establish standing—the risk of disclosure of their *own* State-level financial information—"and the statutory violation that they assert under the Privacy Act," the alleged mishandling of the information of the States' residents. *Id.* at 37. The Court opined that "the nature of the asserted injury in fact at the standing phase cannot be entirely divorced from the plaintiff's interests affected by the agency action . . . . [t]o hold otherwise would allow Plaintiffs to perform a bait-and-switch" that the zone of interests test "does not permit." *Id.* (cleaned up). Citing precedent holding that a plaintiff's own injury must itself fall within the zone of interests intended to be protected by a statute, the Court performed the zone of interests analysis using the harm asserted by Plaintiffs to establish standing, and rejected their APA claims based upon the Privacy Act since "[i]t is plain that the States' interest in the protection of its own financial data is not the type of interest the Privacy Act was enacted to protect." *Id.* at 38. The Court similarly concluded that "Plaintiffs do not fall within the zone of interests the [EGA] was intended to protect," because "the States do not have the type of personal privacy interest that lies at the heart of the E-Government Act." *Id.* at 41.

In their motion seeking reconsideration, Plaintiffs argue that the PI Order "overlooked relevant statutory language and legislative history when construing Congress' intent" in enacting the Privacy Act and the EGA. ECF No. 106 ("Pls. Mot.") at 2. Plaintiffs contend that the language and legislative history of both statutes "manifests Congress' intent in the Privacy Act and [EGA] to promote the interests of the States in the integrity of Federal Records." *Id.* at 3.

## STANDARD OF REVIEW

A motion for reconsideration "should be granted only when the [party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  Reconsideration of a court's prior order under Local Civil Rule 6.3 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Ferring B.V. v. Allergan, Inc.*, No. 12 Civ. 2650, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)).  Thus, the standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17 Civ. 6424 (VSB), 2020 WL 5646107, at *1 (S.D.N.Y. Sept. 21, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  A movant "may not advance new facts, issues, or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal quotation marks and citation omitted); *see also Chavez v. Occidental Chem. Corp.*, No. 17 Civ. 3459 (PAE), 2018 WL 620488, at *1 (S.D.N.Y. Jan. 29, 2018) (reconsideration motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that

could have been previously advanced." (internal quotation marks and citations omitted)); *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (the standards governing motions for reconsideration are meant "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." (internal quotation marks omitted)).

## ARGUMENT

### Plaintiffs' Motion for Reconsideration Should Be Denied

**A. Plaintiffs Do Not Meet the Standard for Reconsideration**

Plaintiffs' motion should be denied because, first, it falls far short of meeting the exacting standards for reconsideration of the PI Order. Plaintiffs do not point to any intervening change of controlling law, or new evidence or data. Nor do Plaintiffs even address the reconsideration standard. Rather, their motion is a transparent attempt at a "second bite at the apple," in which they offer arguments and theories not previously presented to the Court. *See Mexico Infrastructure*, 2020 WL 5646107, at *1.

Specifically, Plaintiffs' motion seeks to bring "relevant statutory language and legislative history to the Court's attention." Pls. Mot. at 1. With respect to the Privacy Act, Plaintiffs contend that "[t]he Court may have overlooked the legislative history, including Sections 5 and 7" of the statute, because the Court examined only Section 3. *Id.* at 4; *see also* Pub. L. No. 93-579, 88 Stat. at 1905-09 (Section 5 of the Privacy Act, establishing a Privacy Protection Study Commission); Pub. L. No. 93-579, 88 Stat. at 1909 (Section 7 of the Privacy Act). In addition to those two sections, Plaintiffs also quote the 1974 Report of the Senate Committee on Government Operations regarding the bill that ultimately became the Privacy Act. Pls. Mot. at 3-4; S. Rep. No. 93-1183 (1974). As to the EGA, Plaintiffs argue that the Court "overlooked" all

