UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, *et al.*,

          *Plaintiffs*,

    v.

U.S. DEPARTMENT OF THE TREASURY, *et al.*,

          *Defendants*.

Case No. 25 Civ. 01144 (JAV)

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PARTIALLY DISSOLVE THE PRELIMINARY INJUNCTION**

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
      – Of Counsel –

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................................2

THE COURT SHOULD DISSOLVE THE PRELIMINARY INJUNCTION AS TO RYAN WUNDERLY.....................................................................................................................................2

    I.    Defendants Have Adequately Redressed the APA Violations Found by the Court......................................................................................................................2

    II.    Plaintiffs' Newly Asserted APA Claim Is Procedurally Improper and Meritless..................................................................................................................8

CONCLUSION.................................................................................................................................11

## Table of Authorities

Page(s)

Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) .................................................................................................. 10

*Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*,
  965 F. Supp. 2d 402 (S.D.N.Y. 2013) ................................................................................. 10

*Chavez v. Occidental Chem. Corp.*,
  No. 17 Civ. 3459 (PAE), 2018 WL 620488 (S.D.N.Y. Jan. 29, 2018) ................................ 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................ 10

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ............................................................................................................ 11

*Doe v. OPM*,
  No. 25 Civ. 234 (RDM), 2025 WL 513268 (D.D.C. Feb. 17, 2025) ..................................... 8

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ................................................................................................ 4

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) .............................................................................................. 4

*Jones v. U.S. Secret Serv.*,
  701 F. Supp. 3d 4 (D.D.C. 2023) .......................................................................................... 6

*Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,
  No. 17 Civ. 6424 (VSB), 2020 WL 5646107 (S.D.N.Y. Sept. 21, 2020) .............................. 9

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof. Football Ltd. P'ship*,
  409 F. App'x 401 (2d Cir. Dec. 20, 2010) ............................................................................. 9

*Thomas v. Egan*,
  1 F. App'x 52 (2d Cir. 2011) ................................................................................................. 9

*Walsh v. Townsquare Media, Inc.*,
  565 F. Supp. 3d 400 (S.D.N.Y. 2021) ................................................................................... 9

**PRELIMINARY STATEMENT**

Plaintiffs' opposition brief (ECF No. 118) ("Pls. Mem.") fails to provide any basis to maintain the preliminary injunction as to Mr. Wunderly. Rather, Plaintiffs invite the Court to improperly second-guess the Treasury Department's established vetting and training procedures and require Treasury to provide a constantly expanding level of detail about its procedures and processes. Plaintiffs' requests are not supported by law and should be rejected. Defendants have provided all of the information required by the Court's February 21, 2025 Opinion and Order (ECF No. 116) as to Mr. Wunderly, and have addressed the Court's concerns regarding the processes governing Mr. Wunderly's hiring, reporting chains, training, vetting and security clearance, and anticipated access to Treasury systems.

Likewise, Plaintiffs' attempt to advance a new Administrative Procedure Act claim in their opposition – that the use of the Engagement Plan to flag potentially improper payments for certifying agencies is arbitrary and capricious – is both procedurally improper and meritless. As a threshold matter, this new argument was waived as it was not properly raised in Plaintiffs' motion for a preliminary injunction. Alternatively, to the extent Plaintiffs contend that they somehow did press this argument before and it was not accepted by the Court, then raising it again now constitutes an untimely and improper second motion for reconsideration. In any event, the new argument lacks merit and does not support maintaining the preliminary injunction as to Mr. Wunderly.

Accordingly, the Court should grant Defendants' motion to dissolve the preliminary injunction as to Mr. Wunderly.

