UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>    Defendants. | C.A. No. 1:25-cv-1144 (JAV) |

**PLAINTIFF STATES' SUR-REPLY ADDRESSING DEFENDANTS' DECLARATIONS SUBMITTED ON THEIR REPLY IN FURTHER SUPPORT OF THEIR MOTION TO PARTIALLY DISSOLVE THE PRELIMINARY INJUNCTION**

Plaintiff States submit this sur-reply with leave of Court granted on March 18, 2025 (ECF No. 130) for the purpose of addressing the new material and information contained in six declarations submitted by Defendants on their reply filed in further support of their Motion to Partially Dissolve the Preliminary Injunction (ECF No. 111).[1] While Defendants' additional declarations provide the Court with more information, they fail to explain how rushing to install DOGE's replacement for Marko Elez adequately addresses the Court's concerns or provides any

---

[1] The States also take this opportunity to bring to the Court's attention supplemental authority bearing on the two pending motions concerning conduct of DOGE team members accessing federal agency data systems: *Does 1-26 v. Musk*, No. 25-cv-0462, 2025 WL 840574, at *14-18 (D. Md. Mar. 18, 2025) (discussing the role of DOGE team members and Elon Musk in carrying out executive orders); *American Fed'n of State, Cty. and Mun. Emps v. Social Security Admin.*, No. 25-cv-00596, 2025 WL 868953, at *68 (D. Md. Mar. 20, 2025) (granting TRO enjoining SSA from allowing "DOGE personnel broad access to millions of Americans' sensitive PII").

assurance that the security lapses that occurred with Elez will not recur, and of course provide no response at all to the States' argument that Defendants offer no reasoned explanation for the implementation of the Engagement Plan—an independent basis for denying this motion.[2] Rather, the new declarations serve only to demonstrate that Defendants have not meaningfully attended to the Court's admonition to avoid a "rushed" process that will put BFS's sensitive data and systems at risk, February 21, 2025, Opinion and Order (ECF No. 76) ("Op.") at 50, but instead have adopted shortcuts around even the normal training and security practices followed by Treasury and BFS. Because BFS handles nearly 90% of all federal funding disbursements,[3] adequate training and security practices are essential to safeguarding BFS's data and systems.

Each of the six declarations is addressed in turn below.

**Kari Mencl Declaration (ECF No. 121) ("Mencl. Decl. II")** – In her prior declaration, Mencl stated that "[i]t was determined that no background investigation was required because a qualifying background check had already been completed." ECF No. 98-4 at ¶ 13. The States pointed out in their opposition that this carefully-worded assertion "avoids identifying who at OSP made the determination to skip Wunderly's background investigation" and "fails to identify which other federal government agency" completed the prior background check. Plaintiffs' Memorandum of Law in Opposition (ECF No. 118) ("Pls. Opp.") at 5. The States also pointed out that Mencl

---

[2] The States separately maintain the Engagement Plan is arbitrary and capricious because Defendants have failed to provide a reasoned explanation for implementing a change in longstanding Treasury policy, an argument previously raised by the States in support of their motion for a PI but not reached by the Court in its Opinion in light of the Court's alternative basis for finding the States are more likely than not to succeed on their arbitrary and capricious claim. *See* States' Memorandum of Law (ECF No. 4) at 20-22; States' Reply Memorandum of Law (ECF No. 51) at 14-15; February 14, 2025 Transcript at 34:18-36:15 (discussing lack of "any neutral principle or reasoned explanation given for implementing the final agency action" as part of the States' arbitrary and capricious argument under the APA).

[3] *See* Robinson Declaration (ECF No. 122) at ¶ 2.

2

failed to say who at OSP revalidated the prior background check as required or who determined it was "in-scope per the federal investigative standards" with no facts indicating Wunderly does not continue to meet the eligibility standards. *Id.*

In her new declaration, Mencl advises that Wunderly's prior background check "was performed by the Defense Counterintelligence & Security Agency" and was "completed on March 17, 2021"—almost exactly four years ago. Mencl. Decl. II ¶ 3. But Mencl again is silent on who at OSP revalidated this prior background check and why—important information for the Court to know given her disclosure that the prior background check is four years stale. Nor does Mencl explain whether or how anyone determined if the background check done in 2021 was "in-scope" based on Wunderly's expected role as a member of the Treasury DOGE Team, a matter that is not readily apparent as DOGE did not exist four years ago and Mencl provides no information whatsoever on the circumstances giving rise to the need for Wunderly's prior background check. The Court remains without any factual basis to conclude that Wunderly was properly vetted for his current role as a member of the Treasury DOGE Team.

