UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF THE
TREASURY, *et al.*,

    *Defendants*.

Case No. 25 Civ. 01144 (JAV)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
     – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................1

LEGAL STANDARD......................................................................................................................3

DISCUSSION ..................................................................................................................................4

    The Court Should Dissolve the Preliminary Injunction in Its Entirety................................4

CONCLUSION...............................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*CREW v. USDS*,
 __ F. Supp. 3d __, 2025 WL 752367 (D.D.C. Mar. 10, 2025) .......................................... 12, 13

*Helmer v. Briody*,
 721 F. Supp. 498 (S.D.N.Y. 1989) ...................................................................................... 3

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*,
 427 F. Supp. 2d 491 (S.D.N.Y. 2006) ................................................................................. 3

*JLM Couture, Inc. v. Gutman*,
 No. 20 Civ. 10575 (LTS), 2021 WL 2227205 (S.D.N.Y. June 2, 2021) ................................. 3

*Railway Labor Executives' Ass'n v. Metro-North Commuter R. Co.*,
 759 F. Supp. 1019 (S.D.N.Y. 1990) .................................................................................. 4, 5

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
 423 F.3d 137 (2d Cir. 2005) ................................................................................................ 4

**Statutes**

5 U.S.C. § 3109 ................................................................................................................... 5, 6

18 U.S.C. § 202 ......................................................................................................................... 6

31 U.S.C. § 332(1) .................................................................................................................... 6

**Regulations**

5 C.F.R. § 231.3302 .................................................................................................................. 6

**Other Authorities**

Exec. Order 14,158 §§ 1, 3(a)-(c) ............................................................................................ 13

**PRELIMINARY STATEMENT**

Defendants Donald J. Trump, the United States Department of the Treasury, and Scott Bessent, in his official capacity as Secretary of the Treasury, by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dissolve the preliminary injunction in effect in this case, in its entirety. Defendants have provided the information called for by the Court's February 21, 2025 Opinion and Order, and documented that they have used appropriate and reasoned processes for hiring, reporting, training, vetting, and mitigation with respect to all of the members of the Treasury DOGE Team. Based on this evidence, the Court should expeditiously dissolve the preliminary injunction in its entirety.

**BACKGROUND**

Defendants assume the Court's familiarity with the background of this matter as laid out in their prior Motion to Partially Dissolve the Preliminary Injunction as to Ryan Wunderly ("Wunderly"), ECF Nos. 111-12, 120-26 ("Wunderly Motion"), and in the report filed in anticipation of the Wunderly Motion, ECF No. 98 ("Wunderly Report"). In those filings (and accompanying agency declarations), Defendants provided, as to Wunderly, all the categories of information detailed in the Court's February 21, 2025 Opinion and Order issuing a preliminary injunction, ECF No. 76 ("PI Order"). *See* PI Order at 63-64.

On April 11, 2025, the Court entered an Opinion and Order granting the Wunderly Motion and "modif[ying] the PI Order to permit Defendants to grant Ryan Wunderly access to Treasury Department payment records, payment systems and any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees," subject to two additional requirements. ECF No. 139

("Wunderly Order") at 30.¹  The Court required Wunderly to "first complete[s] any hands-on training in such systems that is typically required of other Treasury employees granted commensurate access," and second, to "submit[s] his OGE 278 Financial Disclosure Report." *Id.*

In granting the Wunderly Motion, the Court found that "[t]he Government's extensive submissions, set forth in 12 declarations spanning 54 pages, largely alleviate[d]" the Court's concerns in the PI Order regarding the appointment, onboarding, training, and vetting of the Treasury DOGE Team.  *Id.* at 19.  With the exception of hands-on training in various Bureau of the Fiscal Service ("BFS") payment systems—which Wunderly could not undergo until the Court granted the Wunderly Motion—Defendant's declarations established that he had "been required to complete all training required by other Treasury employees granted access to BFS systems."  *Id.* at 20.  As to vetting, the Court agreed with Defendants that "Wunderly has undergone the same vetting and security clearance process that applies to any other Treasury Department employee provided with access to BFS payment systems." *Id.* at 22.  (The Court rejected Plaintiffs' contention that Treasury DOGE Team members should be subjected to "a different and *sui generis* process for vetting DOGE Team members than [that used] for other employees granted access to the BFS payment systems." *Id.* at 24.)  With respect to the authority pursuant to which Wunderly was hired, the Court noted that Plaintiffs did not challenge the legality of Wunderly's temporary transitional Schedule C ("Schedule C") appointment, and disagreed that Defendants were obligated to provide "more granular information regarding Wunderly's contemplated day-to-day activities."  *Id.* at 25.

