UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| State of New York, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. Department of the Treasury, *et. al.* <br><br> *Defendants*. | Case No. 1:25-cv-1144-JAV |

    I, Kari Mencl, declare under penalty of perjury:

1. I currently serve as the Chief of Personnel Security in the Office of Security Programs (OSP) in the Office of Intelligence and Analysis (OIA) for the U.S. Department of the Treasury (Treasury), and have been employed in this role since November 2020. I report to the Executive Director for OSP. I am a career civil servant. Prior to my current role, I served as a Special Security Officer with OSP. I have been employed at Treasury since September 2019.

2. In my current role, I oversee, among other things, Treasury's background vetting programs as they relate to potential new employees and contractors. I manage OSP's Personnel Security Program, which includes vetting for security clearances and vetting to determine the suitability and fitness of applicants seeking to become a Treasury employee or a Treasury contractor.

3. I have extensive knowledge of Treasury's vetting processes, including granting security clearances. I have been involved in ensuring the proper vetting of individuals of the Department of Government Efficiency (DOGE) team established at Treasury (the Treasury

DOGE Team), by ensuring DOGE Team members undergo appropriate background investigations and that the results of those background investigations are adjudicated in accordance with the national adjudicative guidelines.

**Vetting: Overall Process**

4. At Treasury, all career federal employees and political appointees, regardless of the level of the position (*e.g.*, public trust, national security sensitive, secret/top secret clearance), undergo the same overall vetting process, which includes a background investigation and an adjudication in accordance with national standards and guidelines. The steps are as follows:

   a. Step 1: A new hire package, signed by the applicant, is sent to OSP's Personnel Security Branch (PSB). This new hire package contains a Position Description (OF-8), Declaration for Federal Employment (OF 306), applicant's resume, and other miscellaneous documents.

   b. Step 2: PSB checks the Office of Personnel Management (OPM), Department of Defense (DOD), and Intelligence Community databases (collectively, National Vetting Databases) for the applicant's current investigation/clearance/access investigation information. Based on a review of these documents and in accordance with Security Executive Agent Directive 7, *Reciprocity of Background Investigations and National Security Adjudications* (November 9, 2018), PSB determines whether a background check is required.[1]

   c. Step 3: If a background investigation is required, PSB sends an e-Application[2] (e-App) to the applicant. If the applicant is a political appointee and there are timing

---

[1] If a background investigation is not required, then Steps 3-6 are omitted.
[2] An e-Application is an application for applicants to enter information required to initiate personnel background investigations.

constraints, fingerprints and a picture for the Personal Identity Verification (PIV) card may be completed at the same time the e-App is sent to the applicant. If the applicant is a career employee, then fingerprints are completed prior to issuing the e-App.

d. Step 4: PSB reviews the completed e-App and fingerprint results from the Federal Bureau of Investigations for any issues or concerns outlined in 5 C.F.R. § 731 (for suitability and fitness) and Security Executive Agent Directive 4, *National Security Adjudicative Guidelines* (June 8, 2017) (for security clearances).

e. Step 5: If there are any issues or concerns, PSB adjudicates and/or resolves known issues prior to submitting the application to OPM. If the issues can be mitigated, then for individuals whose positions require either a Secret or Top-Secret clearance, PSB will grant an interim Secret-level clearance, as described further above, while the background investigation is completed.

f. Step 6: PSB releases the completed e-App into the Defense Counterintelligence Security Agency (DCSA) system to initiate a background investigation.

g. Step 7: PSB notifies the Office of Human Resource (OHR) and the applicant's hiring manager that the applicant is approved to enter on duty.

h. Step 8: Once the background investigation is completed and returned by DCSA, PSB adjudicates the background investigation.

i. Step 9: PSB grants clearance and records the adjudicative determination in the Defense Information System for Security (DISS), a national vetting database.

j. Step 10: If access to Sensitive Compartment Information (SCI) is required, the Chief of Personnel Security or a designee in OSP with SCI adjudication authority reviews every personnel security case requiring SCI prior to approval being given for access.

**Vetting of the Treasury DOGE Team:**

5. As stated in my prior declaration (ECF No. 98-4 ¶ 10), OSP conducted the national security clearance vetting process for Tom Krause (Krause), Samuel Corcos (Corcos), Linda Whitridge (Whitridge), and Todd Newnam (Newnam), members of the Treasury DOGE Team, in the same manner used for career employees seeking access to classified Treasury information.

**Vetting of the Treasury DOGE Team:**

6. OSP conducted the national security clearance vetting process for Krause as a Treasury political appointee. On January 17, 2025, OSP received Krause's new hire package. On January 21, 2025, the National Vetting Database checks of Krause were completed. It was determined that no background investigation was required because a qualifying background check had already been completed by OPM. On January 22, 2025, the Bureau of Fiscal Service (BFS) contacted OSP to verify Krause's level of security clearance, which is Top-Secret with SCI access. On February 24, 2025, Krause was cleared for onboarding. On January 22, 2025, PBS entered Krause's adjudicative determination into DISS.

7. OSP initially conducted the security vetting process for Corcos as a Treasury political appointee. On February 20, 2025, OSP received Corcos' new hire package. Steps 2 through 7 detailed above were completed on February 25, 2025. To expedite the security clearance process due to timing constraints, Corcos' fingerprints and picture for the PIV card were completed at the same time as the e-App. Based on a review of Corcos' fingerprints and Standard Form 86, there were no indications of non-suitability. On March 5, 2025, Corcos completed his security briefing and signed the required non-disclosure agreements and was

4

granted interim Secret access. Corcos' background check is still pending final completion and adjudication.

8. OSP conducted the security vetting process for Whitridge as a Treasury political appointee. On February 21, 2025, OSP received Whitridge's new hire package. Steps 2 through 7 detailed above were completed on February 24, 2025. In order to expedite the security clearance process due to timing constraints, Whitridge's fingerprints and picture for the PIV card were completed at the same time as the e-App. Based on a review of Whitridge's fingerprints and Standard Form 86, there were no indications of non-suitability, such as criminal conduct, misconduct, or failure to maintain financial responsibilities. On March 31, 2025, Whitridge's Tier 5 background investigation was favorably adjudicated by OSP. On April 2, 2025, PSB granted Whitridge a Top-Secret clearance with SCI access after completion of her security briefings and signing of the non-disclosure agreements.

9. OSP conducted the security vetting process for Newnam as a Treasury political appointee. On February 25, 2025, OSP received Newnam's new hire package. Steps 2 through 7 detailed above were completed on March 5, 2025. In order to expedite the security clearance process due to timing constraints, Newnam's fingerprints and picture for the PIV card were completed at the same time as the e-App. Based on a review of Newnam's fingerprints and Standard Form 86, there were no indications of non-suitability, such as criminal conduct, misconduct, or failure to maintain financial responsibilities, and he was granted an interim Secret security clearance on March 10, 2025. On March 24, 2025, Newnam's Tier 5 background investigation was favorably adjudicated by OSP. On March 26, 2025, PSB granted Newnam a Top-Secret clearance with SCI access after completion of his security briefings and signing of the non-disclosure agreements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 22, 2025_____   Signed:_ /s/ Kari Mencl

Kari Mencl

Chief of Personnel Security

Office of Security Programs

United States Department of the Treasury