UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>      Defendants. | C.A. No. 1:25-cv-1144 (JAV) |

**PLAINTIFF STATES' MEMORANDUM OF LAW IN PARTIAL
OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE
THE PRELIMINARY INJUNCTION IN ITS ENTIRETY**

**INTRODUCTION**

In its Opinion and Order granting Plaintiffs' motion for a preliminary injunction, ECF No. 76 ("PI Order"), the Court raised specific concerns relating to: (i) Defendants' vetting of the Treasury DOGE Team members, *id*. at 50; (ii) team member supervision and confusion over reporting lines "call[ing] into question their authority to access Treasury record systems," *id*. at 50-51; (iii) inadequate "training regarding the handling of sensitive government information," *id*. at 51; (iv) "mitigation measures" leading to "troubling" consequences, *id*.; and (v) the "inexplicable urgency" "speak[ing] to the hurried nature" of the process by which team members were granted access to Treasury's systems, *id*. at 50-51. Based on these concerns, the Court restrained Defendants from granting access to Treasury's sensitive and confidential systems and data to "any employee, officer or contractor employed or affiliated with the United States DOGE

Service, DOGE, or the DOGE Team" established at Treasury absent further order of the Court, and specified the showing Defendants would be required to make as to each DOGE Treasury Team member for the Court to lift this restriction. *Id*. at 63.

After Defendants submitted multiple declarations and a report to obtain access for the DOGE Treasury Team engineer, Ryan Wunderly, the Court held in a subsequent decision that Defendants had "largely alleviate[d]" the Court's concerns surrounding the access by DOGE Treasury Team members. April 11, 2025 Opinion and Order (ECF No. 139) ("April 11 Op.") at 19. Accordingly, the Court modified the PI Order to permit Defendants to grant Wunderly access to Treasury's data and systems on the condition that he first complete any hands-on training typically required of other Treasury employees granted commensurate access and submits his OGE 278 Financial Disclosure Report, *id*. at 30.

Defendants now want four additional DOGE Treasury Team members to have access to Treasury's data and systems: Thomas Krause, Linda Whitridge, Samuel Corcos, and Todd Newman. *See* Defendants' Memorandum of Law in Support of Motion to Dissolve the Preliminary Injunction (ECF No. 142) ("Defs. MOL") at 4. And, as before, Defendants submit declarations from individuals—many of the same Treasury employees who supported Defendants' application for Wunderly—who similarly attest to the same facts as before about vetting, training, supervision, lines of reporting, and mitigation. *See* Declarations of Daniel Katz (ECF No. 143, "Katz Decl."), Michael J. Wenzler (ECF No. 144, "Wenzler Decl."), Kari Mencl (ECF No. 145, "Mecnl Decl."), and David Ambrose (ECF No. 146, "Ambrose Decl.") (collectively the "May 1 Declarations").[1] But notably, Defendants seek *more* than just an order permitting them to grant Treasury system

---

[1] At 12:53pm today, Defendants filed three supplemental declarations, which were sworn to yesterday and Monday and disclose a change in the employment status of Samuel Corcos that occurred 12 days ago, on May 2. *See* ECF Nos. 150-1, 150-2, 150-3 (the "May 14 Declarations").

2

and data access to these four additional DOGE Treasury Team members; they ask that the Court "dissolve the PI *in its entirety* and lift its restrictions," Defs. MOL at 4 (emphasis added), despite the ongoing nature of this litigation in which Plaintiffs' claims remain at issue.

Based on the Court's prior determination that the declarations submitted by Defendants to partially dissolve the PI Order as to Wunderly sufficiently addressed the Court's concerns about access by DOGE Treasury Team members, Plaintiffs have no reason to believe the Court will not reach the same determination based on the May 1 Declarations and May 14 Declarations and therefore do not oppose the entry of an order modifying the PI Order to permit Defendants to grant Treasury systems and data access to Krause, Whitridge, Corcos, and Newman subject to the same conditions imposed for Wunderly, plus for Corcos that his "still pending" background check be satisfactorily adjudicated. Mencl Decl. ¶ 7.[2] But the Court's prior determination as to Wunderly was not a decision on the merits of Plaintiffs' claims, and therefore Plaintiffs strenuously oppose Defendants' request to dissolve the PI Order in its entirety, which would lift all restrictions in place that presently prevent Defendants from granting Treasury system and data access to any DOGE employee added to the DOGE Treasury Team in the future without further order of the Court. There is no reason to allow future DOGE employees to have free, unchecked reign over Treasury's systems and data, and every reason—including DOGE's decision to rehire the DOGE Treasury Team's former engineer Marco Elez[3]—to keep the current restrictions in place. Defendants' promise to voluntarily comply prospectively with the vetting, training, hiring authority, and

