UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF THE
TREASURY, *et al.*,

    *Defendants*.

Case No. 25 Civ. 01144 (JAV)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
    – Of Counsel –

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief (ECF No. 151, "Pls. Opp.") fails to provide any basis to maintain the PI[1] in this case. Defendants have responded fully and transparently to the concerns identified by the Court that led it to issue the PI: Treasury has submitted numerous detailed declarations regarding the hiring authorities, security clearances, training, reporting lines, and mitigation measures for its employees who are DOGE Team members. Indeed, Plaintiffs have already conceded to lifting the PI's restrictions as to the four Treasury DOGE Team members who are still subject to it—Thomas Krause, Linda Whitridge, Todd Newnam, and Samuel Corcos.[2] Now Plaintiffs ask the Court to "micromanage the minutiae of the Treasury Department's day-to-day operations," Wunderly Order at 19, by individually approving every future Treasury DOGE Team member who may be hired. This ongoing human resources function would not be justified under the law or by the facts and circumstances of this case. Accordingly, the Court should reject this invitation and grant Defendants' motion to dissolve the preliminary injunction in its entirety.

## ARGUMENT

Plaintiffs fail to demonstrate that the continued maintenance of the PI as to all potential future members of the Treasury DOGE Team is justified. It is well-established that a court may modify or terminate an injunction if, in its discretion, the court determines that the circumstances underlying the injunction have changed. *See, e.g.*, *Int'l Equity Investments, Inc. v. Opportunity*

---

[1] This reply memorandum uses the same abbreviations and defined terms as Defendants' opening brief, ECF No. 142.

[2] Because there is no longer any live dispute as to these four individuals, Defendants have separately requested that the PI be vacated as to them (and explained why Plaintiffs' demand that Mr. Corcos's background check must first be fully adjudicated is unfounded). *See* ECF No. 152.

*Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration."); *Railway Labor Executives' Ass'n v. Metro-North Commuter R. Co.*, 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) ("A continuing injunction . . . is always subject to modification for a change in circumstances"); *see also Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (regarding the court's discretion). Indeed, a court *should* dissolve an injunction when "the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties." *Int'l Equity Investments*, 427 F. Supp. 2d at 501; *see also Baliga v. Link Motion Inc.*, No. 18 Civ. 11642, 2022 WL 2531535, at *16 (S.D.N.Y. Mar. 9, 2022) (in order to determine whether a PI should be terminated, courts "review[] the circumstances in which such an order would be justified in the first instance—and then consider[] whether that justification no longer exists").

Here, Defendants have thoroughly demonstrated that the PI is no longer justified. Since the Court entered the PI on February 21, 2025 (ECF No. 76), Defendants have provided twenty sworn agency declarations setting forth in detail Treasury's policies and procedures for vetting, clearing, and training the members of the Treasury DOGE Team (which, as Treasury has explained, include the same policies and procedures imposed on any career employee or political appointee who will be given access to the BFS payment systems at issue in this case, as well as the provision of an additional briefing specifically regarding the handling of personally identifying information). *See* ECF Nos. 98-1 through 98-4, 116-1 through 116-2, 121 through 126, 143 through 147, 150-1 through 150-3. Defendants have also explained the Treasury DOGE Team's reporting lines, the mitigation measures Treasury designed and implemented with respect to the Team's access to agency systems, and the forensic inquiry into former Treasury

DOGE Team member Marko Elez's limited access to those systems. *Id.* Moreover, these declarations have repeatedly made clear that these procedures and requirements will apply to any future Treasury DOGE Team members as well. *See, e.g.*, ECF No. 145-2 ¶ 4 (explaining that "[a]t Treasury, *all* career federal employees and political appointees, regardless of the level of the position . . . undergo the same overall vetting process," and explaining that process) (emphasis added); ECF No. 98-1 ¶ 8 (training); ECF No. 98-2 ¶ 19 (mitigation, vetting, and training); ECF No. 98-3 ¶ 23 (training). As the Court has acknowledged, these extensive submissions directly addressed and at least "largely alleviate[d]" the Court's prior concerns about the initial establishment of the Treasury DOGE Team. Wunderly Order at 19.

