UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, *et al.*,

        Plaintiffs,

- against –

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,

        Defendants.

No. 25 Civ. 1144 (JAV)

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

 

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2695/2774
*Attorney for Defendants*

JEFFREY OESTERICHER
REBECCA S. TINIO
*Assistant United States Attorneys*
   – Of Counsel –

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

    1.      Plaintiffs Lack Article III Standing ........................................................................1

    2.      Voluntary Cessation Does Not Apply .....................................................................5

    3.      Plaintiffs Do Not Challenge Final Agency Action ..................................................7

    4.      Plaintiffs Have Not Alleged Arbitrary or Capricious Agency Action .....................9

    5.      Plaintiffs Have Not Alleged the Violation of a Statute .........................................11

        A.      FISMA .......................................................................................................11

        B.      Conflict of Interest Statute ........................................................................12

    6.      Plaintiffs Do Not State a Claim for a Constitutional Violation .............................13

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFL-CIO v. Dep't of Labor*,
  No. 25-339 (JDB), 2025 WL 1129227 (D.D.C. Apr. 16, 2025) ............................................. 12

*AFT v. Bessent*,
  --- F.4th ---, 2025 WL 2313244 (4th Cir. 2025) ................................................................... 3, 8

*Chicago United Industries, Ltd. v. City of Chicago*,
  445 F.3d 940 (7th Cir. 2006) .................................................................................................. 7

*City and County of San Francisco v. U.S.*,
  443 F. Supp. 1116 (N.D. Cal. 1977) ..................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................................ 5

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) .............................................................................................. 11

*Connecticut Citizens Defense League, Inc. v. Lamont*,
  6 F.4th 439 (2d Cir. 2021) ...................................................................................................... 1

*Dalton v. Specter*,
  511 U.S. 462 (1994) .............................................................................................................. 13

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .............................................................................................................. 10

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ................................................................................................................ 1

*FDA v. Wages & White Lion Invs., L.L.C.*,
  --- U.S. ---, 145 S. Ct. 898 (2025) ......................................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Env'tal Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................................................ 1

*Global Health Council v. Trump*,
  --- F.4th ---, 2025 WL 2480618 (D.C. Cir. 2025) ................................................................. 13

*Haitian Refugee Ctr. v. Gracey*,
  809 F.2d 794 (D.C. Cir. 1987) .............................................................................................. 13

*In re U.S. Off. of Personnel Mgmt. Data Sec. Breach Litigation*,
   266 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................... 11, 12

*Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York*,
   356 F.3d 365 (2d Cir. 2004) ................................................................................................. 6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................. 5

*Mink v. Suthers*,
   482 F.3d 1244 (10th Cir. 2007) ........................................................................................... 2

*Moore v. U.S.*,
   No. 4:22-CV-4020, 2023 WL 8832918 (S.D. Tex. Nov. 30, 2023) ..................................... 11

*Moya v. U.S. Dept. of Homeland Security*,
   975 F.3d 120 (2d Cir. 2020) ............................................................................................... 11

*Neurological Surgery Prac. of Long Island, PLLC v. HHS*,
   145 F.4th 212 (2d Cir. 2025) ................................................................................................ 7

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ............................................................................................................... 9

*NTEU v. Vought*,
   --- F.4th ---, 2025 WL 2371608 (D.C. Cir. 2025) ........................................................... 9, 13

*O'Brien v. Nat'l Prop. Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989) ....................................................................................... 3

*Physicians for Social Responsibility v. Wheeler*,
   956 F.3d 634 (D.C. Cir. 2020) ........................................................................................... 12

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
   601 F.3d 1096 (10th Cir. 2010) ........................................................................................... 7

*Social Security Administration v. AFSCME*,
   605 U.S. ---, 145 S. Ct. 1626 (2025) .................................................................................... 8

*Sossamon v. Texas*,
   560 F.3d 316 (5th Cir. 2009) ............................................................................................... 7

*Town of Newburgh v. Newburgh EOM LLC*,
   No. 24-328, 2025 WL 2617900 (2d Cir. 2025) .................................................................... 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................................... 3

