

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

July 21, 2026

**BY ECF**

The Honorable Jeannette A. Vargas
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   *State of New York* et al. *v. Trump* et al., No. 25 Civ. 1144 (JAV)

Dear Judge Vargas:

This Office represents the defendants ("Defendants") in the above-captioned matter.  We write respectfully in response to this Court's July 7, 2026 order directing the parties to "submit a letter to the Court stating whether, in light of the apparent dissolution of DOGE, there are any live issues remaining in the case, or whether some or all of Plaintiffs' claims for declaratory and injunctive relief are now moot."  Dkt. No. 180.  For the reasons that follow, the dissolution of DOGE renders all of Plaintiffs' claims moot.

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation and internal quotation marks omitted).  This case no longer presents the controversy alleged in the Amended Complaint. Dkt. No. 155 ("FAC").  In this action, Plaintiffs challenged particular decisions to grant DOGE-affiliated personnel access to Bureau of Fiscal Service ("BFS") systems.  Plaintiffs specifically assert that the alleged harm suffered by the States "stem[s] from two discrete actions by Treasury."  FAC ¶ 7. First, Plaintiffs allege that "Treasury and Secretary Bessent have granted these hybrid DOGE-Treasury employees expanded access to the sensitive information contained in Treasury systems and data, including within the Bureau of the Fiscal Services ('BFS'), belonging to the states." FAC ¶ 8; *see also* FAC ¶ 11 (alleging that "the access Defendants have granted, and will continue to grant, DOGE-Treasury employees to the States' confidential information is in furtherance of the unlawful data pooling that DOGE has undertaken at other federal agencies").  Second, Plaintiffs allege that Treasury "has instituted a new policy, using an automated system being developed by DOGE-Treasury employees, to pause and potentially block the disbursement of appropriated funds on ideological grounds."  FAC ¶ 12; *see also* FAC ¶ 123 (alleging that the Engagement Plan "called for embedding within BFS a DOGE team to develop an automated process for

pausing and flagging payment files while in the BFS 'landing zone' before certification by the submitting agency").

Both of Plaintiffs' central claims in this action are predicated on the existence of a Treasury DOGE team.  That team no longer exists.  The U.S. DOGE Service Temporary Organization established by Executive Order 14,158 ceased to exist on July 4, 2026, when that organization expired by operation of the Executive Order itself.  *See* Exec. Order No. 14,158 § 3(b).  Of the seven former members of the Treasury DOGE team, five have not worked at the Treasury Department for over one year.  *See* Declaration of Elaine J. Rigas dated July 21, 2026 ("Rigas Decl.") ¶ 3.  The other two former members of the Treasury DOGE Team remain employed by the Department of the Treasury but have taken on new roles and report to other Treasury employees.  *Id.*  There is no current DOGE reporting structure at Treasury.  *Id.*

In the wake of the dissolution of DOGE, Plaintiffs cannot preserve jurisdiction by reframing their claims as a challenge to any future temporary government employee who may have access to BFS systems, as they suggested in their brief on appeal.  *See State of New York v. Trump*, 25-1860, Dkt. No. 81 at 23 n.8 ("[T]he States' complaint was not limited to members of the DOGE team, and instead sought to limit any temporary government employee outside of Treasury from accessing BFS systems, so it continues to present a justiciable controversy.").  Indeed, if Plaintiffs contend that expiration of the DOGE Temporary Organization is irrelevant because future temporary government employees performing similar functions might someday receive comparable access, then they are no longer challenging the agency actions identified in their Amended Complaint, which solely concern the alleged relationship between DOGE and the Treasury Department.  *See generally* FAC.  Instead, they seek continuing judicial supervision over future agency personnel assignments, work responsibilities, and information-access decisions.  The APA provides no basis for such open-ended oversight.

Nor is speculation about future access decisions sufficient to preserve Article III jurisdiction.  Any assessment of whether future access was granted in accordance with the law would necessarily depend on materially different facts, including the identity of the employees involved, their assigned duties, and whether access to the systems at issue is necessary to perform those duties. A claim for prospective relief requires more than a theoretical possibility of recurrence.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The possibility that an agency might someday provide some employee access to protected information under different circumstances does not establish that Plaintiffs are likely to suffer the same alleged injury.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

The voluntary-cessation doctrine also does not preserve this controversy. That doctrine addresses a defendant's voluntary decision to cease challenged conduct in response to litigation and therefore ordinarily has no application where the challenged conduct ends automatically pursuant to a preexisting legal requirement. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170-71 (2000).

Because the DOGE Temporary Organization has ceased to exist and Plaintiffs identify no continuing or imminent injury arising from the challenged access decisions, their claims for prospective relief are moot and should be dismissed.  We thank the Court for its consideration of this submission.

Respectfully,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:  /s/ *Danielle J. Marryshow*
JEFFREY S. OESTERICHER
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, NY 10007
Tel.: (212) 637-2695/2689
E-mail:  jeffrey.oestericher@usdoj.gov
         danielle.marryshow@usdoj.gov