4

of Title I of that statute, because the PI Order focused solely on Section 208. Pls. Mot. at 3, 7; *see also* 44 U.S.C. § 3601 *et seq.* (Title I of the EGA). But the Court did not "overlook" these provisions and snippets of legislative history. Rather, Plaintiffs never cited, discussed, or otherwise referred to them, whether in their Complaint, briefing in support of preliminary relief, or at oral argument. *See, e.g.*, Compl. ¶¶ 44-48, 166 (allegations regarding the Privacy Act); *id.* ¶¶ 49-57, 164 (allegations regarding the EGA); ECF Nos. 4, 51 (Plaintiffs' briefing). Plaintiffs never mentioned these sources even in their reply brief, with the benefit of having seen Defendants' arguments in opposition to preliminary relief. *See* ECF No. 51. Until now, Plaintiffs have repeatedly pointed the Court exclusively to Section 3 of the Privacy Act and Section 208 of the EGA, and offer no justification for untimely "making new arguments that could have been previously advanced," *Chavez*, 2018 WL 620488, at *1, or for attempting to "plug[] the gaps of [their motion for preliminary relief] with additional matters," *Arthur Glick Truck Sales*, 965 F. Supp. 2d at 404 (citation omitted).

Moreover, Plaintiffs now offer a new zone of interests theory, arising from "the interests of the States in the integrity of Federal Records," Pls. Mot. at 3, "the interests of state governments in safeguarding Federal Records," *id.* at 4, and the States' "rel[iance] on the integrity of the federal payment systems," *id.* at 9. According to Plaintiffs, "Congress intended in both [the Privacy Act and the EGA] to promote not only individuals' interests in protecting their PII, but also the interests of States in protecting the security and integrity of records *containing* PII." *Id.* at 1 (emphasis in the original). This formulation, which suggests that a State-level concern with general federal records integrity lies within the zone of interests that the Privacy Act and EGA are intended to protect, diverges sharply from Plaintiffs' prior theory, which was derived solely from a concern regarding the security of the States' residents' PII "as

5

part of the data uploaded to the BFS systems." ECF No. 51 at 12-13; *see also id.* at 10; Transcript of February 14, 2025 Oral Argument (ECF No. 92), at 28:23 to 29:11 ("[U]nder the zone of interests test, we can, indeed, rely on the PII of individual residents who reside within these states and whose information the states provide through portals to the Treasury . . . So our argument is that we have prudential standing to raise a Privacy Act claim because we do, indeed, forward on, as the stewards and trustees of our residents, private information").

Because Plaintiffs' motion consists entirely of references to sources that Plaintiffs could have raised to the Court's attention before (but failed to do so), in aid of a brand-new zone of interests theory, the motion should be denied. *See, e.g.*, *Walsh v. Townsquare Media, Inc.*, 565 F. Supp. 3d 400, 402-03 (S.D.N.Y. 2021) (rejecting as "improper" an argument advanced for the first time in a motion for reconsideration). Indeed, the arguments in Plaintiffs' motion are waived. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof. Football Ltd. P'ship*, 409 Fed. App'x 401, 403 (2d Cir. 2010) (affirming district court's finding that an argument was not properly raised for the first time on a motion for reconsideration and that the argument had been waived).

### B. Plaintiffs Do Not Challenge the Court's Central Zone of Interests Holding

In their motion, Plaintiffs do not even attempt to challenge the Court's central zone of interests holding—that Plaintiffs' (original) theory, derived from the alleged mishandling of their individual residents' PII, constituted an impermissible "bait-and-switch" from the harm alleged by Plaintiffs to establish standing (the risk of disclosure of their own State-level financial information).[1] PI Order at 36-38. Put another way, Plaintiffs do not contest that the Court

---

[1] Thus, Plaintiffs waive any challenge to this conclusion. *See, e.g.*, *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 21-1385-cv, 2022 WL 2297904, at *5 (2d Cir. June 27, 2022) (an argument not raised in principal briefing or on reconsideration below "has been waived").