# ARGUMENT

## THE COURT SHOULD DISSOLVE THE PRELIMINARY INJUNCTION AS TO RYAN WUNDERLY

### I. Defendants Have Adequately Redressed the APA Violations Found by the Court

In its Opinion and Order issuing the preliminary injunction, ECF No. 76 (the "PI Order"), the Court set forth the information it required to evaluate whether the Treasury Department had adequately redressed the APA concerns set forth in its opinion. PI Order at 63-64. On March 5, 2025, Defendants filed a Report, along with four declarations, providing the information requested by the Court with regard to Treasury employee and Treasury DOGE Team member Ryan Wunderly. ECF No. 98 ("Report"), 98-1 (Declaration of Daniel Katz) ("Katz Decl."), 98-2 (Declaration of Joseph Gioeli III) ("Gioeli Decl."), 98-3 (Declaration of Joseph Wenzler) ("Wenzler Decl."), 98-4 (Declaration of Kari Mencl) ("Mencl Decl.").[1] Specifically, the Report: (1) certified that Mr. Wunderly has been provided with all training that is typically required of individuals granted logical access to BFS payment systems; and made clear that if in the future, he requests access that would require specific payment system trainings, he will be required to complete those trainings, *id.* at 4-5; (2) certified that Mr. Wunderly has undergone the same type of vetting and security clearance process applied to career employees who have previously been granted access to the BFS payment systems comparable to the access contemplated on behalf of Mr. Wunderly, *id.* at 5-6; (3) described the mitigation procedures that would be implemented (in addition to "any additional appropriate mitigation") to minimize any risk associated with Mr. Wunderly's contemplated access to Treasury systems and data, *id.* at 6-7; (4) detailed the

---

[1] Defendants filed two supplemental declarations on March 14, 2025, to provide additional information about Mr. Wunderly's vetting and training, and BFS's forensic review of the activities of former Treasury employee Marko Elez. *See* ECF No. 116-1 (Declaration of David Ambrose) ("Ambrose Decl."); ECF No. 116-2 (Declaration of Nathaniel Reboja) ("Reboja Decl.").

authorities pursuant to which each Treasury DOGE Team member (as of March 5, 2025) is employed or detailed, *id.* at 7-9; and (5) described the reporting chains that govern the relationship between the Treasury DOGE Team, the United States DOGE Service, and Treasury leadership, *id.* at 9-10. In response, Plaintiffs mostly ignore the Report and attempt to both expand the concerns articulated by the Court and require Defendants to provide ever increasing granular detail about Treasury's day-to-day operations and its vetting processes. At bottom, Plaintiffs invite the Court to review and second-guess Treasury's processes and procedures as a sort of de facto Chief Human Resources and Information Officer. That invitation has no basis in the APA and goes far beyond the concerns identified in this Court's order. The Court should refuse it.

First, Plaintiffs complain that the record does not contain sufficient "specifics of the vetting process" that Mr. Wunderly has undergone. Pls. Mem. at 1; *see also id.* at 4-6. However, the Report makes clear that Mr. Wunderly has undergone the same type of vetting and security clearance process applied to career employees who have previously been granted comparable access to the BFS payment systems. Report at 5-6. At Treasury, all career federal employees and political appointees, regardless of the level of their position, undergo the same overall vetting process, including a background investigation and an adjudication in accordance with national standards and guidelines. Mencl Decl. ¶ 10. With respect to Mr. Wunderly, the Office of Security Programs ("OSP") conducted his security vetting process as a political appointee. Mencl Decl. ¶ 13. Specifically, on February 10, 2025, OSP completed the National Vetting Database checks. *Id.* OSP then determined that an additional background investigation was not required because a qualifying background check had already been completed. *Id.*; *see also id.* ¶ 7 (regarding the process of revalidating a prior qualifying favorable background investigation and noting that "OSP revalidates the prior background investigation, confirms that it meets the scope required for the

new position at Treasury and that it was favorably adjudicated, and reciprocally accepts the other federal agency's determination"); Declaration of Kari Mencl dated March 17, 2025, ¶ 3 (averring that Mr. Wunderly's background check was performed by the Defense Counterintelligence and Security Agency and completed on March 17, 2021). On February 12, 2025, Mr. Wunderly was cleared for onboarding. *Id.* A week later, on February 19, 2025, BFS contacted OSP to verify Mr. Wunderly's level of security clearance. *Id.*[2] On February 28, 2025, OSP's Personnel Security Branch granted Mr. Wunderly a Top Secret clearance with Sensitive Compartmented Information access after completion of his security briefings and his signing of the non-disclosure agreements. *Id.* Accordingly, the record is clear that Defendants implemented an appropriate vetting and security clearance process with respect to Mr. Wunderly.