**Mark Vetter Declaration (ECF No. 123) ("Vetter Decl.")** – In their opposition, the States pointed out that Defendants have failed to provide "any confirmation that Wunderly has complied with the additional ethics requirements he must meet as a Schedule C appointee who is not a Special Government Employee." Pls. Opp. at 11. Defendants' attempt to fill this gap with Vetter's testimony falls short, and indeed, only emphasizes that Defendants are continuing to rush the onboarding process notwithstanding the Court's concerns. Vetter confirms that Wunderly *is* required to complete the Office of Government Ethics Public Financial Disclosure Form 278 ("OGE 278"), was assigned to complete that form, and has until March 21, 2025, to do so. Vetter Decl. ¶ 7. But this means the process to clear Wunderly of ethical conflicts *has only just begun*,

assuming he does not request an extension of the March 21 deadline for good cause. A designated BFS ethics official will first need to conduct an initial review of Wunderly's completed OGE 278, a process that can take up to 60 days, followed by a final review and certification by another Treasury ethics official. *See* Treasury Directive 61-01, § 8 (available at https://home.treasury.gov/about/general-information/orders-and-directives/td61-01); *see generally* 5 C.F.R. Part 2634, Subpart F § 2634.605 (Review of Reports). Wunderly should not have access to BFS's systems and data until he has actually cleared the ethics conflicts check based on his completed OGE 278.

**Vona Robinson Declaration (ECF No. 122) ("Robinson Decl. II")** – Defendants submit a new declaration from Robinson to explain to the Court that Wunderly has not received hands-on training because the PI Order prohibits such training, and, according to Defendants, to assure the Court that "[i]f the Court grants the motion to partially dissolve the preliminary injunction, Mr. Wunderly will then receive hands-on training." Defendants' Reply Memorandum of Law (ECF No. 120) ("Defs. Reply") at 6-7. But Robinson provides no such assurance; she merely confirms that hands-on training requires at least "over-the-shoulder" access, but nowhere does she provide any assurance that Wunderly will receive such training, even if the Court dissolves the preliminary injunction as to him. Robinson Decl. at ¶ 8. Even augmented by Robinson's new declaration, the record still fails to demonstrate that Wunderly has been, *or will be*, provided with all training typically required of individuals granted access to BFS payment systems as required by the Court, including hands-on training.

**David Ambrose Declaration (ECF No. 126) ("Ambrose Decl. II")** – In addition to their misplaced reliance on Robinson's testimony, Defendants cite to paragraph 8 of the new Ambrose Declaration in support of their contention that Wunderly will receive hands-on training once the PI is dissolved. But as with Robinson, Ambrose does not support this contention; he states only

that BFS security personnel "are available to answer employee questions … as the need arises." Ambrose Decl. II ¶ 8. Being available to answer questions when asked is not the same as providing hands-on training.

**Sandra Paylor Declaration (ECF No. 125) ("Paylor Decl.")** – Joseph Gioeli testified in his second declaration that hands-on trainings for individuals with access to BFS payment systems "are required for those assigned to particular 'roles' within particular payment systems." Gioeli Decl. (ECF No. 98-2) ¶ 14. Paylor asserts in her declaration that Wunderly is now "eligible to access CARS" on a view-only basis, but provides no information on the "role" within CARS that Wunderly has been assigned or whether additional hands-on training with an experienced CARS user under the typical requirements acknowledged by Gioeli would be needed. Paylor Decl. ¶ 6. Given the obviously insufficient training Marko Elez received and the Court's admonition to Defendants to certify that the Treasury DOGE Team members have been provided with all training typically required of individuals granted access to *BFS payment systems*, *see* Op. at 63 (emphasis added), Paylor's testimony provides no comfort that Wunderly is ready to access CARS without any hands-on training from an experienced CARS user.