---

¹ The Wunderly Order also denied Plaintiffs' motion to reconsider the portions of the PI Order that held that Plaintiffs were unlikely to succeed on their Privacy Act and E-Government Act claims. Wunderly Order at 9-18.

2

On the issue of reporting lines for the Treasury DOGE Team, while the Court expressed the view that there were some open questions regarding the "lines of authority between DOGE Team Members and [the United States DOGE Service ("USDS")]," *id.* at 27, the Court opined that those questions were "of less applicability to Wunderly." *Id.* at 26. Moreover, the Court distinguished that issue from mitigation, finding that the mitigation measures described by Defendants, "if properly implemented, coupled with the training and vetting procedures set forth in the Government's submissions, are adequate to satisfy [the Court's] concerns." *Id.* at 28.

In granting the Wunderly Motion and rejecting Plaintiffs' requests to impose more onerous requirements on Defendants, the Court invoked the fundamentally limited nature of judicial review under the Administrative Procedure Act ("APA") and opined that "[t]he APA is not an invitation for the Court to micromanage the minutiae of the Treasury Department's day-to-day operations in the manner suggested by Plaintiffs." *Id.* at 19.

## LEGAL STANDARD

As discussed in the Wunderly Motion, district courts have "continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified." *Helmer v. Briody*, 721 F. Supp. 498, 505 (S.D.N.Y. 1989); *see also JLM Couture, Inc. v. Gutman,* No. 20 Civ. 10575 (LTS), 2021 WL 2227205, at *2 (S.D.N.Y. June 2, 2021) (same); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration."); *Railway Labor Executives' Ass'n v. Metro-North Commuter R. Co.*, 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) (same). A district court's decision whether to modify a preliminary injunction "involves an exercise of the same discretion that a court employs in an initial decision to grant or

3

deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005); *see also* Wunderly Order at 18. In this case, even while entering the PI, the Court "invited the Government to promptly move to modify or terminate the preliminary injunction once Defendants had an opportunity to address and remediate the procedural concerns identified by the Court." Wunderly Order at 18. As discussed in Defendants' declarations submitted herewith and in connection with the Wunderly Report and Motion, Defendants have now fully addressed those concerns with respect to all Treasury DOGE Team members.

## DISCUSSION

### The Court Should Dissolve the Preliminary Injunction in Its Entirety

The Court should dissolve the preliminary injunction as to all of the Treasury DOGE Team members based on all of the evidence provided by Defendants since the entry of the PI, including the declarations submitted herewith. Defendants have provided the information called for by the PI Order, and have shown that the Treasury processes governing the DOGE Team members' hiring, reporting chains, training, vetting and security clearance, and anticipated access to Treasury systems, were not arbitrary or capricious. Thus, the Court should dissolve the PI in its entirety and lift its restrictions.

**Treasury DOGE Team Members.** The members of the Treasury DOGE Team are Thomas Krause, Linda Whitridge, Ryan Wunderly, Samuel Corcos, and Todd Newnam. *See* Declaration of Daniel Katz dated April 24, 2025 ("April Katz Decl.") ¶ 3. At the time the Wunderly Report was filed, Gavin Kliger was also a member of the Treasury DOGE Team, and was detailed from the Office of Personnel Management ("OPM") to the Internal Revenue Service ("IRS"). *Id.* ¶ 2; Wunderly Report at 3, 9-10. Mr. Kliger's detail agreement has been terminated and he is no longer a Treasury DOGE Team member. April Katz Decl. ¶ 3.