---

[2] The May 14 Declarations do not provide any further update on the status of Corcos's background check.

[3] *See* Fields, *DOGE staffer who resigned over past social media posts reinstated with higher access: Filing*, The Hill, April 1, 2025, available at <u>DOGE staffer Marko Elez who resigned over past social media posts reinstated with higher access: Filing</u>.

supervision criteria enumerated by the Court is no substitute for keeping in place the current preliminary injunction that will require Defendants to make a specific showing of compliance for any new individuals added to the DOGE Treasury Team during the pendency of this action. Nor can Defendants claim that having to make such a showing will give rise to any prejudice or harm. The PI Order should remain in place.

## ARGUMENT

### I. THE COURT SHOULD RETAIN THE EXISTING ACCESS RESTRICTION FOR FUTURE DOGE TREASURY TEAM MEMBERS

The power to modify or dissolve injunctions springs from a court's authority "to relieve inequities that arise after the original order." *Credit Suisse First Bos. Corp. v. Grunwald,* 400 F.3d 1119, 1124 (9th Cir.2005) (cited in *Gooch v. Life Invs. Ins. Co. of Am.,* 672 F.3d 402, 414 (6th Cir. 2012)). Where "significant changes in the law or circumstances" threaten to convert a previously proper injunction "into an 'instrument of wrong,'" the law recognizes that judicial intervention may be necessary to prevent inequities. *Salazar v. Buono,* 559 U.S. 700, 714-15 (2010) (plurality opinion) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (2d ed. 1996)).

For preliminary injunctions, the decision whether to modify or dissolve the order "involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction," *Weight Watchers Int'l, Inc. v. Luigino's, Inc.,* 423 F.3d 137, 141 (2d Cir. 2005), and that "discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction," *Sierra Club v. U.S. Army Corps of Eng'rs,* 732 F.2d 253, 257 (2d Cir.1984) (citing *Chrysler Corp. v. United States,* 316 U.S. 556, 562 (1942)). The party seeking to modify the injunction bears the burden of showing "'continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties.'" *See Int'l Equity*

4

*Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (quoting *Am. Optical Co. v. Rayex Corp.*, 291 F. Supp. 502, 510 (S.D.N.Y. 1967)) (cleaned up). The Court must "look to see whether or not the *status quo* is maintained by" dissolving the preliminary injunction. *Sierra Club*, 732 F.2d at 257.

Here, dissolving the PI Order in its entirety will *not* maintain the status quo because it will permit Defendants to add new members to the DOGE Treasury Team and grant them unfettered access without any showing that such new members have met the hiring authority, supervision, training, and vetting criteria the Court has determined are prerequisites to granting them Treasury systems and data access. The May 1 Declarations address the hiring authority, supervision, training, and vetting for only Krause, Whitridge, Corcos, and Newman; they make no representations about other current DOGE employees or possible future DOGE employees who may at some later date be added to the DOGE Treasury Team.

More specifically, Kari Mencl outlines the 10-step "overall vetting process" for all Treasury employees and attests that Krause, Whitridge, and Newman have been properly vetted and that "Corcos' background check is still pending final completion and adjudication." Mencl Decl. ¶¶ 4-9. She makes no representations about other DOGE employees. Daniel Katz attests that Krause, Whitridge, Corcos, and Newman are "Treasury employees" who report directly or indirectly to him. Katz Decl. ¶ 5. He makes no mention of whether he has a reporting relationship with other DOGE employees. Michael Wenzler reviews the hiring authority and reporting structure pertaining to Krause, Whitridge, Corcos, and Newman and confirms they have all taken the required trainings. Wenzler Decl. ¶¶ 7-9, 12-16, 19-21. He says nothing about other DOGE employees. Finally, David Ambrose describes the briefing on cybersecurity and PII practices and precautions required for granting access to BFS systems and equipment, and confirms that Krause, Whitridge, Corcos, and

5

Newman received this briefing. Ambrose Decl. ¶¶ 3-5. He does not mention briefing any other DOGE employee.[4]

Accordingly, to the extent current or future DOGE employees are added to the DOGE Treasury Team, the record contains no evidence that Defendants will have "largely alleviate[d]" the Court's concerns articulated in the PI Order as to those individuals. April 11 Op. at 19.