Plaintiffs assert that "Defendants' promise to voluntarily comply prospectively with the vetting, training, hiring authority, and supervision criteria enumerated by the Court is no substitute for keeping in place the current preliminary injunction that will require Defendants to make a specific showing of compliance for any new individuals added to the DOGE Treasury Team during the pendency of this action." Pls. Opp. at 3-4. But this is not the standard; and in the face of Defendants' substantial showing of materially changed circumstances, Plaintiffs make no real attempt to demonstrate that the initial justification for the PI—the Court's concerns about "the *launch* of the Treasury DOGE Team," PI Order at 50 (emphasis added)—still exists now. To the extent Plaintiffs are suggesting that Defendants' reliance on their numerous declarations is *per se* insufficient without full merits litigation on an administrative record or discovery, that is also not the standard. *See, e.g.*, *Malletier v. Dooney & Burke, Inc.*, 561 F. Supp. 2d 368, 382 (S.D.N.Y. 2008) ("parties are held to different standards of proof in preliminary injunction hearings than in motions for summary judgment . . . because findings of fact at the preliminary injunction stage are not as fully fleshed out") (cleaned up). Indeed, the Court expressly

3

contemplated Defendants' requested relief in "invit[ing] the Government to *promptly* move to modify or terminate the preliminary injunction once Defendants had an opportunity to address and remediate the procedural concerns identified by the Court." Wunderly Order at 18 (emphasis added). Defendants have done just that.

Furthermore, the continuing obligation to report to the Court to seek its approval of every potential future Treasury DOGE Team hire would be contrary to law and unduly oppressive and would thus prejudice Defendants. *See* Pls. Opp. at 4. At the baseline, that level of continuing micromanagement would be inappropriate under the APA. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (under the APA, courts should not involve themselves in the "the common business of managing government programs"); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (judicial review under the APA does not reach the agency's "workaday" dealings). Moreover, the obligation to engage in iterative motion practice for each future Treasury DOGE Team member would, without justification, not only delay the work of the Treasury DOGE Team in improving and modernizing the operations of the agency, particularly in the area of information technology, but also require additional agency employees to spend time preparing and executing repetitive declarations documenting the agency's day-to-day human resources functions. Again, in light of Defendants' showing of changed circumstances, Plaintiffs fail to show that this continued oversight is warranted.

Instead, Plaintiffs offer a handful of legal and factual red herrings. For example, Defendants have never sought dismissal of any portion of this case as moot, and there is thus no basis to import the inapposite mootness standard into the present analysis. *See* Pls. Opp. at 6-7. The cases upon which Plaintiffs rely to support this argument do not help them. *Id.* The

4

defendant in *American Freedom Defense Initiative v. Metropolitan Transportation Authority*, 815 F.3d 105 (2d Cir. 2016) (per curiam), sought vacatur of a preliminary injunction specifically "on the ground that the claim underlying the injunction became moot." *Id.* at 107. Defendants have not made that argument here; and in any event, the Second Circuit affirmed the district court's dissolution of the injunction in that case. *Id.* Similarly, in *United States v. Gregg*, 32 F. Supp. 2d 151 (D.N.J. 1998), the defendants argued that the United States' underlying claim was moot and sought dismissal of the case (as well as vacatur of a preliminary injunction and denial of the United States' requested permanent injunction after entry of summary judgment).[3] *Id.* at 158. Here, Defendants simply argue that the underlying factual circumstances upon which the Court premised the "extraordinary and drastic remedy" of a preliminary injunction, *Students for Fair Admissions v. United States Military Academy at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (cleaned up), no longer exist.

      Plaintiffs' citation to media reporting about former Treasury DOGE Team member Marko Elez, warnings of "unfettered access" to Treasury systems, and references to "other DOGE employees" are also irrelevant. Pls. Opp. at 3, 5-6. Defendants have described the contours of the access that Treasury DOGE Team members are anticipated to have to BFS systems, and the *additional*, bespoke mitigation measures that the agency designed and implemented to control that access and any increased risk to which it might give rise. Nor have Plaintiffs pointed to any evidence whatsoever that Defendants intend to give non-Treasury employees (whether Mr. Elez, who is not a Treasury employee, or anyone else) access to Treasury's systems. In short, Plaintiffs offer no compelling response to Defendants' extensive

---

[3] *Saba v. Cuomo*, 535 F. Supp. 3d 282 (S.D.N.Y. 2021), and *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), did not involve preliminary injunctions at all.

demonstration of the changed circumstances regarding the Treasury DOGE Team and the absence of any continued justification for the PI.

## CONCLUSION

For the foregoing reasons and those set forth in their opening memorandum, Defendants respectfully request that the Court grant their motion to dissolve the PI in its entirety.

Dated: May 21, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOHN R. GRIFFITHS
Director
Federal Programs Branch

/s/ Bradley P. Humphreys
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s/ Rebecca S. Tinio
JEFFREY OESTERICHER
REBECCA S. TINIO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2695/2774
Email: jeffrey.oestericher@usdoj.gov
       rebecca.tinio@usdoj.gov

### Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 1633 words.