*Troiano v. Supervisor of Elections in Palm Beach County*,
  382 F.3d 1276, 1283 (11th Cir. 2004) ......................................................................... 7

*Welborn v. IRS*,
  218 F. Supp. 3d 64 (D.D.C. 2016) ......................................................................... 11, 12

*Williams v. Romarm*,
  751 F. App'x 20 (2d Cir. 2018) .................................................................................... 8

**Statutes**

18 U.S.C. § 208 ............................................................................................................. 11, 12, 13

31 U.S.C. § 3335(a) ............................................................................................................. 5, 10

44 U.S.C. § 3551 ...................................................................................................................... 11

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the First Amended Complaint ("FAC").

## ARGUMENT

**1. Plaintiffs Lack Article III Standing**

Plaintiffs still fail to establish their standing to bring their claims. First, Plaintiffs have not alleged that they suffered a "concrete" injury-in-fact, which is "particularized" to Plaintiffs and not a "generalized grievance." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024). Plaintiffs posit two potential injuries: (1) the exposure of their confidential financial information to the Treasury DOGE Team (the "onboarding claim"), Pls. Br. at 7, 12, and (2) the "threatened delay of funding disbursements attributable" to implementation of the Engagement Plan (the "disbursements claim"), *id*. at 12. Neither alleged harm suffices.

Plaintiffs' assertion that they can establish the requisite injury for their onboarding claim based on the voluntary cessation doctrine, Pls. Br. at 8, is mistaken. Plaintiffs are confusing standing and mootness. Standing focuses on "whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (cleaned up), whereas mootness "ensures that [a] litigant's interest in the outcome continues to exist throughout the life of a lawsuit," *id*. (cleaned up). Voluntary cessation is a narrow exception to mootness, not standing. *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). Accordingly, "if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.*

Furthermore, although the determination of whether a plaintiff suffered an injury is usually determined based on the original complaint—*i.e.*, at the time the action is brought, *see Friends of*

*the Earth*, 528 U.S. at 180—courts have looked to the amended complaint to determine standing in circumstances where the amended complaint was filed before the defendant responded to the original complaint but after the defendant had already reversed the challenged conduct. *See, e.g.*, *Mink v. Suthers*, 482 F.3d 1244, 1253-54 (10th Cir. 2007). That scenario is present here.

Plaintiffs commenced this action in February 2025 (ECF No. 1), challenging Treasury's granting of limited access to Bureau of the Fiscal Service ("BFS") systems to members of the Treasury DOGE Team. Two weeks later, the Court issued a preliminary injunction finding Treasury's initial onboarding procedures for DOGE Team members to have been rushed and restraining Treasury from granting DOGE Team members access to BFS payment systems. ECF No. 76 ("Feb. PI Order") at 27, 63. As documented in numerous declarations, Treasury promptly confirmed and ensured that Treasury DOGE Team members are subject to the same and, in certain respects, more stringent, security protocols as any other individual granted access to BFS systems, *see* ECF Nos. 98, 112, 116, 120-26, 142-47, 150, as found by the Court in April and May 2025, *see* ECF No. 139 ("April PI Order") at 18-28; ECF No. 156 ("May PI Order") at 4-7. And on May 23, 2025, before Defendants answered the Complaint but after Treasury fully confirmed its applicable onboarding procedures, Plaintiffs filed their First Amended Complaint alleging, *inter alia*, injury from Treasury's initial onboarding procedures and implementation of the Engagement Plan, *see* FAC ¶¶ 82-92, 113-37; Pls. Br. at 1-2.

The Court should "look to the amended complaint in assessing [Plaintiffs'] claims, including the allegations in support of standing." *Mink*, 482 F.3d at 1254. Those allegations fail to plausibly allege an injury in fact from granting Treasury DOGE Team members access to BFS payment

2

systems; indeed, the Court reviewed Treasury's current onboarding procedures and approved granting access without further Court review. *See* April PI Order at 18-28; May PI Order at 4-7.[1]

Even when measured at the time of the original complaint, Plaintiffs' onboarding claim fails to state an injury in fact. Plaintiffs contend that the disclosure of their records to Treasury DOGE Team members violates the Federal Information Security Modernization Act ("FISMA"). FAC ¶¶ 44-52, 112. "But under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiffs must allege a concrete injury with a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. at 425; *see also* Feb. PI Order at 24.