6

properly used their alleged State-level harm to conduct the APA zone of interests analysis, rather than the States' purported interest in protecting their residents' PII that is submitted to BFS payment systems. *See* PI Order at 37-38 ("The Court must compare Plaintiffs' affected interests—which in this case is the protection of their own financial information from unauthorized disclosure—with the zone of interests that the Privacy Act seeks to protect."); *see also id.* at 40-41. Thus, the new zone of interests theory advanced by Plaintiffs in their motion for reconsideration is entirely beside the point, because it again does not match the theory of harm that Plaintiffs used to establish standing.[2]

### C. Plaintiffs' New Zone of Interests Theory Is Meritless

Even if the Court were to embrace a new standard of review to reach Plaintiffs' new zone of interests theory, which it should not do, the motion for reconsideration should still be denied. Plaintiffs' contention that the Privacy Act and EGA were intended to protect a generalized State interest in the "integrity of Federal Records," Pls. Mot. at 3, on which they can base their statutory APA claims, is unfounded.

As to the Privacy Act, Plaintiffs attempt to identify a supposed "Congress[ional] intent to promote the interests of state governments in safeguarding Federal Records," *id.* at 4, in three locations: (1) Section 5 of the statute, Pub. L. No. 93-579, 88 Stat. at 1905-09, which established a "Privacy Protection Study Commission" that produced a report making non-binding recommendations in 1977, then dissolved[3]; (2) Section 7 of the statute, Pub. L. No. 93-579, 88

---

[2] Nor do Plaintiffs argue that they could premise their standing in this suit on the purported interest identified in their new zone of interests theory, arising from "the interests of the States in the integrity of Federal Records," Pls. Mot. at 3.

[3] *See* Personal Privacy in an Information Society (July 12, 1977), *available at* https://www.ojp.gov/pdffiles1/Digitization/49602NCJRS.pdf (last visited March 14, 2025) ("1977 Report").

7

Stat. at 1909, which prohibits "any federal, state or local government agency [from denying] to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number," subject to a few exceptions; and (3) a handful of quotes from one Senate committee report regarding the bill that became the Privacy Act. *See* S. Rep. No. 93-1183 (1974); Pls. Mot. at 4-5. None of these sources, which are far afield from the Section 3 statutory violations that Plaintiffs allege occurred in this case, *see* Compl. ¶ 166, establish that the States' purported general concern for federal records integrity lies within the "zone of interests" to be protected or regulated by the Privacy Act. "The core concern of the zone-of-interests doctrine is, after all, whether a plaintiff has a cause of action under the law invoked." *Moya v. DHS*, 975 F.3d 120, 132 (2d Cir. 2020) (citation omitted); *see also, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) ("Whether a plaintiff comes within the zone of interests is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred *cause of action* encompasses a particular plaintiff's claim.") (emphasis added) (cleaned up); *Match-E-B-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 ("the interest [the party] asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was v*iolated*.") (emphasis added) (cleaned up).[4]

---

[4] Plaintiffs also cite *Patchak*, but it does not help them. *See* Pls. Mot. at 8-9. In *Patchak*, the plaintiff landowner did not rely for purposes of the zone of interests test on indirect harm to others arising from an acquisition of neighboring land, but rather on direct "economic, environmental, and aesthetic harm" to himself. *Patchak*, 567 U.S. at 224. This harm fell within the zone of interests of the Indian Reorganization Act because the statutory provision at issue was so "entwined with considerations of land use" that the plaintiff, as a nearby property owner, was a reasonable—indeed, predictable—challenger." *Id.* at 227. Plaintiffs first analogize *Patchak* to "the States' challenge to the unauthorized disclosure of their information to Treasury," but this assertion attempts to import the States' asserted injury to their own confidential information into the zone of interests analysis here, which as discussed above, the States have previously disclaimed. *See* Pls. Mot. at 9. And Plaintiffs have never articulated any