Plaintiffs insist, however, that BFS and OSP should not have relied on the background investigation conducted by another federal agency and instead should have conducted their own background investigation. Pls. Mem. at 5. This assertion is completely unsupported and runs counter to Treasury's established policy for all similarly situated employees. *See* Mencl Decl. ¶ 7. Plaintiffs are essentially requesting that the Court require Treasury to implement a different vetting standard and process for DOGE-related hires without a basis. That is flatly inconsistent with the case law which makes clear that the Court should not – contrary to Plaintiffs' assertion – oversee and second guess the day-to-day management of government programs. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (under the APA, courts should not involve themselves in the "the common business of managing government

---

[2] On February 19, BFS obtained assurance from Main Treasury regarding Mr. Wunderly's vetting process and his level of clearance. Gioeli Decl. ¶¶ 4, 6.

programs"); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (judicial review under the APA does not reach the agency's "workaday" dealings).[3]

Second, Plaintiffs complain that Defendants have not sufficiently answered the question (to Plaintiffs' liking): "what are the Treasury DOGE Team members, including its new engineer Wunderly, going to do with the BFS systems and data in support of their work on the Engagement Plan?" Pls. Mem. at 6. However, the Court did not request that information in the PI Order. *See* PI Order at 63-64. Rather, the Court understood that the "purpose of this Engagement Plan was to provide the [Treasury] DOGE Team with insight into the full, end-to-end BFS payment processes, to identify data gaps that could make the systems work more efficiently, and identify opportunities to advance payment integrity and fraud reduction goals." PI Order at 11 (internal quotation marks and citation omitted); *see also* PI Order at 14 ("One of the Treasury DOGE Team's tasks was to help agencies effectuate the President's Executive Orders requiring pauses to certain types of financial transactions.") (internal quotation marks and citation omitted).

Plaintiffs also question whether there may be more appropriate ways to perform the day-to-day supervision of the Treasury DOGE Team members, including Mr. Wunderly. Pls. Mem. at 8-10. They express skepticism regarding how the supervisory structure "will suffice to provide the appropriate safeguards to prevent the access issues encountered with Elez." Pls. Mem. at 9. Again, however, the APA does not allow the Court to review and second guess such decisions. *See supra* at 4. As required by the PI Order, the Report details the reporting chains that govern the relationship between the Treasury DOGE Team, the United States DOGE Service, and Treasury leadership. *See* PI Order at 64. In particular, Daniel Katz serves as the Chief of Staff of

---

[3] Plaintiffs' quibble that Defendants do not identify the individual at OSP who revalidated Mr. Wunderly's background check, Pls. Mem. at 5, lacks any force.

the Department of the Treasury and reports directly to the Treasury Secretary. Katz Decl. ¶ 1. Mr. Katz is the primary aide to the Secretary responsible for exercising supervision over the Deputy Chiefs of Staff, Executive Secretary, Director of Scheduling, and other officials and offices within the Office of the Chief of Staff. *Id.* Mr. Katz is also the primary official responsible for assisting the Secretary in overseeing the work of the Treasury DOGE Team. *Id.* ¶ 3. Thomas Krause, the Treasury DOGE Team lead, reports to Mr. Katz, as do all the other members of the Treasury DOGE Team who are Treasury employees, including Mr. Wunderly. *Id.* ¶¶ 3, 7.[4] Mr. Krause and the other members of the Treasury DOGE Team collaborate closely with staff at the USDS consistent with direction from Secretary Bessent and Mr. Katz, but they do not report to anyone outside of the Treasury Department. *Id.* ¶ 3. Accordingly, the record is clear that there was a considered process for onboarding Mr. Wunderly to the Treasury DOGE Team and an established supervisory structure in place for him.

Third, Plaintiffs question whether Mr. Wunderly has received sufficient training. Pls. Mem. at 1, 10-11. In particular, Plaintiffs observe that Mr. Elez received hands-on training with experienced system users but Mr. Wunderly has not yet received that training. *Id.* However, as explained in the Declaration of Vona S. Robinson dated March 17, 2025 ("Robinson Decl."), Mr. Wunderly has not received the hands-on training with experienced system users because in compliance with the PI Order, Treasury has not permitted Mr. Wunderly or any other Treasury DOGE Team members to access—or view live operations of (often referred to as "over-the-shoulder" access)—any BFS payments system. *Id*. ¶ 8**;** Ambrose Decl. ¶ 8**.** If the Court grants the motion to partially dissolve the preliminary injunction, Mr. Wunderly will then receive hands-

---

[4] Mr. Krause's appointment was extended for a period not to exceed June 12, 2025. Declaration of Janice Benjamin dated March 17, 2025 ("Benjamin Decl."), ¶ 3.