**Janice Benjamin Declaration (ECF No. 124) ("Benjamin Decl.")** – Addressing the lack of sufficient day-to-day supervision of Wunderly, the States noted that Thomas Krause's period of employment was set to expire on March 24, 2025, without any indication from Defendants of whether his term will be extended. Pls. Opp. at 7 & n.4. Benjamin responds to this point, advising that Krause's appointment term has just been extended from March 24, 2025, to June 12, 2025. Benjamin Decl. ¶ 3. But that means Krause's term unlawfully extends beyond the 130-day *maximum* period authorized by statute for Special Government Employees during a single calendar year. *See* 18 U.S.C. § 202; Wenzler Aff. (ECF No. 31) ¶ 3 (testifying that Krause was sworn in on

5

Jan. 23, 2025, making an end date of June 12, 2025, a total of 140 days). This error is just more evidence of the slipshod and rushed nature of the Treasury DOGE Team's onboarding process.

\* \* \*

After filing 19 declarations that dribble out incomplete facts begging more questions—seven with their TRO/PI opposition, six with their Status Report, and six with their reply in further support of this motion (including multiple declarations from the same witness often to correct errors in their prior testimony)—Defendants still fail to address adequately the Court's concerns about the "chaotic and haphazard" process employed by Treasury officials to onboard the Treasury DOGE Team, Op. at 50, or why Wunderly and the other Treasury DOGE Team members need such broad and "*unlimited* access" to BFS systems and data, with the attendant risk of "exposing personal, confidential, sensitive, and private information that millions of Americans entrusted to their government," *American Fed'n*, 2025 WL 868953, at \*68-69. Instead, setting their sights on obtaining access to the BFS systems and data for Wunderly and the rest of the Treasury DOGE Team in order to begin implementing the Engagement Plan as quickly as possible, Defendants adamantly refuse to heed the Court's directive that they adopt "a measured, reasonable, and thoughtful" process. *Id*. at 52. On this record, the Court should deny Defendants' request to partially dissolve the PI in order to grant Wunderly immediate access to BFS systems and data.

## CONCLUSION

For the reasons set forth in the States' memorandum of law in opposition and this sur-reply, the States respectfully request that the Court deny Defendants' motion to partially dissolve the preliminary injunction.

Dated: March 21, 2025
      New York, NY

                                           Respectfully submitted,

**LETITIA JAMES**
   ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
   *Special Counsel*
Rabia Muqaddam
   *Special Counsel for Federal Initiatives*
Colleen K. Faherty
   *Special Trial Counsel*
Stephen Thompson
   *Assistant Attorney General.*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
   ATTORNEY GENERAL OF CALIFORNIA

By: */s/ Michael S. Cohen*
Michael S. Cohen
   *Deputy Attorney General*
Thomas S. Patterson
   *Senior Assistant Attorney General*
Mark R. Beckington
John D. Echeverria
   *Supervising Deputy Attorneys General*
Nicholas Green
Jay Russell
   *Deputy Attorneys General*
California Attorney General's Office
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 210-6090
Michael.Cohen@doj.ca.gov

*Counsel for the State of California*

**KRISTEN K. MAYES**
   ATTORNEY GENERAL OF ARIZONA

By: */s Joshua D. Bendor*
Joshua D. Bendor
Joshua A. Katz
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Joshua.Katz@azag.gov


*Counsel for the State of Arizona*

**PHIL WEISER**
   ATTORNEY GENERAL OF COLORADO

By: */s Shannon Stevenson*
Shannon Stevenson
   *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