4

As discussed in previous submissions, Mr. Krause is the Treasury DOGE Team Lead as it relates to BFS payment systems, and also performs the duties of the Fiscal Assistant Secretary. *Id.* ¶ 4 & n.1; Wunderly Report at 9-10 & n.5. Mr. Krause is responsible for working closely with the Treasury Chief of Staff, the Under Secretary for Domestic Finance, and the Office of Fiscal Assistant Secretary and Fiscal Service to lead the development, execution, and management of the information technology and technological modernization efforts and programs for Treasury and the internal management of Treasury and its bureaus as it relates to technology. Declaration of Michael J. Wenzler dated April 22, 2025 ("April Wenzler Decl.") ¶ 9. Mr. Newnam is a Special Advisor in the Office of the Chief of Staff and is the Treasury DOGE Team Lead with respect to all other Treasury and IRS DOGE matters. April Wenzler Decl. ¶ 15; April Katz Decl. ¶ 4. Ms. Whitridge is also a Special Advisor in the Office of the Chief of Staff. April Wenzler Decl. ¶ 12. Mr. Corcos is a Consultant for Treasury (Departmental Offices, Office of the Chief of Staff) with the title of Senior Advisor for Technology and Modernization. *Id.* ¶ 14.

**Hiring Authorities.** Each of the Treasury DOGE Team members was hired pursuant to an established legal authority that has been discussed in prior submissions, and that is described again in the April Wenzler Declaration. *See* April Wenzler Decl. ¶¶ 7-16.

As discussed in prior submissions, Mr. Krause was appointed on January 23, 2025, under 5 U.S.C. § 3109 as a consultant for Treasury (Departmental Offices, Office of the Chief of Staff) with the title of Senior Advisor for Technology and Modernization. *Id.* ¶ 7. A consultant may be appointed to Treasury under 31 U.S.C. § 332(1). *Id.* ¶ 4. Mr. Krause is a Special Government Employee ("SGE") pursuant to 18 U.S.C. § 202. *Id.* ¶¶ 3, 7. Effective February 13, 2025, Mr. Krause was appointed to a Schedule C position and was no longer employed as a consultant

5

under Section 3109. *Id.* ¶ 9. Schedule C positions are appointments that may be made for a period not to exceed 120 days with one extension of an additional 120 days. *Id.* ¶ 2; *see* 5 C.F.R. § 231.3302. As a Schedule C employee, Mr. Krause retains his ethics designation as an SGE and receives compensation. April Wenzler Decl. ¶ 9. Ms. Whitridge was appointed on February 25, 2025, as a Schedule C employee and is not currently designated as an SGE. *Id.* ¶ 13. Mr. Corcos was appointed on February 28, 2025, as a Section 3109 consultant and is also an SGE. *Id.* ¶ 14. Mr. Newnam was appointed on March 6, 2025, as a Schedule C employee. *Id.* ¶ 15.

**Vetting and Clearance.** In the Wunderly Order, the Court found that "[t]he Government's extensive declarations make clear that Wunderly has undergone the same vetting and security clearance process that applies to any other Treasury Department employee provided with access to BFS payment systems." Wunderly Order at 22. As Defendants' submissions demonstrate, the same is true with respect to the other Treasury DOGE Team members.

These vetting and security processes are described primarily in the Declaration of Kari Mencl, Chief of Personnel Security in the Office of Security Programs (OSP) in the Office of Intelligence and Analysis (OIA) for Treasury, dated April 22, 2025 ("April Mencl Decl."). Ms. Mencl has been involved in overseeing the proper vetting of Treasury DOGE Team members, by ensuring that those individuals undergo appropriate background investigations and that the results of those investigations are adjudicated in accordance with the national adjudicative guidelines. *Id.* ¶ 3. As Ms. Mencl reiterates in her April declaration, at Treasury, all career federal employees and political appointees, regardless of the level of the position, undergo the same overall vetting process, including a background investigation and an adjudication in accordance with national standards and guidelines. *Id.* ¶ 4 (detailing the steps in the vetting process). Echoing the explanation set forth in her prior declaration, *see* ECF No. 98-4 ¶ 11, Ms.