Nor does the record provide sufficient assurance that any current or future DOGE employee added to the DOGE Treasury Team later will have the appropriate hiring authority, supervision, training, and vetting such that the need for the PI Order is rendered moot. Rather, Defendants' proper onboarding of the DOGE Treasury Team members following the PI Order is, at best, merely the voluntary cessation of challenged conduct as to particular individuals that will not "ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed," *Knox v. Serv. Emps. Int'l Union, Local 1000,* ___ U.S. ___, 132 S.Ct. 2277, 2287 (2012) (quoting *Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000)). In such circumstances, an injunction provides "effectual relief" because it precludes the defendant from reviving the challenged conduct in that manner. *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016). Accordingly, courts will find a case moot after a defendant voluntarily discontinues challenged conduct only if "(1) it can be said with assurance that 'there is no reasonable expectation' that the alleged violation will recur" and "(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cty. of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979) (alteration omitted) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)); *see also Am. Freedom Def. Initiative*, 815 F.3d at 109.

---

[4] The May 14 Declarations are limited to information about Corcos and do not mention any other DOGE employee.

Here, at most, "Defendants have attested that all future Treasury DOGE Team members . . . will be required to take all of [the required] trainings." Defs. MOL at 9. But where "the Court can rely only on a promise, which carries no legal effect, that authorities will in the future exercise the political will to change their practices to conform" to what the Court's ruling requires, "there is no assurance the violation cannot recur." *Saba v. Cuomo*, 535 F. Supp. 3d 282, 297 (S.D.N.Y. 2021); s*ee also Trinity Lutheran Church of Columbia, Inc. v. Comer*, ___ U.S. ___, 137 S. Ct. 2012, 2019 n.1 (2017) (holding governor's announcement that "he had directed the Department to begin allowing religious organizations to compete for and receive Department grants on the same terms as secular organizations" did not moot action absent assurance that governor "*could not revert to its policy of excluding religious organizations*") (emphasis added); *cf. United States v. Gregg*, 32 F. Supp. 2d 151, 158-59 (D.N.J. 1998) (ordering permanent injunction despite defendants' contention that their compliance with terms of preliminary injunction obviated need for permanent injunction, and noting that defendants "refus[ed] to acknowledge the illegality of their conduct").

Finally, to the extent Defendants' justification here for dissolving the PI Order in its entirety is based on an argument that their conduct in onboarding DOGE Treasury Team members is not arbitrary and capricious, that is a matter to be determined by the Court in the context of Defendants' intended Rule 12(b)(6) motion to dismiss, not here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to the extent that it seeks to dissolve the PI Order in its entirety.

Dated: May 14, 2025
      New York, New York

                                                       Respectfully submitted,

**LETITIA JAMES**
  ATTORNEY GENERAL OF NEW YORK

By: */s Andrew Amer*
Andrew Amer
  *Special Counsel*
Rabia Muqaddam
  *Special Counsel for Federal Initiatives*
Colleen K. Faherty
  *Special Trial Counsel*
Stephen C. Thompson
  *Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
  ATTORNEY GENERAL OF CALIFORNIA

By: /s/ *Michael S. Cohen*
Michael S. Cohen
  *Deputy Attorney General*
Thomas S. Patterson
  *Senior Assistant Attorney General*
Mark R. Beckington
John D. Echeverria
  *Supervising Deputy Attorneys General*
Nicholas Green
Jay Russell
  *Deputy Attorneys General*
California Attorney General's Office
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 210-6090
Michael.Cohen@doj.ca.gov