Here, Plaintiffs complain that Treasury granted unauthorized parties access to their confidential information. *See, e.g.*, FAC ¶ 4. And this, they argue, bears a close relationship to the common-law tort of intrusion upon seclusion or public disclosure of private facts. *See* Feb. PI Order at 26. But that argument was recently rejected by the Fourth Circuit in *AFT v. Bessent*, --- F.4th ---, 2025 WL 2313244 (4th Cir. 2025).

In that nearly identical case, Plaintiffs challenged the granting of IT access to DOGE-affiliated employees at Treasury and other agencies. *Id*. at *2. In considering an injunction, the Fourth Circuit concluded that "Plaintiffs seemingly lack standing." *Id*. at *5. The panel observed that the common law tort of "intrusion upon seclusion has long been understood to guard not against the disclosure of sensitive information as such, but against the feeling of unease when and

---

[1] Plaintiffs' reference to "[r]ecent reporting" concerning alleged DOGE security violations at the Social Security Administration, Pls. Br. at 7 n.2, should be disregarded. A complaint "cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

where one should ideally be at peace." *Id*. This harm, the panel ruled, "is distinct from Plaintiffs' alleged harm of unauthorized access." *Id*.

Specifically, the panel noted that "it is less than clear that entries of information stored in government databases could be part of any Plaintiff's seclusion at all." *Id*. "Each Plaintiff's information is one row in various databases that are millions upon millions of rows long. In fact, Plaintiffs do not allege in their complaint that any particular row of information belonging to any particular Plaintiff has been examined at all." *Id*. The panel concluded that the "harm that might come from this generalized grant of database access to an additional handful of government employees—prone as they may be to hacks or leaks, as Plaintiffs have alleged—seems different in kind, not just in degree, from the harm" associated with the tort of intrusion upon seclusion. *Id*.

Rather, "[u]nauthorized knowledge of sensitive information is instead more closely shielded by other privacy torts, such as public disclosure of private information, which finds its roots in defamation." *Id*. at *6. However, those other privacy torts "all require disclosure to the public at large, since they take aim at the reputational damage that can accompany publicity." *Id*. Because plaintiffs in *AFT* alleged no public disclosure, the Court held that those other privacy torts did not support their assertion of concrete injury. *Id*. The same is true here.[2]

Plaintiffs' disbursements claim fares no better. As Plaintiffs acknowledge, to date, they have not experienced any delay (or halt) in reimbursements from Treasury, FAC ¶ 131; Pls. Br. at 12, even though Treasury began operationalizing the Engagement Plan over seven months ago, FAC ¶¶ 123-24. Plaintiffs' speculation that future disbursements may be delayed, *id.* ¶ 131; Pls. Br. at

---

[2] The Court should thus not adhere to its prior ruling in the context of Plaintiffs' motion for a preliminary injunction that the mere exposure of Plaintiffs' confidential financial information bore a close relationship to a common law analogue. Feb. PI Order at 26.

4

12, does not constitute a "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiffs also cannot establish the other two required elements of standing—causation and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). With respect to the onboarding claim, Plaintiffs do not address causation or redressability other than citing to this Court's prior preliminary injunction opinion. Pls. Br. at 7. But that misses the mark because the only direct harm that Plaintiffs have alleged for this claim is the disclosure of their sensitive data to Treasury DOGE Team members, FAC ¶¶ 6, 111-12, and any such disclosure was or is now authorized by the Court. Accordingly, Plaintiffs cannot establish a causal link to the Engagement Plan.

Likewise, Plaintiffs' assertion in connection with the disbursements claim that their "future injury" from a potential delay in receiving federal reimbursements is traceable to the Engagement Plan and likely to be redressed by a favorable decision, Pls. Br. at 12, is meritless. Plaintiffs ignore the fact that the certifying agency, not Treasury, decides whether a reimbursement is proper. *See* 31 U.S.C. § 3335(a). Accordingly, Treasury's pre-certification identification of potentially improper payments could not cause Plaintiffs' hypothetical harm, and a Court order abrogating Treasury's process would not redress the alleged harm as the decision whether to certify a payment resides with the payor agency.