Only one of the sources that Plaintiffs cite actually sets forth a legal prohibition—Section 7, which makes it illegal for *state* governmental agencies, among others, to deny rights to individuals on the basis of their refusal to disclose their social security numbers. *See* Pub. L. No. 93-579, 88 Stat. at 1909. Plaintiffs' interpretation of this provision as "evidenc[ing] the shared federal-state partnership to protect sensitive data" or otherwise protecting any State interests whatsoever clearly lacks force or logic, since the prohibition in Section 7 runs against states. Pls. Mot. at 6. Plaintiffs' theory as to Section 5 is seemingly limitless and should be rejected, as it appears to arise solely from the fact that the 1977 Committee Report contained a section discussing "[t]he State Role in Privacy Protection" and referred to federal programs in which states participate, like Medicaid. *See* Pls. Mot. at 6; 1977 Report at xiii (Table of Contents). If Plaintiffs' theory based on Section 5 were correct, APA claims would apparently be available— nearly 50 years after the Report was issued—to all manner of plaintiffs regarding any concern addressed in the report. *See Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 530 (1991) (rejecting an approach that "could deprive the zone-of-interests test of virtually all meaning"). Similarly, Plaintiffs' selective quotes from the 1974 Senate committee report evince only a Congressional concern that the Privacy Act complement, among many other things, states' own efforts (in, *e.g.*, their own enactments) to address *individual and personal* privacy concerns of their residents—not to go much further and protect general State-level concerns about federal record-keeping. *See* Pls. Mot. at 4-5. Here, any legitimate State interest under the Privacy Act would be entirely derivative of their residents' interests, which is

---

other *direct* harm to themselves anything like the landowner's harm in *Patchak*. *See also Moya*, 975 F.3d at 132-33 (distinguishing *Patchak*).

9

"precisely the sort of claim that the [zone-of-interests] doctrine is designed to foreclose." *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 196 (2d Cir. 2002) (citation omitted).

Similarly, Plaintiffs' claim that Title I of the EGA "evidences Congress' intent that federal and state governments cooperate to further their shared responsibility to protect PII" lacks merit. Pls. Mot. at 7; *see also* 44 U.S.C. ch. 36 (Title I of the EGA). Title I is entirely devoted to setting forth definitions, creating various federal government offices, positions, and boards, and describing a handful of reporting responsibilities delegated to those newly established positions and entities. *See* 44 U.S.C. § 3601 *et seq.* Plaintiffs argue that Title I encompasses them within the EGA's zone of interests because it tasks some of these new offices with generally consulting with states (among other interest holders, like local and tribal governments), to "share experiences, ideas, and best practices." Pls. Mot. at 7. Plaintiffs cite no case—because there is none—holding that a litigant with no cause of action under a federal law can nevertheless bring a statutory APA claim, because a non-decretal provision of that law states that a federal official may consult various interest holders to discuss "ideas."

In sum, none of the sources that Plaintiffs cite in their motion establish that Plaintiffs are within the zone of interests that the Privacy Act and EGA intended to protect; and they certainly do not establish that the Court must accept these novel arguments to prevent a "manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for reconsideration of the Court's zone-of-interests ruling.

| | |
|---|---|
| Dated: March 14, 2025 | Respectfully submitted, |
| | |
| YAAKOV M. ROTH | MATTHEW PODOLSKY |
| Acting Assistant Attorney General | Acting United States Attorney |
| Civil Division | |
| | By: */s/ Rebecca S. Tinio* |
| JOHN R. GRIFFITHS | JEFFREY OESTERICHER |
| Director | REBECCA S. TINIO |
| Federal Programs Branch | Assistant United States Attorneys |
| | 86 Chambers Street, 3rd Floor |
| */s/ Bradley P. Humphreys* | New York, NY 10007 |
| BRADLEY P. HUMPHREYS | Telephone: (212) 637-2695/2774 |
| (D.C. Bar No. 988057) | Email: jeffrey.oestericher@usdoj.gov |
| Senior Trial Counsel | rebecca.tinio@usdoj.gov |
| Federal Programs Branch | |
| Civil Division, Department of Justice | |
| 1100 L Street NW | |
| Washington, DC 20005 | |
| Telephone: (202) 305-0878 | |
| Bradley.Humphreys@usdoj.gov | |

## Certificate of Compliance

Pursuant to Local Civil Rules 6.3 and 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3315 words.