on training.  Robinson Decl. ¶ 8**;** Ambrose Decl. ¶ 8*; see Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023) (courts do not oversee agency training programs), appeal docketed, No. 23-5288 (D.C. Cir. Dec. 7, 2023).[5]

Furthermore, since the date of the Report, Mr. Wunderly received an additional security briefing on the Bureau's cybersecurity and PII practices and precautions. *See* Ambrose Decl. ¶¶ 6, 12.  Specifically, Mr. Wunderly was briefed on the Bureau's (1) policies and rules associated with safeguarding information maintained in the Bureau's Systems and Equipment, including the Bureau's Email and Instant-Messaging Policy and the Rules; (2) policy that data and equipment cannot leave his work station and be removed or sent outside the Bureau without formal approval; (3) policy on safeguarding sensitive information received from outside sources or other agencies; and (4) policy that sensitive information should be stored on the Bureau's network drive(s), not locally on the laptop.[6]  Moving forward, security personnel will provide the same briefing to all Treasury DOGE Team members who are granted access to BFS systems and equipment. *Id.* Accordingly, appropriate safeguards have been put in place to prevent the access and disclosure issue encountered with Mr. Elez.

Fourth, Plaintiffs assert in conclusory fashion that in light of the security issues relating to Mr. Elez, "[m]ore robust mitigation measures are clearly needed." Pls. Mem. at 12.  However,

---

[5] Plaintiffs also complain that Defendants did not certify that Mr. Wunderly was provided with "all training typically required of individuals granted access to *BFS payment systems*," Pls. Mem. at 11 – he was provided with that training, *see* Declaration of David Ambrose dated March 17, 2025, ¶¶ 4-11; Declaration of Sandra A. Paylor dated March 17, 2025, ¶ 6 – and that Defendants did not confirm that Mr. Wunderly "has complied with the additional ethics requirements he must meet as a Schedule C appointee who is not a Special Government Employee," Pls. Mem at 11 – he has complied with those additional ethics requirements, *see* Declaration of Mark Vetter dated March 17, 2025, ¶¶ 6-8.

[6] Mr. Wunderly previously had been provided trainings on the handling and care of sensitive information, including applicable laws, regulations and policies. *See* Benjamin Decl. ¶ 4.

7

Mr. Wunderly received a briefing that specifically addressed Mr. Elez's violation of BFS policies. Ambrose Decl. ¶ 12. And Mr. Wunderly received an additional briefing on the Bureau's cybersecurity and PII practices and precautions. *Id.* ¶ 6. Moreover, Treasury has taken steps to ensure that any Treasury DOGE Team member that is provided access to BFS payments systems has received appropriate training and briefing. *See id.* ¶¶ 6, 12; Reboja Decl. ¶¶ 3-6. Accordingly, Defendants have redressed the Court's concern regarding the proper implementation of mitigation measures. PI Order at 50-51.

Finally, Plaintiffs disagree with Defendants' desire to implement the Engagement Plan on an expedited basis. Pls. Mem. at 13-15. However, the mere fact that Plaintiffs question whether urgency is justified is of no moment. The issue raised by the Court is whether Defendants have onboarded and trained Mr. Wunderly in a measured, reasonable, and thoughtful way. *See* PI Order at 52. The record demonstrates that the answer is yes. Accordingly, the preliminary injunction should be dissolved as to Mr. Wunderly. *See, e.g., Doe v. OPM*, No. 25 Civ. 234 (RDM), 2025 WL 513268, at *5 (D.D.C. Feb. 17, 2025) ("it is not the job of the federal courts to police the security of the information systems in the executive branch").

II.     **Plaintiffs' Newly Asserted APA Claim Is Procedurally Improper and Meritless**

Plaintiffs' attempt to raise a new APA claim in this context should not be countenanced. In their opposition brief, Plaintiffs contend that Defendants' plan or actions to assist certifying agencies in identifying potential improper payments is arbitrary and capricious in violation of the APA. Pls. Mem. at 15-21. This argument, which is a transparent attempt to reformulate the agency action at issue, is both procedurally improper and meritless.