| | |
|---|---|
| **WILLIAM TONG**<br>   ATTORNEY GENERAL OF CONNECTICUT<br><br>By: /s Matthew Fitzsimmons<br>Matthew Fitzsimmons<br>   *Chief Counsel*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5318<br>Matthew.fitzsimmons@ct.gov<br><br>*Counsel for the State of Connecticut* | **KATHLEEN JENNINGS**<br>   ATTORNEY GENERAL OF THE STATE OF DELAWARE<br><br>By: /s/ *Vanessa L. Kassab*<br>Vanessa L. Kassab<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br><br>*Counsel for the State of Delaware* |
| **ANNE E. LOPEZ**<br>   ATTORNEY GENERAL OF HAWAIʻI<br><br>By: /s *Kalikoʻonālani D. Fernandes*<br>David D. Day<br>   *Special Assistant to the Attorney General*<br>Kalikoʻonālani D. Fernandes*<br>   *Solicitor General*<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov<br><br>*Counsel for the State of Hawaiʻi* | **KWAME RAOUL**<br>   ATTORNEY GENERAL OF ILLINOIS<br><br>By: */s/ Darren Kinkead*<br>Darren Kinkead<br>   *Public Interest Counsel*<br>115 S. LaSalle St.<br>Chicago, Illinois 60603<br>(773) 590-6967<br>Darren.Kinkead@ilag.gov<br><br>*Counsel for the State of Illinois* |
| **AARON M. FREY**<br>   ATTORNEY GENERAL OF MAINE<br><br>By: /s/ *Jason Anton*<br>Jason Anton<br>*Assistant Attorney General*<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME  04333-0006<br>(207) 626-8800<br>jason.anton@maine.gov<br><br>*Counsel for the State of Maine* | **ANTHONY G. BROWN**<br>   ATTORNEY GENERAL OF MARYLAND<br><br>By: /s *Adam D. Kirschner*<br>Adam D. Kirschner<br>   *Senior Assistant Attorney General*<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>(410) 576-6424<br>akirschner@oag.state.md.us<br><br>*Counsel for the State of Maryland* |

**ANDREA JOY CAMPBELL**
  ATTORNEY GENERAL
  COMMONWEALTH OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz
  *State Solicitor*
One Ashburton Place
Boston, MA 02108
617-963-2427
david.kravitz@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**AARON D. FORD**
  ATTORNEY GENERAL OF NEVADA

By: /s/ Heidi Parry Stern
Heidi Parry Stern (Bar. No. 8873)
  *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**KEITH ELLISON**
  ATTORNEY GENERAL OF MINNESOTA

By: /s Liz Kramer
Liz Kramer
  *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**MATTHEW J. PLATKIN**
  ATTORNEY GENERAL OF NEW JERSEY

By: /s David Leit
David Leit
  *Assistant Attorney General*
(609) 414-4301
david.leit@law.njoag.gov

Kashif Chand
  *Chief, Deputy Attorney General*
(609) 696-5160
kashif.chand@law.njoag.gov

124 Halsey Street
Newark, NJ 07101


*Counsel for the State of New Jersey*

**JEFF JACKSON**
   ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
   CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel P. Mosteller
   *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

**PETER F. NERONHA**
   ATTORNEY GENERAL OF RHODE ISLAND

By: /s/ Alex Carnevale
Alex Carnevale
   *Special Assistant Attorney General*
Office of the Attorney General – State of Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

**JOSH KAUL**
   ATTORNEY GENERAL OF WISCONSIN

By: /s/ Brian P. Keenan
Brian P. Keenan
   State Bar #1056525
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
keenanbp@doj.state.wi.us

*Counsel for the State of Wisconsin*

**DAN RAYFIELD**
   ATTORNEY GENERAL OF OREGON

By: /s/ Elleanor H. Chin
Elleanor H. Chin
   *Senior Assistant Attorney General*
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

*Counsel for the State of Oregon*

**CHARITY R. CLARK**
   ATTORNEY GENERAL OF VERMONT

By: /s/ Jonathan Rose
Jonathan Rose
   *Solicitor General*
Appellate Unit
Office of the Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

\* - pro hac vice motion pending

## RULE 7.1 CERTIFICATION

By order entered on March 18, 2025 (ECF No. 130), the Court granted Plaintiffs' letter motion for leave to file a sur-reply concerning Defendants' Motion to Partially Dissolve the Preliminary Injunction (ECF No. 111) with a word count of no more than 2,500 words. I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing sur-reply contains 1,815 words, calculated using Microsoft Word, which complies with the Court's order.

Dated: New York, New York
       March 21, 2025

                                        LETITIA JAMES
                                        Attorney General of the State of New York

                                        By: /s Andrew Amer
                                        Andrew Amer
                                          Special Counsel
                                        28 Liberty Street
                                        New York, NY 10005
                                        (212) 416-6127
                                        andrew.amer@ag.ny.gov