Mencl attests that OSP conducted the national security vetting process for Mr. Krause, Mr. Corcos, Ms. Whitridge, and Mr. Newnam "in the same manner used for career employees seeking access to classified Treasury information." *Id.* ¶ 5. This OSP-coordinated process is also the same with respect to all individuals who will conduct work on BFS systems. *See* Declaration of Joseph Gioeli III dated March 4, 2025 (ECF No. 98-2), ¶ 3.

OSP conducted the national security clearance vetting process for Mr. Krause as a Treasury political appointee. April Mencl Decl. ¶ 6. After receiving Mr. Krause's new hire package on January 17, 2025, on January 21, 2025, the National Vetting Database checks of Mr. Krause were completed. *Id.* It was determined that no background investigation was required because a qualifying background check had already been completed by OPM. *Id.* On January 22, 2025, BFS contacted OSP to verify Mr. Krause's level of security clearance, which is Top-Secret with Sensitive Compartmented Information ("SCI") access. On February 24, 2025, Mr. Krause was cleared for onboarding. *Id.* On January 22, 2025, OSP's Personnel Security Branch ("PSB") recorded Mr. Krause's adjudicative determination into the Defense Information System for Security ("DISS"), a national vetting database. *Id.* ¶¶ 4(i), 6.

OSP conducted the security vetting process for Mr. Corcos as a Treasury political appointee. *Id.* ¶ 7. On February 20, 2025, OSP received Mr. Corcos's new hire package. *Id.* Several more vetting steps, culminating in PSB's notification to the Office of Human Resource ("OHR") and Mr. Corcos's hiring manager that he was approved to enter on duty, were completed on February 25, 2025. *Id.* ¶¶ 4(b)-(g), 7. On March 5, 2025, Mr. Corcos completed his security briefing and signed the required non-disclosure agreements and was granted interim Secret access. *Id.* As of April 22, 2025, Mr. Corcos's background check was still pending final completion and adjudication. *Id.*

7

OSP conducted the vetting process for Ms. Whitridge as a Treasury political appointee. *Id.* ¶ 8. On February 21, 2025, OSP received Ms. Whitridge's new hire package, and several more vetting steps were taken over the following weeks. *Id.* On March 31, 2025, Ms. Whitridge's background investigation was favorably adjudicated by OSP. *Id.* On April 2, 2025, PSB granted Ms. Whitridge a Top-Secret clearance with SCI access after completion of her security briefings and signing of the non-disclosure agreements. *Id.*

OSP conducted the vetting process for Mr. Newnam as a Treasury political appointee. *Id.* ¶ 9. On February 25, 2025, OSP received Mr. Newnam's new hire package. *Id.* After a number of vetting steps were completed, Mr. Newnam was granted an interim Secret security clearance on March 10, 2025. *Id.* On March 24, 2025, Mr. Newnam's background investigation was favorably adjudicated by OSP. *Id.* On March 26, 2025, PSB granted Mr. Newnam a Top-Secret clearance with SCI access after completion of his security briefings and signing of the non-disclosure agreements. *Id.*

In sum, the Treasury DOGE Team members have all been vetted and granted clearances "[i]n accordance with the procedures that [Treasury] follows for all employees." Wunderly Order at 24.

**Training.** As with Mr. Wunderly, the remaining Treasury DOGE Team members have all been "required to complete all training required by other Treasury employees granted access to BFS systems." Wunderly Order at 20. The April Wenzler Declaration details again the trainings that "[a]ll newly appointed employees of Treasury are required to complete . . . (collectively, New Employee Trainings)," April Wenzler Decl. ¶ 17, and confirms that Mr. Krause, Ms. Whitridge, Mr. Newnam, and Mr. Corcos have completed all of them. *Id.* ¶¶ 19-21. Furthermore, all of those Team members completed two required BFS trainings: 2025