*Counsel for the State of California*

**KRISTEN K. MAYES**
  ATTORNEY GENERAL OF ARIZONA

By: */s Joshua D. Bendor*
Joshua D. Bendor
Joshua A. Katz
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Joshua.Katz@azag.gov

*Counsel for the State of Arizona*

**PHIL WEISER**
  ATTORNEY GENERAL OF COLORADO

By: */s Shannon Stevenson*
Shannon Stevenson
  *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

**WILLIAM TONG**
  ATTORNEY GENERAL OF CONNECTICUT

By: */s Matthew Fitzsimmons*
Matthew Fitzsimmons
  *Chief Counsel*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5318
Matthew.fitzsimmons@ct.gov

*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
ATTORNEY GENERAL OF THE STATE OF DELAWARE

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**ANNE E. LOPEZ**
  ATTORNEY GENERAL OF HAWAIʻI

By: */s Kalikoʻonālani D. Fernandes*
David D. Day
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes
  *Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**KWAME RAOUL**
  ATTORNEY GENERAL OF ILLINOIS

By: */s/ Darren Kinkead*
Darren Kinkead
  *Public Interest Counsel*
115 S. LaSalle St.
Chicago, Illinois 60603
(773) 590-6967
Darren.Kinkead@ilag.gov

*Counsel for the State of Illinois*

**AARON M. FREY**
  ATTORNEY GENERAL OF MAINE

By: */s/ Jason Anton*
Jason Anton
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
jason.anton@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
  ATTORNEY GENERAL OF MARYLAND

By: */s Adam D. Kirschner*
Adam D. Kirschner
  *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6424
akirschner@oag.state.md.us

*Counsel for the State of Maryland*

**ANDREA JOY CAMPBELL**
   ATTORNEY GENERAL
   COMMONWEALTH OF MASSACHUSETTS

By: /s/ David C. Kravitz
David C. Kravitz
  *State Solicitor*
One Ashburton Place
Boston, MA 02108
617-963-2427
david.kravitz@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KEITH ELLISON**
   ATTORNEY GENERAL OF MINNESOTA

By: /s *Liz Kramer*
Liz Kramer
  *Solicitor General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**
   ATTORNEY GENERAL OF NEVADA

By: /s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
  *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**MATTHEW J. PLATKIN**
   ATTORNEY GENERAL OF NEW JERSEY

By: */s David Leit*
David Leit
  *Assistant Attorney General*
(609) 414-4301
david.leit@law.njoag.gov

Kashif Chand
  *Chief, Deputy Attorney General*
(609) 696-5160
kashif.chand@law.njoag.gov
124 Halsey Street
Newark, NJ 07101

*Counsel for the State of New Jersey*

JEFF JACKSON
   ATTORNEY GENERAL OF NORTH CAROLINA

LAURA HOWARD
   CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel P. Mosteller
   *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

PETER F. NERONHA
   ATTORNEY GENERAL OF RHODE ISLAND

By: /s/ Alex Carnevale
Alex Carnevale
   *Special Assistant Attorney General*
Office of the Attorney General – State of Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

JOSH KAUL
   ATTORNEY GENERAL OF WISCONSIN

By: */s/ Brian P. Keenan*
Brian P. Keenan
   State Bar #1056525
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
keenanbp@doj.state.wi.us

*Counsel for the State of Wisconsin*

DAN RAYFIELD
   ATTORNEY GENERAL OF OREGON

By: */s/ Elleanor H. Chin*
Elleanor H. Chin
   *Senior Assistant Attorney General*
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

*Counsel for the State of Oregon*

CHARITY R. CLARK
   ATTORNEY GENERAL OF VERMONT

By: */s/ Jonathan Rose*
Jonathan Rose
   *Solicitor General*
Appellate Unit
Office of the Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

**RULE 7.1 CERTIFICATION**

      I certify that, excluding the caption, signature block, and this certification, the foregoing Memorandum of Law in Partial Opposition contains 2,057 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
        May 14, 2025

                                      LETITIA JAMES
                                      Attorney General of the State of New York

                                      By: /s Andrew Amer
                                      Andrew Amer
                                        Special Counsel
                                      28 Liberty Street
                                      New York, NY 10005
                                      (212) 416-6127
                                      andrew.amer@ag.ny.gov