**2. Voluntary Cessation Does Not Apply**

As noted above, Plaintiffs' invocation of voluntary cessation to establish standing for their onboarding claim misses the mark. The Government's opening brief did not conflate mootness with standing; rather, it observed that "[f]or the same reasons" that Plaintiffs have not pled and cannot show a concrete injury-in-fact associated with their onboarding claim, "Plaintiffs' claims

5

in the FAC challenging the way the Engagement Plan was first implemented are moot." U.S. Br. at 9 n.3.

The voluntary cessation doctrine does not prevent dismissal of the onboarding claim as moot. The "voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 375 (2d Cir. 2004) (cleaned up). Here, the onboarding claim—despite the passage of more than seven months since the filing of the original complaint and substantial litigation and fact development regarding Treasury's onboarding procedures—still stems from the initial implementation, at the beginning of this year, of the four-to-six-week Engagement Plan, *see, e.g.*, FAC ¶¶ 82-90, 120-124. The FAC omits the months of developments since then, including the Court's acknowledgment that, given the substantial evidence proffered of Treasury's onboarding protocols, the agency need not seek continuing judicial approval of the granting of BFS systems access to future Treasury DOGE Team members. *See* May PI Order. In light of the intervening developments, there is no "reasonable expectation" that the circumstances uniquely pertaining to the initial rollout of the Engagement Plan will recur, and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" associated with that initial rollout.[3]

---

[3] Plaintiffs note that Defendants have filed a Notice of Appeal from certain of the Court's orders, *see* Pls. Br. at 10. Regardless of what *legal* issues may be presented in that appeal, the fact remains that during this litigation, Defendants submitted nearly two dozen *factual* declarations from agency witnesses describing Treasury's onboarding protocols. Defendants have not disclaimed any of those declarations or the representations therein; rather, they form the underlying factual record of Defendants' appeal. Those same facts embody the changed circumstances that have superseded and mooted Plaintiffs' onboarding claim.

6

Even if voluntary cessation applied here, the burden it imposes on a defendant to demonstrate that unlawful conduct will not resume has "frequently . . . not prevented governmental officials from discontinuing challenged practices and mooting a case." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010). Courts treat "a voluntary governmental cessation of possibly wrongful conduct with some solicitude," based on the government's role in acting in the public interest and the associated presumption of good faith. *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011); *see also, e.g.*, *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1283 (11th Cir. 2004); *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006). More particularly, there is no reason to be "suspicious" of Treasury's extensive factual showings during this litigation regarding its onboarding protocols. *See* Pls. Br. at 8-9. Defendants' actions in ensuring that these protocols were put in place were not "strategically" intended to "moot the case," *see Town of Newburgh v. Newburgh EOM LLC*, --- F.4th ---, 2025 WL 2617900, at *4 (2d Cir. 2025); rather, the vast majority of those protocols already existed, and were implemented and further developed, largely independent of the litigation, to address Treasury DOGE Team members' access to BFS systems. Any contrary suggestion is unsupported speculation. *See, e.g.*, *Neurological Surgery Prac. of Long Island, PLLC* v. *HHS*, 145 F.4th 212, 223-24 (2d Cir. 2025).

### 3. Plaintiffs Do Not Challenge Final Agency Action

The FAC also does not plead a challenge to final agency action reviewable under the APA. U.S. Br. at 12-16.

First, Plaintiffs do not contest that both the granting of systems access to Treasury DOGE Team members and the flagging of potentially improper payments for review by the certifying agency lie within Treasury's discretion. *Id.* at 16. No statutory, regulatory, or other prohibition

7

cabins Treasury's discretion to take those actions. *Id.* Thus, Plaintiffs have waived any opposition to this argument, which itself disposes of Plaintiffs' APA claims. *See, e.g.*, *Williams v. Romarm*, 751 F. App'x 20, 23 (2d Cir. 2018).