As the Court recognized in its Opinion, "[t]he agency action challenged by Plaintiffs is the decision by the Treasury Department to constitute a DOGE Team with individuals from outside

the agency, who were employed pursuant to temporary hiring authorities, and provide those individuals with unprecedented access to the BFS payments systems pursuant to a[n] . . . Engagement Plan." PI Order at 44. The agency action is not – contrary to Plaintiffs' new claim – the alleged "change in longstanding Treasury policy" with regard to how Treasury flags potentially improper payments for certifying agencies. Pls. Mem. at 15-21. Having never raised this argument before, it should be rejected as waived. *See, e.g.*, *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2011) (plaintiff may not raise a claim for the first time in an opposition to a motion for summary judgment)**;** *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof. Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (argument raised for the first time on a motion for reconsideration had been waived); *Walsh v. Townsquare Media, Inc.*, 565 F. Supp. 3d 400, 402-03 (S.D.N.Y. 2021) (same).

To the extent Plaintiffs contend that they did raise this APA argument previously and the Court did not adopt it,[7] that would not change the result. That is because Plaintiffs' time to move for reconsideration of the PI Order, which was entered on February 21, 2015 (ECF No. 76), has passed. *See* Rule 6.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (providing that motions for reconsideration must be filed "within 14 days after the entry of the Court's determination of the original motion"). Indeed, on March 7, 2025, Plaintiffs filed a motion for reconsideration of the Court's zone of interests ruling

---

[7] Plaintiffs have in fact expressly disclaimed this argument. As the Court observed, Plaintiffs "repeatedly affirmed that they are not directly challenging any blocking of federal funding." PI Order at 54; *see also id.* ("'[Interruption of state funding] is not part of our case, so it's really not relevant.'") (quoting PI Hearing Tr. at 12:14-24). However, as the Court noted, in their reply brief in support of their motion for a preliminary injunction, Plaintiffs did "maintain[] that the President cannot apply the Engagement Plan to 'flag and block legislatively appropriated and authorized federal funding' in violation of his duties under the Take Care Clause." PI Order at 56 (quoting Pls. Rep. Br. at 16). The Court rejected that argument because the relevant Executive Order (E.O. 14,158) does not speak to the blocking of funding. PI Order at 56.

9

and did not mention this issue. S*ee* ECF No. 106. Accordingly, Plaintiffs are clearly not entitled to a third bite at the apple. *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17 Civ. 6424 (VSB), 2020 WL 5646107, at *1 (S.D.N.Y. Sept. 21, 2020) (motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'") (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *Chavez v. Occidental Chem. Corp.*, No. 17 Civ. 3459 (PAE), 2018 WL 620488, at *1 (S.D.N.Y. Jan. 29, 2018) (reconsideration motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." (internal quotation marks and citations omitted)); *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (standards governing motions for reconsideration are meant "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." (internal quotation marks and citation omitted)).

Finally, even if the Court were to consider Plaintiffs' new argument on its merits (which the Court should not do), the argument fails. As a threshold matter, the harm on which Plaintiffs rely in seeking a preliminary injunction ("the security of their *own* financial information"), PI Order at 37 (emphasis in original), is completely divorced from the statutory violation that they allege would occur from assisting certifying agencies in identifying potentially improper payments. *See* PI Order at 37. There is no indication that such actions would undermine the security of the States' financial information. For similar reasons, Plaintiffs have not shown an injury in fact, *i.e.*, an injury that is "concrete," meaning "particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs merely posit that the creation of an automated system to flag payments that may be improper under the president's Executive

Order may harm the potential recipients of those funds.  Pls. Mem. at 17-18.  That speculative harm is not sufficient.  *Clapper*, 568 U.S. at 409.  Likewise, Plaintiffs' mere disagreement with the President's priorities is not a basis to enjoin agency action.  Pls. Mem. at 18 (criticizing the use of the Engagement Plan "to achieve the President's funding priorities").  As this Court recognized, "a court may not set aside an agency action solely because it might have been influenced by political considerations or prompted by the priorities of a new Presidential administration.  Agency policymaking is not a 'rarified technocratic process, unaffected by political considerations or the presence of Presidential power.'"  PI Order at 49 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to partially dissolve the preliminary injunction as to Treasury employee Ryan Wunderly.

Dated: March 17, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOHN R. GRIFFITHS
Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: */s/ Jeffrey Oestericher*
JEFFREY OESTERICHER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2695/2774
Email: jeffrey.oestericher@usdoj.gov
          rebecca.tinio@usdoj.gov

11

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3456 words.