Safeguarding Federal Tax Information and the BFS Rules of Behavior. *Id.* David Ambrose, BFS's Chief Security Officer/Chief Privacy Officer/Acting Chief Information Security Officer, further explains that these trainings are provided to users seeking access to BFS systems and equipment. *See* Declaration of David Ambrose, dated April 23, 2025 ("April Ambrose Decl."). In addition to the trainings, Mr. Ambrose provided a briefing on BFS's cybersecurity and Personally Identifiable Information (PII) practices and precautions, which is grounded in the Federal Information Security Modernization Act, to each DOGE Team member. *Id.* ¶¶ 3, 5. This additional briefing addresses the Privacy Act of 1974 and IRS Special Publication 1075, which discuss the requirements for maintaining and safeguarding the confidentiality of tax returns and information and the prospective user's responsibility for safeguarding Controlled Unclassified Information. *Id.* ¶ 3. Furthermore, as alluded to above, each of these Treasury DOGE Team members received and acknowledged the BFS Rules of Behavior. *Id.* ¶ 6; April Wenzler Decl. ¶¶ 19-21.

Defendants have attested that all future Treasury DOGE Team members, regardless of the hiring authority used to appoint them, will be required to take all of these trainings. *See* Wunderly Motion at 9 n.5; ECF No. 98-1 ¶ 8; ECF No. 98-2 ¶ 19; ECF No. 98-3 ¶ 23. Furthermore, to the extent any Treasury DOGE Team member requests access that would require specific payment system trainings, he or she will be required to complete those trainings. *See* ECF No. 98-2 ¶¶ 14, 19; Wunderly Order at 30 (requiring Wunderly to "complete[] any hands-on training in such systems that is typically required of other Treasury employees granted commensurate access"). Accordingly, the record is clear that Defendants have implemented an appropriate training process with respect to current and future Treasury DOGE Team members.

9

The same is true of ethics training. Mark Vetter, Deputy Assistant General Counsel (Ethics) at Treasury, has explained the employee ethics training and disclosure requirements for all new Treasury employees. *See* Declaration of Mark Vetter, dated April 22, 2025 ("April Vetter Decl."), ¶¶ 3-4. With respect to disclosure, the Office of Government Ethics (OGE) Public Financial Disclosure Form 278 (OGE 278) must be filled out by certain Treasury employees. *Id.* ¶ 4. Mr. Vetter has "been involved in ensuring that [the Treasury DOGE Team members] have completed the Ethics Training and, as required, filed an OGE 278." *Id.* ¶ 5. Mr. Vetter confirms that Mr. Krause completed his Ethics Training on February 20, 2025, and filed an OGE 278 on March 24, 2025. *Id.* ¶¶ 6-7. Mr. Krause's OGE 278 is currently under review. *Id.* ¶ 7. Mr. Corcos completed the Ethics Training on April 2, 2025, and filed an OGE 278 on February 25, 2025, even though he was not required to do so at the time. *Id.* ¶¶ 9-10. Mr. Vetter certified Mr. Corcos's OGE 278 on February 27, 2025. *Id.* ¶ 10. Ms. Whitridge completed the Ethics Training on March 11, 2025, and filed her OGE 278 on March 24, 2025; it is currently under review. *Id.* ¶¶ 12-13. Mr. Newnam completed the Ethics Training on March 16, 2025, and filed his OGE 278 on April 2, 2025. *Id.* ¶¶ 15-16. Mr. Newnam's OGE 278 is likewise under review. *Id.* ¶ 16. Mr. Krause, Mr. Corcos, Ms. Whitridge, and Mr. Newnam have thus complied with all Treasury ethics training and filing requirements.[2] *Id.* ¶¶ 8, 11, 14, 17.

**Mitigation.** Defendants have described the mitigation procedures put in place to minimize risk when former Treasury employee Marko Elez was given limited access to certain BFS systems. *See* ECF No. 34 ¶¶ 11-17. Defendants also represented that "[i]f/when any [other] Treasury DOGE Team Members gain such access, the Bureau will implement the same

---

[2] In the Wunderly Order, the Court rejected the assertion that Mr. Wunderly should not be permitted to access BFS systems until his OGE 278 had been actually adjudicated by the agency. Wunderly Order at 21-22.

mitigation procedures . . as well as any other appropriate mitigation procedures." ECF No. 98-2 ¶ 19. As noted above, the Court found that those "described mitigation procedures, if properly implemented, coupled with the training and vetting procedures set forth in the Government's submissions, are adequate to satisfy its concerns." Wunderly Order at 28.