With respect to whether the granting of access to BFS systems to Treasury DOGE Team members constituted final agency action (it did not), Plaintiffs attempt in vain to distinguish persuasive higher court precedent. Pls. Br. at 13-15; *see* U.S. Br. at 13-15. Most importantly, the Supreme Court's opinion in *Social Security Administration v. AFSCME*, 605 U.S. ---, 145 S. Ct. 1626 (2025), in which the Court stayed a preliminary injunction and determined that "SSA may proceed to afford members of the SSA DOGE Team access to . . . agency records," including "software systems" and "IT systems," "in order for those members to do their work," is very closely on point, given the congruence between the "systems access" claims in that case and here. *Id.*; *see* U.S. Br. at 14-15.

Similarly, since the Government filed its opening brief, the Fourth Circuit issued its merits opinion in *AFT v. Bessent*, as discussed above. With respect to final agency action, the Fourth Circuit expressed substantial skepticism regarding the similar systems access claims in that case, opining that "[t]he agency action here—granting IT access to certain employees—does not fit comfortably into" the bucket of agency actions that are traditionally subject to APA review, namely binding agency opinions and compliance orders. *AFT*, 2025 WL 2313244, at *7 (also observing that the granting of IT access did not precisely match the types of agency actions that courts have traditionally rejected as falling outside that bucket).

In different contexts, other courts have also recently denied APA review of "informal" agency actions that, like the onboarding and disbursements actions challenged here, did not mark the consummation of a decision-making process, did not directly affect plaintiffs' legal rights, and

8

were insufficiently discrete. *See, e.g.*, *NTEU v. Vought*, --- F.4th ---, 2025 WL 2371608, at *10-13 (D.C. Cir. 2025) (internal guidance email and putative decision to shut down an agency are not final agency actions). And in *Neurological Surgery Practice of Long Island*, in the context of a Section 706(1) APA claim, the Second Circuit rejected the notion of "'injecting [courts] into day-to-day agency management,'" opining that the "'prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with . . . congressional directives is not contemplated by the APA.'" 145 F.4th at 229-30 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004)).[4] Similarly, here, Plaintiffs seek never-ending judicial oversight of the manner in which Defendants grant IT access to BFS systems and use those systems to potentially identify payments for further verification by payor agencies.[5] These are matters of day-to-day agency management not susceptible to APA review as final agency actions.

### 4. Plaintiffs Have Not Alleged Arbitrary or Capricious Agency Action

Plaintiffs argue that the Court's prior determination that they are likely to succeed on their onboarding claim establishes that they have sufficiently pled arbitrary and capricious agency action. Pls. Br. at 16. That is incorrect; it ignores the fact that the Court subsequently evaluated Treasury's implemented onboarding procedures and rejected Plaintiffs' claims that Treasury had

---

[4] Plaintiffs' APA claims here are brought under Section 706(2)(A) rather than 706(1), but the Supreme Court, in *Norton*, cited both sections in rejecting APA challenges that seek "wholesale" programmatic improvements, since an agency "program" is not an "agency action." *Norton*, 542 U.S. at 64-65 (cleaned up).

[5] As they must to invoke APA review, Plaintiffs contend that the alleged new payment review process at Treasury "has legal consequences and determines [their] rights and obligations because . . . the result of using this new process is to delay disbursement of appropriated funds to the States." Pls. Br. at 15. But as stated above, this is speculative, and the FAC does not identify any delayed disbursements.

acted improvidently by granting Treasury DOGE Team members access to BFS systems, a finding that should control here. *See* April PI Order at 19-28; May PI Order at 7.[6]

Plaintiffs' argument that the Engagement Plan is arbitrary and capricious under the change-in-position doctrine, Pls. Br. at 17-20, also fails. First, the change-in-position doctrine only applies if "an agency changed existing policy." *FDA v. Wages & White Lion Invs., L.L.C.*, --- U.S. ---, 145 S. Ct. 898, 918 (2025). A "policy" within the meaning of the doctrine must typically have been set forth in some "formal" manner, such as a regulation, a guidance memorandum, or an enforcement action. *Id.* at 918 n.5. Here, there is no allegation that Treasury had a pre-existing payment processing policy expressed in some formal fashion that was altered by the Engagement Plan. *See* FAC ¶ 114. That is fatal to Plaintiffs' claim. *See* April PI Order at 28-29.