**Reporting Lines.** The agency has again explained the reporting chains that govern the relationship between the Treasury DOGE Team, USDS, and Treasury leadership, principally through the declarations of Daniel Katz, who is Chief of Staff of the Department of the Treasury. *See, e.g.*, April Katz Decl. ¶ 1. Mr. Katz is the primary aide to the Secretary responsible for exercising supervision over the Deputy Chiefs of Staff, Executive Secretary, Director of Scheduling, and other officials and offices within the Office of the Chief of Staff. *Id.* Mr. Katz is also the primary official responsible for assisting the Secretary in overseeing the work of the Treasury DOGE Team. *Id*.

As Mr. Katz explains, all of the members of the Treasury DOGE Team are Treasury employees. *Id.* ¶ 5. Although the members of the Team collaborate closely with staff at USDS consistent with direction from Secretary Bessent and Mr. Katz, they do not report to anyone outside of Treasury. *Id.* ¶ 4. Mr. Krause and Mr. Newnam report directly to Mr. Katz within the Office of the Chief of Staff. *Id.* ¶ 5; *see also* April Wenzler Decl. ¶ 16 (as to Mr. Newnam). (With respect to Mr. Krause's performance of the duties of the Fiscal Assistant Secretary, he continues to report directly to the Secretary. April Katz Decl. ¶ 5 n.1.) Ms. Whitridge reports directly to Mr. Krause, and Mr. Corcos reports directly to Mr. Newnam. *Id.* ¶ 5.

In the Wunderly Order, the Court expressed its view of the salience of these reporting lines by opining that "[w]hether members of the Treasury DOGE Team can properly be considered employees of the Treasury Department bears on whether they have the legal authority

11

to access PII contained in BFS payment systems." Wunderly Order at 26. In their submissions supporting the Wunderly Motion and the present motion to dissolve the PI, Defendants have proffered unrebutted evidence that all of the members of the Treasury DOGE Team are, in fact, Treasury employees who do not report to anyone outside of Treasury, were properly hired under specified legal authorities, and have been subjected to the standard Treasury policies and protocols regarding vetting and training required of any Treasury employee to access BFS payment systems. In opposing the Wunderly Motion, Plaintiffs pointed to the March 10, 2025 district court decision in *CREW v. USDS*, __ F. Supp. 3d __, 2025 WL 752367 (D.D.C. Mar. 10, 2025), a case arising under the Freedom of Information Act ("FOIA"), in which the district court held that CREW would likely succeed in demonstrating that USDS is an agency subject to FOIA. *See id.* at *10; *see* Wunderly Order at 26-27 (referring to the *CREW* case). But that decision does not call into question the status of the Treasury DOGE Team members as agency employees.

First, the district court in that case has not resolved the question of USDS's status under FOIA, but rather drew a "preliminary conclusion," based substantially on "media reports," that the plaintiff had shown a likelihood of success on the question of USDS's agency status sufficient to warrant preliminary injunctive relief pending adjudication of that question. *Id.* at *10-12. More importantly, even if the district court in *CREW* were to hold that USDS itself is an agency subject to FOIA, that would not undermine the agency employee status of the Treasury DOGE Team members. USDS is an entity separate from the agency DOGE teams, as the Executive Order laying out the "DOGE Structure" makes clear. *See* Exec. Order 14,158, §§ 1, 3(a)-(c). In sum, Plaintiffs have not identified any feature of the Treasury DOGE Team structure that would justify continuing to deny the DOGE Team members the same access to BFS

12

payment systems that every other comparably vetted, cleared, and trained Treasury employee and contractor enjoys.

## CONCLUSION

Defendants have demonstrated that they have adequately redressed the APA concerns identified by the Court in the PI Order. Accordingly, Defendants respectfully request that the Court grant their motion to dissolve the PI in its entirety.

Dated: May 1, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOHN R. GRIFFITHS
Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: */s/ Rebecca S. Tinio*
JEFFREY OESTERICHER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2695/2774
Email: jeffrey.oestericher@usdoj.gov
         rebecca.tinio@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3860 words.