Moreover, Defendants have provided a reasoned explanation: the new automated process was developed to "help[] identify payments" for the certifying agency "that may be improper under [the President's] new Executive Orders." FAC ¶ 123 (cleaned up). While Plaintiffs disagree with the Executive Orders and characterize the new process as resting "on ideological or other inappropriate grounds," Pls. Br. at 19, they do not (and cannot) claim that Treasury's revised process upset a "legitimate reliance interest," as they have no interest in receiving reimbursements that are not permitted under federal law. *See White Lion Invs.*, 145 S. Ct. at 927 (cleaned up).[7] Thus, Defendants have shown that there are "good reasons" for the new practice. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

---

[6] Plaintiffs' invocation of the voluntary cessation doctrine to save its onboarding claim, Pls. Br. at 16-17, fails for the reasons set forth *supra* in Section 2.

[7] Plaintiffs cite cases where courts have enjoined categorical freezes of congressionally appropriated funds, Pls. Br. at 19, but this case does not involve a freeze on payments, and it is the certifying agency, not Treasury, that decides whether a reimbursement is proper. *See* 31 U.S.C. § 3335(a).

### 5. Plaintiffs Have Not Alleged the Violation of a Statute

Plaintiffs also fail to plausibly allege that the Engagement Plan violates FISMA, 44 U.S.C. §§ 3551 *et seq*., or the conflict of interest statute, 18 U.S.C. § 208. Pls. Br. at 20-25. Plaintiffs are not within the zone of interests of either of those statutes, nor have they alleged conduct that violates those statutes.

### A. FISMA

Plaintiffs concede that FISMA is directed to federal executives to protect federal information technology for the benefit of the federal government. Pls. Br. at 21. Plaintiffs argue that a 2014 amendment to FISMA expanded the intended beneficiaries of the statute such that "FISMA is directly aimed at protecting the confidential information of not only the federal government, but also that of the States." *Id*. at 22. That is mistaken.

The 2014 amendment to FISMA simply directed the Office of Management and Budget to publish policies governing breaches of federal government information security systems. *See id*. at 21-22. It did not broaden the statute in any way. *See Welborn v. IRS*, 218 F. Supp. 3d 64, 81 (D.D.C. 2016); *see also In re U.S. Off. of Personnel Mgmt. Data Sec. Breach Litigation*, 266 F. Supp. 3d 1, 44 (D.D.C. 2017) (same), *aff'd in part & rev'd in part on other grounds*, 928 F.3d 42 (D.C. Cir. 2019). There is no private right of action under FISMA. *See Welborn,* 218 F. Supp. 3d at 81; *Moore v. U.S.*, No. 4:22-CV-4020, 2023 WL 8832918, at *3 (S.D. Tex. Nov. 30, 2023). Plaintiffs' interests thus are at least one step removed from the purposes of FISMA and fall outside of its zone of interests. *Moya v. U.S. Dept. of Homeland Security*, 975 F.3d 120, 132-33 (2d Cir. 2020).

Plaintiffs also ignore the case law holding that compliance with FISMA is committed to agency discretion by law and therefore unreviewable. *See* U.S. Br. at 22-23. Instead, Plaintiffs

11

assert that because FISMA incorporates National Institute of Standards and Technology ("NIST") standards, it provides meaningful standards for this Court to apply in evaluating Treasury's information security practices. Pls. Br. at 23. That is not correct. Under FISMA, "each agency head is delegated full discretion in determining how to achieve its goals." *Welborn*, 218 F. Supp. 3d at 81. Because the statute does not provide a standard by which to judge agencies' discretionary choices regarding how to comply with NIST and other standards, APA review is not available. *See Welborn*, 218 F. Supp. 3d at 81; *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006); *AFL-CIO v. Dep't of Labor*, No. 25-339 (JDB), 2025 WL 1129227, at *18 (D.D.C. Apr. 16, 2025); *In re U.S. Off. of Personnel Mgmt. Data Sec. Breach Litigation*, 266 F. Supp. 3d at 43-44.[8]

### B. Conflict of Interest Statute

Plaintiffs also are not within the zone of interests of the conflict of interest statute, 18 U.S.C. § 208, which also does not contain a private right of action. *See* U.S. Br. at 23. Plaintiffs also ignore the case law holding that the purpose of the conflict of interest statute is to "protect the government from corruption and self-interested financial dealing," *City and County of San Francisco v. U.S.*, 443 F. Supp. 1116, 1125 (N.D. Cal. 1977); *see* U.S. Br. at 24, and that the States' general interest in "promoting the rights created by that statute" is not sufficient to fall within the criminal statutes' zone of interests, U.S. Br. at 24. Instead, Plaintiffs assert that they fall within the statute's zone of interests in two ways: (1) because Treasury maintains their confidential information, and (2) because Treasury is responsible for the distribution of significant funds to the States. Pls. Br. at 24-25. This argument simply highlights that Plaintiffs are only asserting

---

[8] Plaintiffs cite *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020), for the proposition that NIST provides meaningful standards for the Court to review, Pls. Br. at 23, but *Wheeler* involved GSA regulations implementing the Federal Advisory Committee Act, not NIST.

generalized interests that are at least one step removed from the purposes of the criminal statute and therefore fall outside of its zone of interests. *See, e.g.*, *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 813 (D.C. Cir. 1987) ("If . . . the zone of interests to be protected or regulated by *every* statute necessarily includes an organization's . . . interest in promoting the rights created by that statute, that . . . would render the entire concept of a zone of interest a nullity.").

Plaintiffs also have not adequately pled a violation of 18 U.S.C. § 208. Plaintiffs contend only that Defendants do not dispute that their well pleaded allegations "must be accepted as true for purposes of this motion." Pls. Br. at 25. But Plaintiffs have not properly alleged that Section 208 is implicated by the Engagement Plan. *See* Feb. PI Order at 42; U.S. Br. at 24.

Further, to the extent Plaintiffs are attempting to raise a claim that the Engagement Plan is "contrary to Congress's duly enacted appropriation laws," Pls. Br. at 25, that claim fails because Plaintiffs concede that none of their reimbursements have been paused or canceled due to the Engagement Plan. *See* Pls. Br. at 25-26. Accordingly, they cannot identify any duly enacted appropriation law that has been violated.

**6. Plaintiffs Do Not State a Claim for a Constitutional Violation**

Finally, for the reasons set forth in the Government's opening brief, U.S. Br. at 25-26, and explained by the Court, Feb. PI Order at 53-56, the FAC does not state a claim for a constitutional violation of either the Separation of Powers or the Take Care Clause. Numerous courts confronting similar freestanding constitutional claims have rejected them (and have recognized the continuing applicability of *Dalton v. Specter*, 511 U.S. 462 (1994), which Plaintiffs attempt to brush aside, *see* Pls. Br. at 27). *See, e.g.*, *Global Health Council v. Trump*, --- F.4th ---, 2025 WL 2480618, at *6-9 (D.C. Cir. 2025); *NTEU*, 2025 WL 2371608, at *19-20.

13

## CONCLUSION

The Court should dismiss the FAC.

Dated: September 15, 2025                                      Respectfully submitted,

BRETT A. SHUMATE                                               JAY CLAYTON
Assistant Attorney General                                      United States Attorney
Civil Division

                                                                      By: */s/ Rebecca S. Tinio*

ALEXANDER K. HAAS                                              JEFFREY OESTERICHER
Director                                                       REBECCA S. TINIO
Federal Programs Branch                                        Assistant United States Attorneys
                                                                        86 Chambers Street, 3rd Floor
                                                                       New York, NY 10007
                                                                       Telephone: (212) 637-2695/2774
                                                                       Email: jeffrey.oestericher@usdoj.gov
                                                                                 rebecca.tinio@usdoj.gov

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules.[9] As measured by the word processing system used to prepare it, this memorandum contains 4,241 words.

---

[9] On September 15, 2025, the Court granted an enlargement of the applicable word limit to 4,250 words. *See* ECF No. 173.

15